# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO. 23-61065-CIV-SINGHAL**

**DONNA CROWE,** *et al.*, *on behalf of*
*themselves and all others similarly situated,*

      Plaintiffs,

v.

**MANAGED CARE OF NORTH AMERICA,**
**INC. d/b/a MCNA DENTAL, MCNA**
**INSURANCE COMPANY d/b/a MCNA**
**DENTAL, and HEALTHPLEX, INC.,**

      Defendants.

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**
**TO DEFENDANT MANAGED CARE OF NORTH AMERICA, INC.**

In accordance with Federal Rules of Civil Procedure 26 and 34, Plaintiffs hereby request that Defendants Managed Care of North America, Inc. d/b/a MCNA Dental ("MCNA, Inc.") produce for inspection and copying each of the Documents and other things described below within thirty (30) days from receipt of service, as set forth below.

**I. DEFINITIONS**

Unless otherwise indicated, the following definitions shall be applicable to these Requests.

1.      "Action" means the cases captioned *Crowe v. Managed Care of North America, Inc. d/b/a MCNA Dental, et al.*, Case No. 23-cv-61065, currently pending in the U.S. District Court for the Southern District of Florida and each of the constituent actions transferred to and consolidated therein.

2.      "Adverse Security Event" means any malicious act or suspicious event that

threatened, or was an attempt to threaten, the security, confidentiality, integrity, operations, or availability of information in or on MCNA, Inc.'s Computer System or Computer Network.

3.     "Class" means all the classes defined in Plaintiffs' Consolidated Class Action Complaint, collectively.

4.     "Communication(s)" means the transmission, sending, or receipt of information of any kind (in the form of facts, ideas, inquiries or otherwise) by one or more persons and/or between two or more persons by or through any means including, but not limited to, speech, writings, language (machine, foreign, or otherwise), computer electronics of any kind (including, but not limited to, e-mail, instant messaging, or other computer linkups), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, floppy disks, compact discs, CD-ROM discs, other removable or transportable media, sound, radio, or video signals, telecommunication, telephone, Short Message Service, Multimedia Messaging Service, teletype, telexes, telecopies, facsimile, telegram, microfilm, microfiche, photographic film of all type, or other media of any kind.

5.     "Complaint" means the Amended Consolidated Class Action Complaint filed in the Action on January 30, 2024 [D.E. 122].

6.     "Computer Network" means the data network that connects the components of MCNA, Inc.'s Computer Systems, either within MCNA, Inc. or between MCNA, Inc.'s employees or agents, any other party named in the Complaint, and/or third parties.

7.     "Computer System" includes any server (whether physical, web-based or virtual cloud), desktop computer, laptop computer, tablet, mobile phone, networking equipment, backup storage, internet site, intranet site, and the software, programs, applications (including, but not limited to, MCNA, Inc.'s affected server), scripts, operating systems, or databases used to control,

access, store, add, delete, or modify any data or information stored on any of the foregoing non-exclusive list.

8.    "Concerning" means relating to, regarding, concerning, referring to, describing, evidencing, evincing, or constituting.

9.    "Data Breach" means the unauthorized access to PII and/or PHI that occurred on or about February 26, 2023 and about which MCNA, Inc. and/or its affiliates notified impacted individuals beginning May 26, 2023.

10.    "Data Security" means MCNA, Inc.'s policies, practices, methods, procedures, operations, software, hardware, and other data security features intended to protect against unauthorized access, acquisition, theft, transfer, modification, misuse, or destruction of PII and/or PHI, including the design, implementation, and monitoring of any of these data security features and any outside vender relationships.

11.    "Documents" or "documents" includes all documents, communications, information, or tangible things, including ESI, and all versions and drafts of documents, as well as any attachment thereto or enclosure therewith, including but not limited to all written, typewritten, handwritten, printed, computerized, electronically created or stored, or graphic matter of any kind or nature, however produced or reproduced; any form of collected data for use with electronic data processing equipment; any physical object or thing, and any mechanical or electronic visual or sound recordings now or formerly in your possession, custody or control or known to you regardless of physical location.

12.    "ESI" or "Electronically Stored Information" means data and information that is stored in electronic media (including physical, virtual, solid state and web based), regardless of the media, or whether it is in the original format in which it was created, and that is retrievable in

perceivable form and includes metadata, system data, deleted data, and fragmented data.

13.     "MCNA, Inc.," "Defendant," "you," and "your" mean Managed Care of North America, Inc. d/b/a MCNA Dental, its parents, subsidiaries, affiliates, predecessor entities, and successor entities, or divisions thereof, and any of its directors, officers, employees, partners, members, representatives, and agents (including attorneys, accountants, consultants, investment advisors, and/or bankers).

14.     "Impacted Persons" means all persons whose PII and/or PHI was maintained by MCNA, Inc. and were potentially affected by the Data Breach.

15.     "Notice" means the Notice of Data Breach that MCNA, Inc. and/or its affiliates sent to Impacted Persons whose PII and/or PHI was exposed in the Data Breach.

16.     "Person" means any natural person or any business, legal or governmental entity or association.

17.     "Plaintiffs" refers to the named plaintiffs in the Complaint.

18.     "PII" or "Personal Identifying Information" means information that can be used on its own or with other information to identify, contact, locate, or impersonate a single Impacted Person; and/or

19.     "PHI" or "Protected Health Information" means information that relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.

20.     "Third party" means any individual or entity other than Plaintiffs or Defendants in the Action.

## II.  RULES OF CONSTRUCTION

1.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

2.      The singular form of a noun or pronoun includes the plural form and vice versa.

3.      The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

4.      Any headings which appear in the Request for Production section are solely for the purpose of convenience and ready reference. They do not purport to, and are not intended to, define, limit, or extend the scope or intent of the requests to which they pertain.

## III.  INSTRUCTIONS

1.      You are requested to produce all Documents in your possession, custody, or control that are described below.

2.      Unless otherwise indicated, the Documents to be produced include all Documents prepared, sent, dated, or received, or those that otherwise came into existence during the time period described herein.

3.      The production by one person, party, or entity of a Document does not relieve another person, party, or entity from the obligation to produce his, her, or its own copy of that Document, even if the two Documents are identical. However, the removal of duplicate and certain near-duplicate Documents from the set of Documents produced is permitted under certain circumstances.

4.      In producing Documents, you are requested to produce each original Document together with all non-identical copies and drafts of that Document.

5.      Documents that are in paper form or that constitute other physical objects from which recorded information may be visually read, as well as audio or video tapes and similar recordings, should be produced in their original form or in copies that are exact duplicates of the originals.

6.      Documents not otherwise responsive to a Request shall be produced if such Documents refer to or explain the Documents that are called for by the Request, or if such Documents are attached to Documents called for by the Request.

7.      Each Document requested herein is requested to be produced in its entirety and without deletion or excisions, regardless of whether you consider the entire Document to be relevant or responsive to a Request.

8.      If any Document is known to have existed but no longer exists, has been destroyed, or is otherwise unavailable, you must identify the Document, the reason for its loss, destruction or unavailability, the name of each person known or reasonably believed by you to have present possession, custody, or control of the original and any copy thereof (if applicable).

9.      If you object to any portion of any Request, it should identify the portion to which you object, state the basis for the objection, and respond to the remainder.

10.      This Request for Production is deemed continuing in nature throughout the duration of this action, and it is requested that supplemental responses and production be promptly provided as additional Documents become available. Therefore, if a Document described by a Request is not in existence or in your control at the time of the first response to the Request, but later comes into existence or into your control, you must immediately produce that Document.

11.      If you assert a claim of privilege as to one or more Documents or portions of Documents sought in this Request, you should submit a privilege log that lists, for each such

Document for which privilege is claimed: (i) the number and particular part of the Document request to which the supposed privileged information is responsive; (ii) the Bates range, file name, or Document ID number as applicable; (iii) the Document title, or in the case of emails, subject line, (iv) the type of Document (*e.g.*, letter, memorandum, account statement, etc.); (v) the Document's date and the date of any meeting, conversation, or event reflected or referred to in the Document; (vi) the signatory or signatories, author(s), addressee(s), and/ or each other person who received a copy of the Document or to whom the contents of the allegedly privileged communication contained in the Document have been disclosed, either orally or in writing; (vii) a description of the subject matter of the Document; (viii) the Document's location and custodian; and (ix) the basis for the claim of privilege. Such information should be supplied in sufficient detail to permit Plaintiffs to assess the applicability of the privilege claimed.

12.     When a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible. If a privilege is asserted with regard to part of the material contained in a Document, you should clearly indicate the portions as to which the privilege is claimed. When a Document has been redacted or altered in any fashion, you should identify as to each Document the reason for the redaction or alteration using the procedures set forth in the paragraph above. Any redaction should be clearly visible on the redacted Document.

13.     These Instructions are amplified by the Definitions above, and the Documents requested in these Requests are amplified by the Definitions, Rules of Construction, and Instructions. You should respond to each Request in the context of the Definitions, Rules of Construction, and Instructions.

## IV.  RELEVANT TIME PERIOD

The relevant time period for each Document Request is June 5, 2018, through the present (the "Relevant Time Period"), unless otherwise specifically indicated, and shall include all Documents and information that relate to such period, even though prepared or published outside of the Relevant Time Period. If a Document prepared before this period is necessary for a correct or complete understanding of any Document covered by a Request, you must produce the earlier Document as well. If any Document is undated and the date of its preparation cannot be determined, the Document shall be produced if otherwise responsive to the Request.

## V.  SPECIFIC REQUESTS

### A.  Document Requests Related to MCNA, Inc.'s Corporate Organizational Structure and Individuals Who May Possess Relevant Information

1.    Documents, including organizational charts, sufficient to show, on an annual basis, MCNA, Inc.'s organizational structure, including its parent companies, subsidiaries, affiliates, departments, and divisions.

2.    Documents, including organizational charts, sufficient to show, on a quarterly basis, MCNA, Inc.'s organizational structure with respect to any and all employees responsible for data privacy and/or Data Security who may possess relevant information concerning the Data Breach, including but not limited to MCNA, Inc.'s Chief Information Officer, Chief Information Security Officer and Chief Security Risk Manager.

3.    Documents, including organizational charts, sufficient to show, on a quarterly basis, MCNA, Inc.'s organizational structure with respect to any employees responsible for communicating with government or regulatory agencies regarding the Data Breach.

### B.  Document Requests Related to the Data Breach

4.    All Documents sufficient to identify the dates the Data Breach commenced and

concluded.

5.      All Documents regarding the source(s) or means of the Data Breach.

6.      All Documents sufficient to identify the date MCNA, Inc. became aware of the Data Breach.

7.      All Documents sufficient to identify the date MCNA, Inc. publicly disclosed the Data Breach.

8.      All Documents sufficient to identify the date or dates MCNA, Inc. specifically notified Impacted Persons of the Data Breach.

9.      All Documents sufficient to identify the number of Impacted Persons whom MCNA, Inc. specifically notified of the Data Breach, including a breakdown by U.S. state or territory of residence and the types of data accessed.

10.      All Documents sufficient to identify the number of Impacted Persons whom MCNA, Inc. did not specifically notify of the Data Breach, including a breakdown by U.S. state or territory of residence and the types of data accessed.

11.      All Documents sufficient to identify the individuals who made the decision as to whether and when to provide specific notice of the Data Breach to Impacted Persons, as well as how such decisions were made and what actual decisions were made.

12.      All Documents sufficient to identify the data and/or types of data that was/were accessed and/or accessible by unauthorized parties in connection with the Data Breach.

13.      All Documents concerning any malware, software, virus, or other technology responsible for, resulting in, or used in connection with the Data Breach.

14.      All Documents concerning the names, locations, IP addresses, MAC addresses, or other identifying or partially-identifying information of the "unauthorized activity" (referred to in

the Notice) of persons who accessed and/or were able to access PII and/or PHI in connection with the Data Breach.

15.    All Documents and communications between MCNA, Inc. and any parent, subsidiary, or affiliated entity relating to the Data Breach.

16.    All Documents and communications between MCNA, Inc. and any person or entity claiming responsibility for or involvement with the Data Breach.

17.    All Documents and communications regarding the Data Breach between MCNA, Inc. and any third party, including but not limited to vendors, insurance companies, Impacted Persons, and any member of the media, and any statements or communications issued to the public at large.

18.    All Documents concerning any notices or alerts (including such notices and alerts) that MCNA, Inc. received concerning the Data Breach before MCNA, Inc. commenced any investigation concerning the Data Breach, whether any such notice or alert was provided by an individual or automatically generated by a Computer System, Computer Network, software, or other program or mechanism, or sent by a government entity or agency, or any other third party.

**C.    Document Requests Related to the Investigations of the Data Breach**

19.    All Documents collected in connection with any investigation of the Data Breach.

20.    All Documents that MCNA, Inc. provided to or received from any governmental agency, regulatory agency, law enforcement agency, or advisory council, whether in the United States, Europe, or elsewhere, concerning the Data Breach.

21.    All Documents, including but not limited to agendas, minutes, presentations, and notes, concerning meetings of MCNA, Inc.'s Board of Directors or any executive or audit committees at which the Data Breach was discussed, and the materials reviewed by or presented

to the Board of Directors or the committee concerning the Data Breach.

22. All Documents concerning any investigations undertaken by MCNA, Inc. or anyone acting on its behalf, concerning the Data Breach, including Documents concerning the method or means by which any third parties obtained unauthorized access to MCNA, Inc.'s Computer System or Computer Network, the length of time any third party was able to access MCNA, Inc.'s Computer System or Computer Network, and the information any third party was/were able to access, view, copy, or otherwise obtain.

23. All communications, memoranda, executive summaries, analyses, and reports written by, or at the direction of, or received by, your senior managers or executives, including, but not limited to, your Chief Information Officer, Chief Information Security Officer, or Chief Information Security Risk Manager, concerning any analysis conducted by MCNA, Inc. or any third party concerning the cause of the Data Breach, including any recommendations for improvements or modifications to MCNA, Inc.'s Data Security systems or processes as a result of the Data Breach.

24. All Documents concerning forensic images of any Computer Network or Computer System (including, but not limited to, the affected server) accessed or implicated in the Data Breach, including all transactional logs, access logs, audit logs, and security and authentication logs.

25. All Documents concerning any forensic analyses conducted by MCNA, Inc. or any third party to determine the source(s), cause(s), extent, scale, or breadth of the Data Breach, including, but not limited to, any forensic images of boot drives and all transactional logs, access logs, and security and authentication logs.

26. All Documents concerning investigations performed by, and warnings issued by,

United States government entities or agencies, including the United States Senate, the United States Department of Justice, the United States Securities and Exchange Commission, the Federal Bureau of Investigation, the Federal Trade Commission, the United States Secret Service or any other government or regulatory agency or committee concerning the Data Breach.

27.     All Documents concerning investigations performed by, and warnings issued by, entities or agencies of any foreign governments concerning the Data Breach.

**D.      Documents Related to Remedial Actions Taken by MCNA, Inc. in Response to the Data Breach**

28.     All Documents relating to any paid identity theft, restoration, or credit monitoring services made available by MCNA, Inc. to Impacted Persons and the prices or cost to MCNA, Inc. for each during the Relevant Time Period.

29.     All Documents concerning any remedial measures taken by MCNA, Inc. that related to the Data Breach, including modifying MCNA, Inc.'s policies, practices, and procedures for safeguarding and protecting PII and/or PHI, and MCNA, Inc.'s engagement of outside individuals or entities to examine or modify these policies, practices, and procedures.

30.     All Documents concerning MCNA, Inc.'s notification to law enforcement of the Data Breach, including but not limited to, all communications between MCNA, Inc. and law enforcement concerning the Data Breach, and copies of any police reports.

31.     All Documents concerning why MCNA, Inc. failed to notify Impacted Persons of the Data Breach within 60 days following discovery of the Data Breach.

**E.      Document Requests Related to MCNA, Inc.'s Data Security**

32.     All Documents, policies, procedures, protocols, memoranda, reports, and other written materials directed to your executives, including, but not limited to, those written by or directed to your Chief Information Officers, Chief Privacy Officers and Chief Information Security

Officers (or their equivalent), regarding your Data Security policies and procedures prior to the Data Breach.

33.     All Documents, policies, procedures, protocols, memoranda, reports, and other written materials directed to your executives, including, but not limited to, those written by or directed to your Chief Information Officers, Chief Privacy Officers and Chief Information Security Officers (or their equivalent), regarding cybersecurity, vulnerabilities (including possible or actual cybersecurity threats) or information technology infrastructure.

34.     Documents and communications concerning any changes or alterations to MCNA, Inc.'s Data Security, including the establishment or launching of any new security measures.

35.     All Documents sufficient to identify the manner in which MCNA, Inc.'s Computer Systems process, store, access, or utilize PII and/or PHI, including Documents concerning how such systems are protected against possible breaches by unauthorized Persons.

36.     All Documents concerning the methods, procedures, or practices used by MCNA, Inc. (or any Person acting on its behalf) to encrypt, hash, tokenize, mask, truncate, obfuscate, or otherwise protect PII and/or PHI in transit and at rest.

37.     All Documents concerning MCNA, Inc.'s (or any Person acting on its behalf) use of crypto processing or cryptographic technology including tokenization methods, token management, cipher type, cipher mode, padding, key generation, key rotation, key management, and hardware security modules ("HSMs").

38.     All Documents concerning any firewalls, detection processes (including detection of intrusions and malware), distributed denial-of-service ("DdoS") protection, endpoint protection, data loss prevention, or prevention devices or software, including file integrity monitoring systems and policies, vulnerability management systems and policies, and audit log management and

Security Information Event Management ("SIEM") used by MCNA, Inc. (or any Person acting on its behalf) to protect or otherwise segregate from the general internet any Computer Systems used to process or store PII and/or PHI.

39.     Documents sufficient to identify the circumstances under which MCNA, Inc. (or any Person acting on its behalf) shares PII and/or PHI with third parties (whether or not those third parties are affiliated with MCNA, Inc.), including the means and methods by which such sharing takes place, and the steps taken by MCNA, Inc. to ensure the integrity and safety of the PII and/or PHI during the process.

40.     All Documents, including contracts, between MCNA, Inc. and any third party concerning the collection, storage, protection, sharing, and/or sale of PII and/or PHI.

41.     All Documents disseminated (by MCNA, Inc. or on MCNA, Inc.'s behalf) to MCNA, Inc.'s employees, contractors, agents, vendors, developers, or service providers concerning how to safeguard and protect PII and/or PHI, including manuals, handbooks, instructions, memoranda, training videos, or websites.

42.     All Documents relied upon by MCNA, Inc. to prepare the Documents disseminated to MCNA, Inc.'s employees, contractors, agents, vendors, developers, or service providers concerning how to safeguard and protect PII and/or PHI, including manuals, handbooks, instructions, memoranda, training videos, or websites.

43.     All communications, memoranda, executive summaries, analyses, and reports written by, or at the direction of, or received by, your senior managers or executives, including, but not limited to, your Chief Information Officer, Chief Information Security Officer, or Chief Information Security Risk Manager, concerning MCNA, Inc.'s quality assurance program for ensuring companywide compliance with its Data Security.

44.     All communications, memoranda, executive summaries, analyses, and reports written by, or at the direction of, or received by, your senior managers or executives, including, but not limited to, your Chief Information Officer, Chief Information Security Officer, or Chief Information Security Risk Manager, concerning MCNA, Inc.'s decisions whether to make expenditures and allocations or implement upgrades to ensure the security of PII and/or PHI, including any related requests for capital expenditure authorizations.

45.     All communications, memoranda, executive summaries, analyses, and reports written by, or at the direction of, or received by, your senior managers or executives, including, but not limited to, your Chief Information Officer, Chief Information Security Officer, or Chief Information Security Risk Manager, concerning MCNA, Inc.'s compliance with (or variance from) Federal Trade Commission ("FTC") guidelines establishing reasonable Data Security practices for businesses, including the "Start With Security," "Protecting Personal Information," and "Data Breach Response" guidelines.

46.     Documents and communications concerning the methods by which users, Computer System managers (including MCNA, Inc.'s system managers), database administrators, or other information technology professionals can remotely access any Computer System and applications used to transmit, process, or store PII and/or PHI.

47.     All Documents, policies, procedures, protocols, memoranda, reports, and other written materials Concerning your policy for the deletion or destruction of PII and/or PHI that you were no longer required to maintain for the purpose for which the PII and/or PHI was originally obtained.

**F.      Document Requests Related to MCNA, Inc.'s Expenditures for Data Security**

48.     Documents sufficient to determine all annual expenditures made by MCNA, Inc.

or its parent companies, subsidiaries, or affiliates, related to Data Security and Computer System infrastructure.

49.    Documents regarding comparisons of MCNA, Inc.'s expenditures on Data Security versus similar companies, including its competitors.

50.    All Documents sufficient to show, on an annual basis, the total dollar amount spent on protection of the PII and/or PHI that you maintained and other cyber security and the percentage that such expenditures represented of both MCNA, Inc.'s overhead and MCNA, Inc.'s total expenses.

**G.    Document Requests Related to Flaws and/or Vulnerabilities in MCNA, Inc.'s Data Security Procedures and Cybercrime**

51.    All Documents relating to any test, inspection, evaluation, analysis, or report concerning the safety, security, or vulnerability of, or intrusion in, any Computer System controlled by you that stores, accesses, processes, or transmits PII and/or PHI.

52.    All communications, memoranda, executive summaries, analyses, and reports concerning internal and external audits, assessments, and investigations of MCNA, Inc.'s Data Security practices and systems for protecting PII and/or PHI.

53.    All Documents concerning any notifications, warnings, or suggestions, whether from internal or external sources, about potential or actual vulnerabilities in MCNA, Inc.'s Data Security system or processes related to the collection, maintenance, or storage of PII and/or PHI.

54.    All communications, memoranda, executive summaries, analyses, audits and reports concerning MCNA, Inc.'s policies, practices, and procedures for investigating and responding to Data Security breaches, other information security incidents, or the theft of PII and/or PHI.

55.    All Documents concerning any security concerns, complaints (including but not

limited to complaints by MCNA, Inc.'s industry partners), reports, or flaws with respect to Data Security, and MCNA, Inc.'s response to or disposition of those concerns, complaints, reports, or flaws.

56.    All Documents, including agendas, minutes, presentations, and notes, concerning meetings of MCNA, Inc.'s Board of Directors, or any committee of MCNA, Inc.'s Board of Directors, at which Data Security was discussed.

57.    All Documents relating to any and all data breaches at MCNA, Inc. before the Data Breach, involving MCNA, Inc.'s Computer System or Computer Network, including:

    a)  the timeframe of all other data breaches and any Data Security incidents;

    b)  the specifications of all other data breaches and Data Security incidents, including all information concerning the exact method that was used to access MCNA, Inc.'s Computer System or Computer Network;

    c)  what type of data was accessed in any other data breaches and Data Security incidents and how much of each type of data was accessed;

    d)  any remedial measures MCNA, Inc. took as a result of any other data breaches and Data Security incidents to prevent or limit the impact of future data breaches;

    e)  any remedial measures MCNA, Inc. considered but did not take as a result of any other data breach and Data Security incident, including the reasons these measures were not taken;

    f)  the financial impact of any other data breaches and Data Security incidents on MCNA, Inc.; and

    g)  the amount and computation of compensation, if any, MCNA, Inc. paid or

offered to pay, any third party in connection with any such data breaches and Data Security incidents.

**H. Documents Related to the Relationship Between MCNA, Inc. and Plaintiffs and the Class**

58.     All Documents concerning:

a)  Plaintiffs' relationship with MCNA, Inc.;

b)  MCNA, Inc.'s storage of Impacted Persons' PII and/or PHI;

c)  MCNA, Inc.'s policies and procedures with respect to retaining Impacted Persons' PII and/or PHI;

d)  Plaintiffs' provision of PII and/or PHI to MCNA, Inc.;

e)  MCNA, Inc.'s disclosure of the Data Breach to Plaintiffs;

f)  PII and/or PHI of each Plaintiff that was accessed, breached or stolen due to Data Breach; and

g)  all Communications between MCNA, Inc. and Plaintiffs concerning the Data Breach.

59.     All Documents concerning all Communications between MCNA, Inc. and Class Members concerning the Data Breach.

60.     All Documents sufficient to identify the number of Class Members, including a breakdown by U.S. state or territory of residence, and the PII and/or PHI accessed or breached.

61.     All Documents sufficient to show all references to security and privacy on written Communications to Impacted Persons, including, but not limited to, Documents showing when and how those statements or references changed over time.

62.     All Documents and Communications concerning any claims or lawsuits brought against MCNA, Inc. that relate to its Data Security.

I.    **Documents Related to Harm to Class Members Resulting from the Data Breach**

63.    All Documents concerning MCNA, Inc.'s assessment, evaluation, or estimate of the number of Class Members that have suffered, or are likely to suffer fraud, identity theft, or other harm as a result of the Data Breach.

64.    All Documents concerning actual or potential harm to Class Members resulting from the Data Breach or MCNA, Inc.'s response to the Data Breach.

65.    All Documents sufficient to show whether the information included in the Data Breach has been exposed on the dark web.

Dated: April 30, 2024.                    By: *Jeff Ostrow*
                                          Jeff Ostrow FBN 121452
                                          **KOPELOWITZ OSTROW P.A.**
                                          One West Las Olas Blvd., Suite 500
                                          Fort Lauderdale, Florida 33301
                                          Telephone: (954) 332-4200
                                          ostrow@kolawyers.com

                                          Peter Prieto FBN 501492
                                          **PODHURST ORSECK, P.A.**
                                          One S.E. 3rd Avenue, Suite 2300
                                          Miami, Florida 33131
                                          Telephone: (305) 358-2800
                                          pprieto@podhurst.com

                                          *Interim Co-Lead Counsel for Plaintiffs*
                                          *and the Putative Classes*

                                          Stephanie A. Casey FBN 97483
                                          **COLSON HICKS EIDSON, P.A.**
                                          255 Alhambra Circle, Penthouse
                                          Coral Gables, Florida 33134
                                          Telephone: (305) 476-7400
                                          scasey@colson.com

                                          *Liaison Counsel for Plaintiffs and the Putative*
                                          *Classes*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served via email on counsel for Defendants on this 30th day of April, 2024.


*/s/ Jeff Ostrow*
Jeff Ostrow