**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

RONDA WASHBURN, DANIELLE
WEBBER, and JODIE PIERCE, *on behalf of*
*themselves and all others similarly situated,*

      Plaintiffs,

v.

CPS Solutions, LLC,

      Defendant.

Case No.: 2:25-cv-00400-ALM-EPD

Judge Algenon L. Marbley

Magistrate Judge Elizabeth P. Deavers

**DEFENDANT CPS SOLUTIONS, LLC'S MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant CPS Solutions LLC ("CPS") respectfully moves to dismiss the Amended Class Action Complaint (ECF No. 18, the "Amended Complaint" or "Am. Compl."), filed by Plaintiffs Ronda Washburn, Danielle Webber, and Jodie Pierce ("Plaintiffs").

Plaintiffs lack Article III standing to pursue their damages claims because the Amended Complaint contains no plausible allegation that they—or anyone else— experienced actual harm stemming from the data security incident that CPS suffered in December 2024. The harms that Plaintiffs assert cannot plausibly be traced to this data security incident, as the vast majority of the alleged misuse could only have been accomplished with data that was not compromised in this breach, and Plaintiffs' own pleadings point to other data breaches as the more obvious cause. Nor do Plaintiffs allege any concrete injury stemming from their allegations of actual misuse, such as unreimbursed economic loss. Plaintiffs' remaining theories—including speculative risk of future identity theft, mitigation activities to address that speculative risk, the diminished value of their

personal information, lost "benefit of the bargain," emotional distress, and loss of privacy—similarly fall short of a cognizable Article III injury sufficient to confer standing.

Even setting aside Plaintiffs' standing defects, Plaintiffs' causes of action suffer various fatal deficiencies that warrant dismissal under Rule 12(b)(6). Plaintiffs cannot plausibly allege the required elements of a negligence claim, such as the existence of a duty, a breach, or actual damages proximately caused by CPS. Their negligence per se claim improperly relies on purported violations of statutes that contain no private right of action, and therefore seeks to circumvent Congress's intended enforcement mechanisms. Their breach of fiduciary duty claim fails because Plaintiffs had no fiduciary relationship with CPS, nor do they allege a breach of any such duty. Similarly, Plaintiffs fail to allege any facts supporting either the existence of or any breach of a third-party beneficiary contract, dooming this claim as well. Finally, Plaintiffs' unjust enrichment claim fails because they do not allege that CPS knowingly and unjustly benefited from receipt of Plaintiffs' personal information.

For these reasons and those stated in CPS's attached Memorandum of Law, this Court should dismiss Plaintiffs' Amended Complaint.

Respectfully submitted,

/s/ Joel E. Sechler
Joel E. Sechler (0076320)
Carpenter Lipps LLP
280 North High Street, Suite 1300
Columbus, OH 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
sechler@carpenterlipps.com

*Trial Attorney for Defendant*
*CPS Solutions, LLC*


Katheryn M. Lloyd (0075610)
Amber L. Merl (0080655)
Carpenter Lipps LLP
280 North High Street, Suite 1300
Columbus, OH 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
lloyd@carpenterlips.com
merl@carpenterlipps.com

Jennifer S. Windom
(*admitted pro hac vice*)
Allison Holt Ryan
(*admitted pro hac vice*)
Hogan Lovells US LLP
555 13th Street NW
Washington, D.C. 20004
Telephone: (202) 637-6437
Facsimile: (202) 637-5910
jennifer.windom@hoganlovells.com
allison.holt-ryan@hoganlovells.com

*Attorneys for*
*Defendant CPS Solutions, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| RONDA WASHBURN, DANIELLE WEBBER, and JODIE PIERCE, *on behalf of themselves and all others similarly situated,* | |
|       Plaintiffs, | Case No.: 2:25-cv-00400-ALM-EPD |
| v. | Judge Algenon L. Marbley |
| CPS Solutions, LLC, | Magistrate Judge Elizabeth P. Deavers |
|       Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO**
**DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT .......................................................................................................................4

      I.       Plaintiffs Lack Article III Standing Under Rule 12(b)(1).......................................4

Plaintiffs fail to meet their Article III obligation to allege a concrete, particularized injury-in-fact fairly traceable to CPS. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The actual misuse that two Plaintiffs allege cannot survive a cursory traceability analysis and falls short of a constitutionally cognizable injury. Plaintiffs' remaining theories of injury, including speculative risk of future identity theft, mitigation activities to address that speculative risk, the diminished value of their personal information, lost "benefit of the bargain," emotional distress, and loss of privacy, likewise do not constitute a cognizable Article III injury sufficient to confer standing.

          A.      Plaintiffs' Limited Allegations of Actual Misuse Are Not<br>                 Traceable to the Phishing Incident...............................................................4

Plaintiffs' claims fail at the threshold of constitutional standing because their allegations of misuse are not fairly traceable to CPS. Article III requires that Plaintiffs' alleged injuries "be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Although two Plaintiffs allege unauthorized charges and an unauthorized credit inquiry, data appearing on the dark web, and increased spam, with one exception the data necessary to commit these acts was not compromised in the CPS data breach and thus the harms alleged cannot plausibly be traced to CPS. Moreover, Plaintiffs' own pleadings point to obvious alternative causes, including widespread unrelated data breaches and separate account compromises, further undermining traceability.

          B.      Plaintiffs Have Not Alleged a Constitutionally Sufficient Injury................8

              1.      Plaintiffs' Allegations of Attempted Fraud Are Not<br>                 Concrete Injury. ...............................................................................8

To establish an injury-in-fact based on actual misuse, Plaintiffs must allege a present, concrete harm, such as economic loss. *See Merck v. Walmart, Inc*., 114 F.4th 762, 773 (6th Cir. 2024). Yet while Plaintiffs Webber and Pierce cite a small number of purported instances of attempted fraudulent activity, they do not allege that any attempt resulted in unreimbursed charges, opened accounts, withdrawn funds, or lasting credit damage. In addition to their failure to establish traceability, this absence of any actual financial impact is dispositive. Courts consistently hold that attempted misuse alone without resulting economic loss cannot satisfy Article III. *See, e.g., Whalen v. Michaels Stores, Inc*., 689 F. App'x 89, 90 (2d Cir. 2017); *Pena v. Brit. Airways, PLC (UK)*, 2020 WL 3989055, at *2 (E.D.N.Y. Mar. 30, 2020), *aff'd*, 849 F. App'x 13 (2d Cir. 2021); *Oneal v. First Tenn. Bank,* 2018 WL 1352519, at *9 (E.D. Tenn. 2018).

2.      Risk of Future Identity Theft or Other Misuse Does Not
        Confer Standing. ...........................................................................10

Plaintiffs' allegations of future identity theft or misuse are purely speculative and cannot establish Article III standing. The Supreme Court in *TransUnion LLC v. Ramirez* squarely held that standing for damages claims cannot rest on an unmaterialized risk of future harm, which is precisely the type of conjecture Plaintiffs offer when they speculate that their data may eventually appear "for sale on the dark web" or be used for targeted advertising. 594 U.S. 413, 437 (2021). *TransUnion's* holding clarifies *Galaria v. Nationwide Mut. Ins. Co.,* which held that substantial risk of harm coupled with mitigation expenses were sufficient for standing. 663 F. App'x 384, 388 (6th Cir. 2016). As *TransUnion* now makes clear, Article III requires that "the risk of future harm [has] materialized," or that a plaintiff was "independently harmed by their exposure to the risk itself." 594 U.S. at 437. Plaintiffs do not plausibly allege misuse linked to this incident, meaning the risk of harm has not "materialized," and they identify no independent, concrete harm arising from the supposed risk alone. Plaintiffs' risk of future harm theory therefore fails as a matter of law.

3.      Plaintiffs Cannot Manufacture Article III Standing by
        Taking Steps to Mitigate a Speculative Risk. ................................12

Plaintiffs cannot satisfy Article III's requirements through self-directed mitigation efforts, because they have not shown a concrete, imminent risk of future harm. As the Sixth Circuit has explained, a plaintiff cannot "create an injury by taking precautionary measures against a speculative fear." *See Buchholz v. Tanick*, 946 F.3d 855, 865 (6th Cir. 2020). Although *Galaria* suggested that mitigation costs could support standing, this reasoning rested on the determination that the plaintiffs faced a substantial risk of harm sufficient for Article III standing. *Galaria*, 663 F. App'x at 389. Now that the Supreme Court has clarified in *TransUnion* that an unrealized risk of future harm is not sufficient to confer standing, Plaintiffs' alleged mitigation efforts do not establish cognizable injury here. *See, e.g., Doe v. Mission Essential Group*, LLC, 2024 WL 3877530, at *7 (S.D. Ohio 2024); *Tate v. EyeMed Vision Care, LLC*, 2023 WL 6383467, at *2, *4 n.6 (S.D. Ohio Sept. 29, 2023).

4.      Plaintiffs' Other Theories of Harm Fail as a Matter of
        Law. ...............................................................................................13

Plaintiffs' remaining theories are likewise inadequate to establish Article III standing. Their bare assertion that their personal information has "lost value" cannot establish a concrete injury, because they do not allege that they ever attempted to monetize their data. *See Marlin v. Associated Materials, LLC*, 2024 WL 2319115, at *3 (N.D. Ohio May 22, 2024); *Doe,* 2024 WL 3877530, at *7. Their "benefit-of-the-bargain" theory fares no better: Plaintiffs had no bargain with CPS, and even if they had, they plead no facts showing that data security services were a term of any agreement. *See, e.g., Tate*, 2023 WL 6383467, at *5 (rejecting benefit of the bargain theory as "a stretch" and "unavailing" where plaintiffs failed "to allege facts showing that data security was a condition of any bargain"). Plaintiffs' bare allegations of emotional distress are similarly deficient and are too conclusory and speculative to satisfy Article III. *See Garland v. Orlans PC*, 999 F.3d 432, 439 (6th Cir. 2021). Plaintiffs also cannot establish Article III standing

based on alleged lost privacy, as they do not allege that their information was disclosed to the public at large or that they suffered any other concrete harm.  *See Tate*, 2023 WL 6383467, at *4.

II.        Plaintiffs Fail To State a Claim Under Rule 12(b)(6)............................................16

        A.        Choice of Law Analysis............................................................................17

Although Plaintiffs filed suit in Ohio, they reside in New York and allege injuries occurring there, potentially implicating Ohio's choice-of-law rules.  A detailed choice-of-law inquiry is, however, unnecessary because Plaintiffs' claims fail under both New York and Ohio law.  *See Galaria v. Nationwide Mut. Ins. Co.*, 2017 WL 4987663, at *5 (S.D. Ohio Aug. 16, 2017) ("If two jurisdictions apply the same law, or would reach the same result applying their respective laws, a choice of law determination is unnecessary because there is no conflict, and the laws of the forum state apply.").

        B.        Plaintiffs Fail to State a Claim for Negligence (Count I). .........................18

                1.        Plaintiffs Cannot Identify Any Duty to Support a
                        Negligence Claim.............................................................................18

Plaintiffs' negligence theory fails at the outset because they cannot identify any duty under Ohio or New York law requiring a third-party vendor like CPS to safeguard their personal information.  Neither jurisdiction recognizes a general common-law duty to protect another's data from criminal third-party attacks.  *See, e.g., In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, 468 F. Supp. 2d 508, 525 (S.D.N.Y. 2006); *Jackson v. Forest City Ent., Inc.*, 675 N.E.2d 1356, 1358 (Ohio Ct. App. 1996).  Nor can Plaintiffs create such a duty by invoking a "special relationship," particularly where Plaintiffs had no direct relationship with CPS.  *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *9 (S.D.N.Y. June 25, 2010).  Ohio follows the Restatement (Second) of Torts, which limits special relationships to narrow, inapplicable circumstances, and New York courts decline to extend the doctrine in ways that would, like here, create boundless liability.  Plaintiffs' reliance on HIPAA is equally unavailing, as courts consistently hold that HIPAA cannot establish a standard of care.  *See Sheldon v. Kettering Health Network*, 40 N.E.3d 661, 672 (Ohio Ct. App. 2015); *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817, 825 (Sup. Ct. Westchester Cnty. 2020).  Finally, vague references to "industry standards" cannot create a duty where none exists, as custom may inform, but cannot supply, a duty.  *See Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, 2004 WL 359138, at *4 (S.D.N.Y. Feb. 26, 2004); *Meerhoff v. Huntington Mortg. Co.*, 658 N.E.2d 1109, 1112 (Ohio Ct. App. 1995).

                2.        Plaintiffs Allege Only Conclusory Allegations of Breach............22

Plaintiffs' negligence claim also fails because they offer only boilerplate, conclusory assertions of breach.  Plaintiffs do not allege how CPS's security program was deficient, whether CPS lacked particular controls, or how CPS failed to comply with FTC or HIPAA guidance.  Courts routinely reject such threadbare pleading, holding that plaintiffs must "describe any insufficiency in [the defendant's] security procedures" or "explain how the procedures [the defendant] adopted

failed to comply with [industry standards]." *Willey v. J.P. Morgan Chase, N.A.*, 2009 WL 1938987, at *4 (S.D.N.Y. July 7, 2009.

3.      Plaintiffs Have Not Plausibly Alleged Proximate Cause...............24

Plaintiffs' negligence claim suffers from a lack of proximate case. Proximate cause requires a direct and continuous causal link between the challenged conduct and the alleged injury. *See Whiting v. Ohio Dep't of Mental Health*, 750 N.E.2d 644, 647 (Ohio App. 2001); *Hain v. Jamison*, 268 N.E.3d 1233, 1237 (N.Y. 2016). Yet Plaintiffs rely on temporal proximity alone to connect the phishing incident to their claimed injuries, and cannot explain how the limited data impacted could have caused those harms. Making matters worse, Plaintiffs' own pleadings identify obvious alternative causes, including unrelated data breaches and separate account compromises, further undermining any assertion that this data security incident was a substantial factor in their alleged injuries.

4.      Plaintiffs Have Not Alleged Cognizable Harm. ...........................27

None of Plaintiffs' asserted injuries satisfies the requirement of actual, compensable damages. Their alleged unauthorized charges resulted in no out-of-pocket loss, and therefore does not constitute a cognizable injury. *See In re SuperValu, Inc.*, 2018 WL 1189327, at *11 (D. Minn. Mar. 7, 2018). Spam emails and calls likewise fall short. *In re Practicefirst Data Breach Litig.*, 2022 WL 354544, at *5 n.8 (W.D.N.Y. Feb. 2, 2022). The asserted risk of future identity theft is too speculative to "constitute actual damage, " *In re SuperValu, Inc.*, 925 F.3d 955, 964 (8th Cir. 2019), and courts have "uniformly rule[d]" that mitigation costs undertaken to combat a perceived risk of future identity theft are not "injur[ies] the law is prepared to remedy," *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 284 (S.D.N.Y. 2008); *Kahle v. Litton Loan Servicing, LP*, 486 F. Supp. 2d 705, 710–11 (S.D. Ohio 2007). Plaintiffs' allegations of emotional distress are conclusory and not tied to any physical injury, as Ohio law requires. *Foster v. Health Recovery Servs., Inc.*, 493 F. Supp. 3d 622, 638 (S.D. Ohio 2020). Nor have Plaintiffs plausibly alleged any actual diminution in value of their personal information. *See In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 470–71 (S.D.N.Y. 2022). Their benefit-of-the-bargain theory also fails because Plaintiffs had no relationship with CPS, much less paid CPS anything—let alone overpaid—for data security. *See Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985, 995 (W.D. Okla. 2021). Plaintiffs' asserted loss of privacy also falls short of cognizable damages. New York does not recognize a common-law privacy tort, *see Valeriano v. Rome Sentinel Co.*, 842 N.Y.S.2d 805 (App. Div. 4th Dep't 2007), and under Ohio law the privacy tort is distinct from negligence. *Eysoldt v. ProScan Imaging,* 957 N.E.2d 780, 785 (Ohio App. 2011). Finally, Plaintiffs' negligence claim is independently barred by Ohio's economic-loss rule, which "prevents recovery in tort of damages for purely economic loss." *See Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569 (6th Cir. 2006.)

C.      Plaintiffs Cannot Maintain a Negligence Per Se (Count II)
         Claim Based on the FTC Act or HIPAA. ..................................................31

Plaintiffs' negligence per se theory fails because it relies on the FTC Act and HIPAA—two statutes that do not provide a private right of action. Courts applying both Ohio and New York

law uniformly dismiss negligence per se claims premised on such statutes, recognizing that allowing them would improperly create the very private enforcement mechanisms Congress declined to provide.  *See, e.g, Cohen v. Ne. Radiology, P.C*., 2021 WL 293123, at *7 (S.D.N.Y. Jan. 28, 2021); *Sheldon*, 40 N.E.3d at 674.

D.      Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty (Count III). ................................................................................................33

Plaintiffs' allegations fall short of stating a claim for breach of fiduciary duty.  As a threshold issue, Plaintiffs did not have any relationship with CPS, and there can be no fiduciary relationship where no relationship exists at all.  Moreover, even where a relationship exists, the mere "fact that defendants stored [consumer plaintiffs'] PII and PHI does not mean that defendants were 'under a duty to act for or to give advice for the[ir] benefit.'" *Lazar v. Int'l Shoppes, LLC,* 2025 WL 1475627, at *5 (E.D.N.Y. May 22, 2025); *Brooks v. Peoples Bank*, 732 F. Supp. 3d 765, 781 (S.D. Ohio 2024).  Plaintiffs also do not plead knowing breach or damages**.**

E.      Plaintiffs' Claim for Breach of Third-Party Beneficiary Contract (Count IV) Fails. .....................................................................................34

This claim fails because Plaintiffs do not identify any contract or contractual provision that CPS allegedly breached, nor do they allege facts sufficient to plausibly establish that they are the third-party beneficiaries of any such contract.  *See Foster*, 493 F. Supp. 3d at 640.  Because Plaintiffs allege no facts suggesting that CPS or its customers intended to confer a direct, enforceable benefit on them under the purported contracts, this claim must be dismissed.

F.      Plaintiffs' Unjust Enrichment Claim (Count V) Should Be Dismissed. ................................................................................................36

Plaintiffs' unjust-enrichment claim fails for multiple reasons.  They cannot show CPS was enriched at their expense because they had no direct transactional relationship with CPS and therefore conferred no benefit on it.  Even assuming such a relationship existed, Plaintiffs do not allege that they paid anyone for data-security services, so there is no plausible basis to claim an unjust benefit.  *See Brooks*, 732 F. Supp. 3d at 782.  Nor do they plead any facts showing that any purported enrichment occurred at their expense or with CPS's knowledge, as CPS received only the payments owed for the pharmacy-technology services it was contracted to provide.  And even if CPS received some benefit, Plaintiffs do not plausibly allege that it was unjust, particularly where any harm flowed from third-party hackers and CPS delivered the services for which it was paid.  *Tate,* 2023 WL 6383467, at *8.  The claim is also duplicative of Plaintiffs' negligence and contract-based theories and therefore barred under New York law.  *Corsello v. Verizon N.Y., Inc*., 967 N.E.2d 1177, 1185 (N.Y. 2012).

CONCLUSION.....................................................................................................................39

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

<u>**Cases**</u>

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
   727 F.3d 502 (6th Cir. 2013) ...................................................20

*Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*,
   19 N.Y.S.3d 850 (N.Y. App. Div. 2015) ...................................................32

*Akerstrom v. 635 W. Lakeside, Ltd.*,
   105 N.E.3d 440 (Ohio Ct. App. 2018)...................................................33

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................17

*Attias v. CareFirst, Inc.*,
   365 F. Supp. 3d 1 (D.D.C. 2019) ...................................................20

*Barney v. PNC Bank*,
   2012 WL 12887667 (N.D. Ohio Mar. 30, 2012) ...................................................35

*Barreto v. Westbrae Nat., Inc.*,
   2021 WL 76331 (S.D.N.Y. Jan. 7, 2021) ...................................................39

*Beck v. McDonald*,
   848 F.3d 262 (4th Cir. 2017) ...................................................13

*Becker v. Cardinal Health, Inc.*,
   179 N.E.3d 769 (Ohio Ct. App. 2021)...................................................37

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................17

*Berry v. United States*,
   2010 WL 11632639 (E.D.N.Y. Apr. 5, 2010) ...................................................27

*Bishop v. Lucent Techs., Inc.*,
   520 F.3d 516 (6th Cir. 2008) ...................................................20

*Brickman v. Maximus, Inc.*,
   2022 WL 16836186 (S.D. Ohio May 2, 2022) ...................................................11, 17, 32

*Brickman v. Maximus, Inc.*,
   2023 WL 2563661 (S.D. Ohio Mar. 17, 2023)...................................................31

*Brooks v. Peoples Bank*,
   732 F. Supp. 3d 765 (S.D. Ohio 2024) ...................................................34, 37

## TABLE OF AUTHORITIES

**Page(s)**

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
    238 F. Supp. 3d 1359 (S.D. Fla. 2017) ...........................................................................37, 38

*Buchholz v. Tanick*,
    946 F.3d 855 (6th Cir. 2020) ...................................................................................12, 15, 24

*Burger v. Healthcare Mgmt. Sols., LLC*,
    2024 WL 473735 (D. Md. Feb. 7, 2024) .......................................................................15

*Burton v. MAPCO Exp., Inc.*,
    47 F. Supp. 3d 1279 (N.D. Ala. 2014) ..........................................................................9

*In re Canon U.S.A. Data Breach Litig.*,
    2022 WL 22248656 (E.D.N.Y. Mar. 15, 2022) ..............................................................30

*Carter v. Nat'l City Bank*,
    2018 WL 3543699 (S.D. Ohio July 23, 2018) ................................................................35

*Caudle v. Towers, Perrin, Forster & Crosby, Inc.*,
    580 F. Supp. 2d 273 (S.D.N.Y. 2008) ...........................................................................28

*Chambliss v. CareFirst, Inc.*,
    189 F. Supp. 3d 564 (D. Md. 2016) ..............................................................................14

*Charash v. Oberlin Coll.*,
    14 F.3d 291 (6th Cir. 1994) ..........................................................................................18

*Chen v. United States*,
    854 F.2d 622 (2d Cir. 1988)..........................................................................................32

*Cherny v. Emigrant Bank*,
    604 F. Supp. 2d 605 (S.D.N.Y. 2009)...........................................................................28

*Cianfaglione v. Lake Nat'l Bank*,
    134 N.E.3d 661 (Ohio Ct. App. 2019)..........................................................................27

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)................................................................................................10, 13

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*,
    2017 WL 1551330 (S.D. Ill. 2017)................................................................................21

*Cohen v. Ne. Radiology, P.C.*,
    2021 WL 293123 (S.D.N.Y. Jan. 28, 2021) .................................................................32

## TABLE OF AUTHORITIES

**Page(s)**

*Corsello v. Verizon N.Y., Inc.*,
  967 N.E.2d 1177 (N.Y. 2012)........................................................................................39

*Crowe v. Managed Care of N. Am.*,
  No. 0:23-cv-61065-AHS, ECF No. 160 (S.D. Fla. Aug. 16, 2024)........................................23

*Dane v. UnitedHealthcare Ins. Co.*,
  974 F.3d 183 (2d Cir. 2020)...........................................................................................22

*Doe v. Hobart & William Smith Colls.*,
  750 F. Supp. 3d 79 (W.D.N.Y. 2024)..............................................................................34

*Doe v. Mission Essential Group*,
  LLC, 2024 WL 3877530 (S.D. Ohio 2024)........................................................6, 12, 14, 30

*E.J. Brooks Co. v. Cambridge Sec. Seals*,
  105 N.E.3d 301 (N.Y. 2018)...........................................................................................36

*Eysoldt v. ProScan Imaging*,
  957 N.E.2d 780 (Ohio Ct. App. 2011)..............................................................................31

*FDIC v. Dover*,
  453 F.3d 710 (6th Cir. 2006) ..........................................................................................11

*Fellows v. CitiMortgage, Inc.*,
  710 F. Supp. 2d 385 (S.D.N.Y. 2010)...............................................................................36

*Fernandez v. Leidos, Inc.*,
  127 F. Supp. 3d 1078 (E.D. Cal. 2015)....................................................................5, 6, 26

*Ferreira v. City of Binghamton*,
  975 F.3d 255 (2d Cir. 2020)............................................................................................18

*First Am. Title Co. v. Devaugh*,
  480 F.3d 438 (6th Cir. 2007) ..........................................................................................11

*Foster v. Health Recovery Servs., Inc.*,
  493 F. Supp. 3d 622 (S.D. Ohio 2020) ................................................................29, 31, 35

*Galaria v. Nationwide Mut. Ins. Co.*,
  2017 WL 4987663 (S.D. Ohio Aug. 16, 2017).....................................................................18

*Galaria v. Nationwide Mut. Ins. Co.*,
  663 F. App'x 384 (6th Cir. 2016) .............................................................................13, 18

## TABLE OF AUTHORITIES

**Page(s)**

*Galaria v. Nationwide Mut. Ins. Co.*,
998 F. Supp. 2d 646 (S.D. Ohio 2014) ...................................................................29

*Gardiner v. Walmart Inc.*,
2021 WL 2520103 (N.D. Cal. Mar. 5, 2021)...........................................................23

*Garland v. Orlans PC*,
999 F.3d 432 (6th Cir. 2021) ..................................................................................15

*In re GEICO Customer Data Breach Litig.*,
2023 WL 4778646 (E.D.N.Y. July 21, 2023)..........................................................32

*Godwin v. Facebook, Inc.*,
160 N.E.3d 372 (Ohio Ct. App. 2020).....................................................................20

*Gordon v. Zeroed-In Tech., LLC*,
2025 WL 936415 (D. Md. Mar. 26, 2025).................................................................15

*Groob v. KeyBank*,
843 N.E.2d 1170 (Ohio 2006) ................................................................................34

*Hain v. Jamison*,
68 N.E.3d 1233 (N.Y. 2016).....................................................................................24

*Hamilton v. Beretta U.S.A. Corp.*,
750 N.E.2d 1055 (N.Y. 2021)...................................................................................20

*Hammond v. Bank of N.Y. Mellon Corp.*,
2010 WL 2643307 (S.D.N.Y. June 25, 2010) ......................................................9, 20

*Hardrick v. Huss*,
155 F.4th 518 (6th Cir. 2025) ..................................................................................12

*Holmes v. Countrywide Fin. Corp.*,
2012 WL 2873892 (W.D. Ky. July 12, 2012) ..........................................................29

*Holmes v. Elephant Ins. Co.*,
156 F.4th 413 (4th Cir. 2025) ..................................................................................15

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992).....................................................................................................7

*Hummel v. Teijin Auto. Techs., Inc.*,
2023 WL 6149059 (E.D. Mich. Sept. 20, 2023).......................................................23

\\4157-7630-3205 v1

## TABLE OF AUTHORITIES

**Page(s)**

*Hupp v. United States*,
    563 F. Supp. 25 (S.D. Ohio 1982) ......................................................................................24

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
    907 N.E.2d 268 (N.Y. 2009)...............................................................................................37

*Irwin v. Jimmy John's Franchise, LLC*,
    175 F. Supp. 3d 1064 (C.D. Ill. 2016) ...............................................................................38

*Ivanoff v. Walmart Inc.*,
    2025 WL 2207924 (S.D. Ohio Aug. 4, 2025).....................................................................10

*J-K Apparel Sales Co. v. Jacobs*,
    138 N.Y.S.3d 80 (N.Y. App. Div. 2020) ...........................................................................33

*Jackson v. Forest City Enters., Inc.*,
    675 N.E.2d 1356 (Ohio Ct. App. 1996)..............................................................................19

*Jackson v. Loews Hotels, Inc.*,
    2019 WL 6721637 (C.D. Cal. July 24, 2019).....................................................................30

*Jenkins v. Assoc. Wholesale Grocers, Inc.*,
    2025 WL 708574 (D. Kan. Mar. 5, 2025) ............................................................................5

*Johnson v. Microsoft Corp.*,
    834 N.E.2d 791 (Ohio 2005) ........................................................................................36, 37

*Judd Burstein, P.C. v. Long*,
    2018 WL 6067226 (S.D.N.Y. Nov. 20, 2018)....................................................................34

*Kahle v. Litton Loan Servicing LP*,
    486 F. Supp. 2d 705 (S.D. Ohio 2007) ..............................................................................28

*Katz v. Pershing, LLC*,
    672 F.3d 64 (1st Cir. 2012)................................................................................................15

*Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*,
    2004 WL 359138 (S.D.N.Y. Feb. 26, 2004).......................................................................21

*Krausz v. loanDepot.com, LLC*,
    2022 WL 16960928 (S.D.N.Y. Nov. 16, 2022).....................................................................9

*Krottner v. Starbucks Corp.*,
    406 F. App'x 129 (9th Cir. 2010) ..................................................................................27, 28

x

## TABLE OF AUTHORITIES

**Page(s)**

*Lazar v. Int'l Shoppes, LLC*,
    2025 WL 1475627 (E.D.N.Y. May 22, 2025) .......................................................................33

*Legg v. Leaders Life Ins. Co.*,
    574 F. Supp. 3d 985 (W.D. Okla. 2021) ...............................................................................30

*Lochridge v. Quality Temp. Servs., Inc.*,
    2023 WL 4303577 (E.D. Mich. June 30, 2023).....................................................................14

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)..........................................................................................................4, 8

*Maag v. U.S. Bank, Nat'l Ass'n*,
    2021 WL 5605278 (S.D. Cal. Apr. 8, 2021)..........................................................................23

*Mandarin Trading Ltd. v. Wildenstein*,
    944 N.E.2d 1104 (N.Y. 2011).................................................................................................35

*Marlin v. Associated Materials, LLC*,
    2024 WL 2319115 (N.D. Ohio May 22, 2024)............................................................ *passim*

*Meerhoff v. Huntington Mortg. Co.*,
    658 N.E.2d 1109 (Ohio Ct. App. 1995)................................................................................21

*Merck v. Walmart, Inc.*,
    114 F.4th 762 (6th Cir. 2024) ................................................................................................8

*In re: Michaels Stores Pin Pad Litig.*,
    830 F. Supp. 2d 518 (N.D. Ill. 2011) ....................................................................................27

*Miller v. NextGen Healthcare, Inc.*,
    742 F. Supp. 3d 1304 (N.D. Ga. 2024) ................................................................................37

*Myers v. Wakefern Food Corp.*,
    2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) ..........................................................................38

*Nageotte v. Cafaro Co.*,
    828 N.E.2d 683 (Ohio Ct. App. 2005) .................................................................................18

*Nelson v. MillerCoors, LLC*,
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) ..................................................................................39

*New Wembley LLC v. Klar*,
    202 N.E.3d 99 (Ohio Ct. App. 2022) ...................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

*Newman v. Total Quality Logistics, LLC,*
  2021 WL 1192669 (S.D. Ohio Mar. 30, 2021).........................................................31

*O'Bryan v. Holy,*
  556 F.3d 361 (6th Cir. 2009) .........................................................................18

*Oneal v. First Tenn. Bank,*
  2018 WL 1352519 (E.D. Tenn. 2018).................................................................9

*Pavlovich v. Nat'l City Bank,*
  435 F.3d 560 (6th Cir. 2006) .........................................................................31

*Pena v. Brit. Airways, PLC (UK),*
  2020 WL 3989055 (E.D.N.Y. Mar. 30, 2020)..........................................................9

*Polkowski v. Jack Doheny Companies, Inc.,*
  2025 WL 3079358 (E.D. Mich. Nov. 4, 2025).........................................................14

*In re Practicefirst Data Breach Litig.,*
  2022 WL 354544 (W.D.N.Y. Feb. 2, 2022) ..............................................16, 28, 30

*Rapp v. Dutcher,*
  557 F. App'x 444 (6th Cir. 2014) ....................................................................17

*Resnick v. AyMed, Inc,*
  693 F.3d 1317 (11th Cir. 2012) ......................................................................26

*Rider v. Uphold HQ Inc.,*
  657 F. Supp. 3d 491 (S.D.N.Y. 2023)................................................................32

*Rogozinsky v. Danek Med., Inc.,*
  1999 WL 33537323 (N.D. Ohio July 8, 1999) .......................................................32

*Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.,*
  625 F. Supp. 2d 508 (E.D. Mich. 2008)..............................................................19

*Sallie Holly v. Alta Newport Hosp., Inc,*
  2020 WL 6161457 (C.D. Cal. Oct. 21, 2020).........................................................29

*In re: Samsung Data Sec. Breach Litig.,*
  2025 WL 271059 (D.N.J. Jan. 3, 2025)...............................................................13

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.,*
  45 F. Supp. 3d 14 (D.D.C. 2014).....................................................................5

## TABLE OF AUTHORITIES

**Page(s)**

*In re Sept. 11 Prop. Damage & Bus. Loss Litig.*,
468 F. Supp. 2d 508 (S.D.N.Y. 2006) ................................................................. 19

*Sheldon v. Kettering Health Network*,
40 N.E.3d 661 (Ohio Ct. App. 2015) .................................................................. 21

*Sifuentes v. Dave Inc.*,
2023 WL 7295187 (W.D. Mich. Nov. 6, 2023) .................................................. 11

*Silivanch v. Celebrity Cruises, Inc.*,
171 F. Supp. 2d 241 (S.D.N.Y. 2001) ................................................................ 24

*Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*,
131 N.Y.S.3d 817 (Sup. Ct. Westchester Cnty. 2020) ...................................... 21

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ............................................................................................. 4

*Springmeyer v. Marriott Int'l, Inc.*,
2021 WL 809894 (D. Md. Mar. 3, 2021) ........................................................... 23

*Stephens v. Availity, L.L.C.*,
2019 WL 13041330 (M.D. Fla. Oct. 1, 2019) .................................................... 37

*In re SuperValu, Inc.*,
2018 WL 1189327 (D. Minn. Mar. 7, 2018) .................................................. 9, 27

*In re SuperValu, Inc.*,
925 F.3d 955 (8th Cir. 2019) .............................................................................. 28

*Tate v. EyeMed Vision Care, LLC*,
2023 WL 6383467 (S.D. Ohio Sept. 29, 2023) ................................................... 5

*Taylor v. UKG, Inc.*,
693 F. Supp. 3d 87 (D. Mass. 2023) .................................................................. 16

*Torres v. Wendy's Co.*,
195 F. Supp. 3d 1278 (M.D. Fla. 2016) ............................................................. 13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .................................................................................. 8, 10, 12

*Twohig v. Shop-Rite Supermarkets, Inc.*,
2021 WL 518021 (S.D.N.Y. Feb. 11, 2021) ...................................................... 39

\\4157-7630-3205 v1

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s)**</u>

*U.S. v. Osborne*,
    2013 WL 1283888 (N.D. Ohio Mar. 25, 2013) ......................................................36

*In re USAA Data Sec. Litig.*,
    621 F. Supp. 3d 454 (S.D.N.Y. 2022).......................................................................29

*Valeriano v. Rome Sentinel Co.*,
    842 N.Y.S.2d 805 (N.Y. App. Div. 2007) ...............................................................30

*In re Waste Mgmt. Data Breach Litig.*,
    2022 WL 561734 (S.D.N.Y. Feb. 24, 2022).......................................................38, 39

*WCI, Inc. v. Ohio Dep't of Pub. Safety*,
    18 F.4th 509 (6th Cir. 2021) .....................................................................................8

*Whalen v. Michaels Stores, Inc.*,
    689 F. App'x 89 (2d Cir. 2017) .................................................................................8

*Whitehead v. Grant & Weber, Inc.*,
    2022 WL 19762152 (E.D.N.Y. Dec. 30, 2022) ......................................................16

*Whiting v. Ohio Dep't of Mental Health*,
    750 N.E.2d 644 (Ohio Ct. App. 2001).....................................................................24

*Wiener v. Lazard Freres & Co.*,
    672 N.Y.S.2d 8 (N.Y. App. Div. 1998) ...................................................................33

*Willey v. J.P. Morgan Chase, N.A.*,
    2009 WL 1938987 (S.D.N.Y. July 7, 2009).................................................22, 23, 29

*Wooten v. BioLife Plasma Servs. L.P.*,
    2025 WL 2979619 (E.D. Cal. Oct. 22, 2025)..........................................................11

*Xu v. Reuters News & Media Inc.*,
    2025 WL 488501 (S.D.N.Y. Feb. 13, 2025).............................................................12

*Yanes v. Ocwen Loan Servicing, LLC*,
    2015 WL 631962 (E.D.N.Y. Feb. 12, 2015)............................................................35

*In re Zappos.com, Inc. Customer Data Sec. Breach Litig.*,
    108 F. Supp. 3d 949 (D. Nev. 2015)........................................................................16

*In re Zappos.com, Inc. Customer Data Sec. Breach Litig.*,
    2013 WL 4830497 (D. Nev. Sept. 9, 2013).............................................................38

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

*Zlotnick v. Equifax Info. Servs., LLC*,
    583 F. Supp. 3d 387 (E.D.N.Y. 2022) ......................................................................9

**Rules**

Fed. R. of Civ. P. 12(b)(1) ..........................................................................2, 4, 16, 39

Fed. R. of Civ. P. 12(b)(6) ...............................................................................2, 16, 39

**Other Authorities**

Marc E. Elovitz, Esq., et al. *Cybersecurity Update for Private Fund Managers:*
    *Lessons from Recent SEC Enforcement Actions*, 2021 WL 4782905 (Oct. 13,
    2021) ...................................................................................................................23

Restatement (Second) of Torts §§ 314A......................................................................20

## INTRODUCTION

In December 2024, CPS Solutions, LLC ("CPS"), a company that provides pharmacy operational solutions to healthcare providers, was the victim of a data security incident.  Plaintiffs Ronda Washburn ("Washburn"), Danielle Webber ("Webber"), and Jodie Pierce ("Pierce," and collectively "Plaintiffs"), are individuals who received services from CPS's healthcare-provider customers and had no direct relationship with CPS.  They now allege that their data was impacted in the incident and bring a host of claims against CPS.  None is viable.

*First*, Plaintiffs lack Article III standing.  It is their burden to allege a concrete injury-in-fact fairly traceable to CPS, and they fall far short.  Although two Plaintiffs claim limited misuse of their personal information—alleging a fraudulent credit application and a handful of unauthorized bank and credit-card charges—they do not allege that any of these attempts were successful or resulted in actual financial loss, as is necessary to establish injury-in-fact.  Worse still, nearly all of the purported misuse involved data that was not implicated in the security incident at all.  Plaintiffs' theories of harm rest on speculation and overreach: allegations of fraud and actual misuse that do not constitute injury-in-fact and cannot be traced to the security incident, a hypothetical risk of future harm, self-inflicted time and expense to mitigate that speculative risk, unsupported assertions that their personal information has lost value, and a nonexistent "benefit of the bargain" with CPS.  Their emotional distress and loss of privacy allegations are equally speculative and conclusory.

*Second,* even if Plaintiffs had standing, each of their claims independently fails as a matter of law.  Their negligence claim fails because they identify no actionable duty, no plausible breach, and no cognizable harm proximately caused by CPS.  In addition, this claim is barred in its entirety under Ohio law by the economic loss rule.  Their negligence per se theory fares no better, as it is

premised on the Federal Trade Commission Act ("FTC Act") and the Health Insurance Portability and Accountability Act ("HIPAA")—two statutes that do not provide a private right of action. Their breach of fiduciary duty claim should be dismissed for the simple reason that they do not (and cannot) allege a fiduciary relationship with CPS. Their breach of contract claim also does not pass muster because Plaintiffs do not plausibly allege that they are intended beneficiaries of any CPS contract and, in any event, they fail to plead breach. And Plaintiffs' unjust enrichment claim fails because it is duplicative of their tort and contract theory and contains no plausible allegations of any unjust benefit conferred on CPS.

Because Plaintiffs lack standing and fail to plead any viable claim, the Court should dismiss the Amended Complaint in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## **BACKGROUND**

CPS is a technology company that provides pharmacy operational technologies and solutions to more than 800 pharmacies and healthcare providers, helping patients obtain their medications at reduced or no cost. Am. Compl. ¶¶ 2, 28, 39. Plaintiffs are each citizens of New York, *id*. ¶¶ 12, 16, 20, who received services from CPS's healthcare-provider customers, *id*. ¶ 29. Plaintiffs allege that in order to receive these services, they were required to provide their personal information to their healthcare providers, who then provided it to CPS. *Id*. ¶ 29.

On approximately December 4, 2024, CPS detected unusual activity on one of its employee's email accounts. *Id*. ¶¶ 3, 39. Once detected, CPS immediately forced a password reset, disabled the affected email account, and took other steps to block any further access. *Id*. ¶ 39. CPS promptly launched an investigation and determined that an unknown actor had used the employee's email account to access limited personal information stored by CPS (the "Phishing

Incident"). *Id.* CPS notified its healthcare-provider customers of the Phishing Incident on February 10, 2025. *Id.*

By letters dated April 9, 2025, CPS notified Plaintiffs and other impacted individuals of the Phishing Incident, explaining that the personal information potentially impacted may have included names, dates of birth, addresses, health insurance information, medical information, and Social Security numbers. *Id.* ¶¶ 4, 39. The notice made clear that "[n]ot all data elements were involved for every potentially affected individual" and that "[f]or the majority of potentially affected individuals, Social Security numbers were not impacted." *Id.* ¶ 39. The notice clarified that "[d]river's license numbers, credit and debit card information, bank account information, test results, images, and hospital medical records were also not involved." *Id.*

Plaintiffs filed this putative class action on April 14, 2025, and filed an amended complaint on February 2, 2026. ECF Nos. 1 (Compl.), 18 (Am. Compl.). Plaintiffs allege that CPS had a duty to adopt reasonable security measures to protect their information from unauthorized disclosure and that it failed to fulfill that duty. Am. Compl. ¶ 35. Plaintiffs allege that they suffered: (i) increased risk of future fraud and identity theft; (ii) costs related to measures taken to mitigate that speculative risk; (iii) lost time to mitigate that speculative risk; (iv) diminution of value of their personal information; (v) lost benefit of the bargain; (vi) invasion of privacy; and (vii) emotional distress. *Id.* ¶¶ 9, 92-117, 219. They assert that CPS's alleged failure to protect their personal information has "harmed and will continue to harm" them and putative class members. *Id.* ¶ 10.

## ARGUMENT

## I.  PLAINTIFFS LACK ARTICLE III STANDING UNDER RULE 12(b)(1).

The Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. To demonstrate Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiffs bear the burden of establishing these elements, *id.*, and they fail at every turn. Of the three named Plaintiffs, only two allege purported instances of actual misuse of their personal information, yet these allegations cannot withstand a cursory traceability analysis and fall short of a constitutionally cognizable injury. And while all three Plaintiffs recite a litany of alternative injuries, none satisfy Article III's injury-in-fact requirement.[1]

### A.  Plaintiffs' Limited Allegations of Actual Misuse Are Not Traceable to the Phishing Incident.

Plaintiffs' failure to establish traceability means that its claims fail at the threshold. Article III requires that Plaintiffs' alleged harms "be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560–61 (citation modified). While Webber and Pierce allege attempted unauthorized charges, claim their emails and personal information surfaced on the dark web, and report an increase in spam, Am. Compl. ¶¶ 132, 141, none of these supposed harms are "fairly traceable" to the Phishing Incident, because the data exposed in the incident could not have enabled

---

[1] CPS respectfully reserves its right to bring a factual standing challenge at the appropriate time, including to address the data impacted in the Phishing Incident, to ensure that the parties are litigating only those claims brought by Plaintiffs over whom the Court has appropriate jurisdiction.

the misuse they describe.  The *only* plausible inference, consistent with both Plaintiffs' own pleading and common sense, is that some other third party is responsible for their alleged injuries.

In data breach cases, courts routinely dismiss cases for failure to plead traceability where, as here, the impacted data cannot plausibly facilitate the alleged harms.  For instance, in *Tate v. EyeMed Vision Care, LLC,* the plaintiff alleged injuries including fraudulent credit-card charges and an IRS notice that her tax refund would be delayed until it could properly identify her.  The court expressed skepticism that these injuries were traceable to the alleged data breach because the compromised information—"name, address, birthdate, phone number, email address, and vision insurance account number"—could not, on its own, "be used to commit financial fraud."  2023 WL 6383467, at *2, 4 n.6 (S.D. Ohio Sept. 29, 2023).  Similarly, *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litigation*, the court held there was no causation relating to allegations of fraudulent bank account and credit card activity, based on the common-sense finding that plaintiffs didn't "allege[] that credit-card, debit-card, or bank-account information was on the stolen tapes."  45 F. Supp. 3d 14, 31 (D.D.C. 2014); *see also Fernandez v. Leidos, Inc*., 127 F. Supp. 3d 1078, 1086 (E.D. Cal. 2015).  Likewise, in *Jenkins v. Assoc. Wholesale Grocers, Inc.*, the court dismissed claims premised on fraudulent PayPal purchases for failure to allege how "unauthorized actors could use the disclosed PII (his name, Social Security number, and date of birth) to make unauthorized PayPal purchases or steal [plaintiff's] money."  2025 WL 708574, at *7–8 (D. Kan. Mar. 5, 2025).  In short, absent allegations that the "PII [personal identifying information] disclosed in *this* data breach was misused," *id*. (emphasis in original), Plaintiffs lack standing to pursue claims relating to that breach.

So too here.  Webber and Pierce's allegations of data misuse are fundamentally deficient because the information required to commit their alleged harms are not alleged to have been

impacted in the Phishing Incident.  For example, Pierce asserts that she was the victim of a fraudulent bank charge, and that her email addresses and affiliated passwords were compromised based on unauthorized Facebook login attempts.  Am. Compl. ¶ 141.  But she does not allege that her bank account credentials or Facebook login information were implicated in the Phishing Incident.  That alone ends the traceability inquiry as to her.  *See Fernandez*, 127 F. Supp. 3d at 1086; *Marlin v. Associated Materials, LLC*, 2024 WL 2319115, at *2 (N.D. Ohio May 22, 2024) (rejecting allegation of credit card fraud where plaintiff "makes no attempt to tie the alleged credit card fraud suffered" to defendant, "who never possessed his credit card information").  Pierce also alleges that she was notified after the Phishing Incident that her "Private Information" appeared on the dark web.  But she construes "Private Information" far more broadly than the subset of data actually alleged to be involved in the Phishing Incident, Am. Compl. ¶ 1 n.1, and thus fails to plausibly allege that this vague allegation is fairly traceable to CPS.

Webber's allegations fare no better.  She alleges suspicious CashApp credit card charges, but nowhere alleges that her CashApp login credentials were compromised in the Phishing Incident.  *Id.* ¶ 132.  She also asserts that her email address appeared on the dark web and that spam increased shortly after the Phishing Incident—but her email address and phone number are not alleged to have been compromised in the Phishing Incident, *id.*, and so these alleged harms also necessarily fail.  *See Doe v. Mission Essential Group, LLC*, 2024 WL 3877530, at *7 (S.D. Ohio 2024) (plaintiff did not demonstrate fraudulent emails were traceable to data breach or defendants because, among other failures, plaintiff did not allege that his email address was accessed in data breach).[2]

---

[2] The only alleged data misuse involving *any* category of information actually alleged to have been affected by the Phishing Incident is Webber's unauthorized credit inquiry, which, in theory, could have been completed using a Social Security number.  Yet even this allegation is doubtful, as Plaintiffs recognize that "for the majority of potentially affected individuals, Social Security

Equally fatal to Plaintiffs' claims is that the Amended Complaint itself addresses obvious alternative explanations for the alleged injuries.  Plaintiffs acknowledge a massive "surge" in data breaches across industries in recent years, exposing the personal information of hundreds of millions of individuals.  Am. Compl. ¶¶ 56–57.  Both Webber and Pierce further allege that their personal information (distinct from the data impacted in the Phishing Incident) has been found on the dark web, strongly suggesting that they were victims of a prior, unrelated data breach.  And Pierce's allegation that her Facebook account was "compromised" "around the same time" as the Phishing Incident, *id.*, underscores that this unrelated Facebook breach—not the Phishing Incident—is the most plausible source of her alleged harm.  *Id.* ¶¶132, 141.  Taken together, these allegations break any plausible causal link to CPS and reinforce that Webber and Pierce's purported injuries stem from other security incidents not at issue here.  These are exactly the "too remote, purely contingent, or indirect" injuries that flunk Article III traceability requirements.  *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992); *see also SAIC*, 45 F. Supp. 3d at 32 (denying standing on traceability grounds and noting the "inescapable conclusion" that Plaintiff "has been subjected to another, more profound data breach").

Plaintiffs provide no plausible explanation for how the limited information implicated in the Phishing Incident could have been used to commit their alleged injuries.  Because they cannot connect their alleged injuries to CPS, the Amended Complaint should be dismissed for lack of standing.

---

numbers were not impacted."  Am. Compl. ¶ 39.  In any event, the inquiry was successfully blocked using the complimentary credit monitoring service provided by CPS.  *Id.* ¶¶ 131–32.  As discussed below, attempted misuse that was caught before causing any economic harm does not constitute injury and therefore cannot confer standing. *See infra* Section I.B.1.

**B.      Plaintiffs Have Not Alleged a Constitutionally Sufficient Injury.**

Plaintiffs also lack standing because they have not alleged any injury that is "(a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.'" *Merck v. Walmart, Inc*., 114 F.4th 762, 773 (6th Cir. 2024) (citing *Lujan*, 504 U.S. at 560).   To be "concrete," the injury must be "real" and not "abstract."  *Id.*  And "when a plaintiff claims to have standing based on the threat of a future injury, it is not enough that the future injury is reasonably likely to occur—the threatened injury must be certainly impending."  *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 515 (6th Cir. 2021) (citation omitted).  Despite Plaintiffs' "everything but the kitchen sink" pleading approach—which asserts several theories of potential harm—not one meets constitutional requirements.

1.      Plaintiffs' Allegations of Attempted Fraud Are Not Concrete Injury.

Plaintiffs Webber and Pierce contend that they have experienced attempted or actual fraud because of the Phishing Incident, but their allegations fall short.   To establish an injury-in-fact based on actual misuse, they must plead an actual (*i.e*., presently occurring) tangible harm, like physical injury or economic loss.  *Merck*, 114 F.4th 762 at 773 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)).  Neither does so.  Webber cites three suspicious CashApp charges and an unauthorized credit inquiry, Am. Compl. ¶ 132, and Pierce alleges a fraudulent bank charge, *id*. 141. But neither claims that any fraud attempt resulted in a loss: they do not allege that any funds were withdrawn, that any unauthorized accounts were opened, that they paid or were held responsible for any fraudulent charge, or that Webber suffered lasting credit damage.  *Id.* ¶ 141. Absent allegations of permanent, economic loss, mere attempted fraud is insufficient to establish Article III standing.  *See, e.g., Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89, 90 (2d Cir. 2017) (no injury-in-fact where plaintiff's credit card information was "used twice in attempted fraudulent

purchases," but "she never was either asked to pay, nor did pay, any fraudulent charge"); *Pena v. Brit. Airways, PLC (UK),* 2020 WL 3989055, at *2 (E.D.N.Y. Mar. 30, 2020), *aff'd*, 849 F. App'x 13 (2d Cir. 2021) (dismissal where plaintiff did not allege he "actually incurred any expense related to any fraudulent charge"); *Hammond v. Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *8–9 (S.D.N.Y. June 25, 2010) (unauthorized credit card charge for which plaintiff was not held financially responsible is not Article III "injury"); *Burton v. MAPCO Exp., Inc.*, 47 F. Supp. 3d 1279, 1285 (N.D. Ala. 2014) (dismissing for lack of standing because plaintiff did not "plausibly allege . . . actual damages (for example, an allegation that the charges on his account were not forgiven, and he had to pay for the charges)").[3]

The same holds true for Webber's alleged unauthorized credit inquiry.  Absent any allegation of actual financial impact or other concrete harm, a credit inquiry does not confer standing.  *See, e.g.*, *Oneal v. First Tenn. Bank,* 2018 WL 1352519, at *9 (E.D. Tenn. 2018) ("an alleged invasion of privacy resulting from an improper credit inquiry, without more, does not constitute a concrete injury in fact"); *Krausz v. loanDepot.com, LLC*, 2022 WL 16960928, at *3 (S.D.N.Y. Nov. 16, 2022) (rejecting that "hard pulls on plaintiff's credit file" could confer standing); *Zlotnick v. Equifax Info. Servs., LLC*, 583 F. Supp. 3d 387, 391 (E.D.N.Y. 2022) (rejecting standing even where plaintiff alleged his "credit score was lowered").  The Amended Complaint makes clear that CPS's complimentary credit monitoring service promptly notified

---

[3] Webber and Pierce's time spent waiting on the issuance of new credit cards, Am. Compl. ¶¶ 132, 141, is not cognizable injury either.  Plaintiffs recognize that this harm is de minimus:  "Victims affected by [data] breaches c[an] avoid much of the potential future harm by simply cancelling credit or debit cards and obtaining replacements."  *Id.* ¶ 104.  Courts agree.  "[T]ime spent disputing an unauthorized charge and having a new card issued does not constitute actual injury or monetary loss."  *In re SuperValu, Inc.*, 2018 WL 1189327, at *13 (D. Minn. Mar. 7, 2018).

Webber of the credit inquiry, enabling her to dispute it. Am. Compl. ¶ 132. This purported injury cannot confer Article III standing either.

Accordingly, even setting aside the fundamental traceability failures, Webber and Pierce's allegations of misuse independently fail to plausibly allege injury-in-fact.[4]

### 2. Risk of Future Identity Theft or Other Misuse Does Not Confer Standing.

Plaintiffs' speculative allegations of increased risk of future identify theft or other misuse likewise fail to confer standing. Am. Compl. ¶¶ 92–96, 125, 135, 144. The Supreme Court squarely rejected this theory of injury in *TransUnion*, holding that "standing for [ ] damages claims based on an asserted risk of future harm is unavailing." 594 U.S. at 437. And as *Clapper* made clear, even an "objectively reasonable likelihood" of future harm is not enough; harm must be "*certainly impending*." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–10 (2013) (emphasis in original). A plaintiff must show that "the risk of future harm [has] materialized," or that they were "independently harmed by their exposure to the risk itself." *TransUnion*, 594 U.S. at 437. Plaintiffs do not plausibly allege either type of harm that is fairly traceable to CPS. Consequently, their generalized allegations that they face an "increased risk of identity theft and fraud," Am. Compl. ¶¶ 125, 135, 144, are precisely the type of conjecture that *TransUnion* rejected.

The Supreme Court's injury analysis in *TransUnion* clarifies the Sixth Circuit's earlier, unpublished decision in *Galaria v. Nationwide Mut. Ins. Co.*, which held that substantial risk of harm coupled with mitigation expenses in the data breach context could confer standing. 663 F.

---

[4] Even if Plaintiffs Webber and Pierce had adequately alleged actual misuse (they have not), their standing cannot be imputed to Washburn. "To allow claims to proceed, the Court must be satisfied that each Named Plaintiff has suffered a redressable injury-in-fact that is traceable to each Named Defendant." *Ivanoff v. Walmart Inc.*, 2025 WL 2207924, at *11 (S.D. Ohio Aug. 4, 2025) (citing *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998)).

App'x 384, 388 (6th Cir. 2016).[5]  Indeed, as other courts have recently recognized, "TransUnion 'casts some doubt on the continued viability of Galaria' and suggests that 'Galaria's finding of an injury-in-fact based on a risk of future harm caused by a data breach may no longer be valid.'" *Marlin*, 2024 WL 2319115, at *4 (citing *Brickman v. Maximus, Inc*., 2022 WL 16836186, at *3-4 (S.D. Ohio May 2, 2022)); *see also Sifuentes v. Dave Inc.,* 2023 WL 7295187, at *3 (W.D. Mich. Nov. 6, 2023) (the "decision of the Supreme Court in *TransUnion* arguably reins in *Galaria's* holding").  The recent decision in *Marlin v. Associated Materials, LLC* is instructive on this point. There, the Court declined to follow *Galaria*, and held that plaintiffs could not demonstrate that the future harm of identity theft had materialized where they "d[id] not allege that any plaintiff lost any actual funds" due to a data breach or provide any other "plausible inference of the likelihood of harm."  2024 WL 2319115, at *4.

Here too, Plaintiffs fall short of the standing requirements established by *TransUnion*.  As discussed in Section I.B.1, not a single Plaintiff has adequately alleged that a risk of future harm has actually materialized into fraudulent charges, unreimbursed losses, or any other concrete misuse tied to the Phishing Incident.  Plaintiffs' bare allegations that "unencrypted Private Information of Plaintiffs and Class members will end up (and likely has already ended up) for sale on the dark web" is pure speculation, and does not plead "materialized" risks as to them.[6]  As

---

[5] To the extent that *TransUnion* "allegedly conflicts" with any Sixth Circuit decision, a district court is "obligated to follow the Supreme Court decision." *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 457 (6th Cir. 2007).  Moreover, unpublished decisions of the Sixth Circuit are non-precedential and bind only the parties to those cases.  *FDIC v. Dover*, 453 F.3d 710, 715 (6th Cir. 2006).

[6] Similarly, Plaintiffs' allegation that their private information *may* at some unspecified future point be used for targeted advertising, Am. Compl. ¶ 93, does not, without more, reflect that any risk of harm has materialized so as to constitute actual injury.  *See, e.g.*, *Wooten v. BioLife Plasma Servs. L.P.*, 2025 WL 2979619, at *4 (E.D. Cal. Oct. 22, 2025) (plaintiffs failed to allege actual injury because they did not allege that defendants used plaintiffs' information to engage in targeted

*TransUnion* held, the "mere risk" of future disclosure is not sufficient.  594 U.S. at 437 ("mere risk" that inaccurate credit alerts *could* one day be disclosed insufficient to confer standing).  Nor do Plaintiffs identify any independent, concrete harm traceable to their "exposure to the risk itself" that is impending and not speculative.  *Id.*; *see also Hardrick v. Huss*, 155 F.4th 518, 529 (6th Cir. 2025) (dismissing case given absence of allegations of "'separate concrete harm' beyond 'the exposure to the risk of future harm itself.'").

Because Plaintiffs identify only hypothetical scenarios of future harm, their future-risk theory does not meet Article III's requirements.

3.  Plaintiffs Cannot Manufacture Article III Standing by Taking Steps to Mitigate a Speculative Risk.

Unable to allege any injury that has actually materialized, Plaintiffs try to manufacture injury by pointing to time and effort spent working to "prevent against" speculative future harm. Plaintiffs allege that they have checked bills and accounts, Am. Compl. ¶¶ 122, 133, 142, and changed passwords, *id.* ¶¶ 133, 142, and that they anticipate spending additional "considerable time and money on an ongoing basis" to try to address some future, unidentified harms, *id.* ¶¶ 124, 135, 144.  But a plaintiff cannot "create an injury by taking precautionary measures against a speculative fear." *Buchholz v. Tanick*, 946 F.3d 855, 865 (6th Cir. 2020).  Accordingly, mitigation efforts cannot confer standing when, like here, the underlying risk is neither substantial or imminent.  *See, e.g.*, *Doe*, 2024 WL 3877530, at *5 (dismissing mitigation allegations to support standing, because where "Plaintiff has not adequately alleged a substantial or impending risk of concrete harm, he did not 'reasonably' incur these mitigation costs but rather acted based on his own speculative anticipation

---

advertising, or that plaintiffs were subject to any targeted advertising); *Xu v. Reuters News & Media Inc.*, 2025 WL 488501 at *3, (S.D.N.Y. Feb. 13, 2025) (dismissing action where "Complaint does not allege that Xu received any targeted advertising or was otherwise affected, much less that Xu was concretely harmed by any such advertising").

of harm"); *Beck v. McDonald*, 848 F.3d 262, 276–77 (4th Cir. 2017) ("[P]rophylactically spen[ding] money to ease fears of [speculative] future third-party criminality . . . is not sufficient to confer standing"); *In re: Samsung Data Sec. Breach Litig.*, 2025 WL 271059, at *10–11 (D.N.J. Jan. 3, 2025) (collecting cases and dismissing plaintiffs for lack of standing because time and money spent to monitor accounts could not confer standing). Allowing otherwise would permit enterprising plaintiffs to obtain a lower threshold for Article III standing merely by choosing to spend time or money in response to speculative concerns. *Clapper,* 568 U.S. at 416.

Although the Sixth Circuit explained pre-*TransUnion* that "it would be unreasonable to expect Plaintiffs to wait for actual misuse . . . before taking steps to ensure their own personal and financial security," this reasoning rested on the determination that the plaintiffs faced a substantial risk of harm sufficient for Article III standing. *Galaria*, 663 F. App'x at 388. Now that the Supreme Court has clarified that unrealized risk of future harm is *not* sufficient to confer standing, *supra* Section I.B.2, Plaintiffs' alleged mitigation efforts do not establish cognizable injury here. *See Tate*, 2023 WL 6383467, at *4 ("when a party takes costly steps to mitigate the risk of future harm, those costs do not create standing where the future harm is not 'certainly impending'") (quoting *Clapper*, 568 U.S. at 416); *see also Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1284 (M.D. Fla. 2016) ("The majority of courts in data breach cases have held that 'the cost to mitigate the risk of future harm does not constitute an injury in fact unless the future harm being mitigated against is itself imminent.'" (citation omitted)). Plaintiffs' self-directed mitigation efforts cannot establish Article III standing.

### 4. Plaintiffs' Other Theories of Harm Fail as a Matter of Law.

Plaintiffs' other assorted theories of alleged harm also fail to establish an injury-in-fact.

***Diminution of Value.*** Plaintiffs' bare assertion that the value of their personal information has somehow decreased, *see* Am. Compl. ¶ 108, does not establish a concrete injury. When a

plaintiff "only alleges that his PII lost monetary value due to the mere fact that it was compromised and published by bad actors" "this is not a cognizable injury for standing purposes." *Polkowski v. Jack Doheny Companies, Inc*., 2025 WL 3079358, at *5 (E.D. Mich. Nov. 4, 2025); *see also Marlin*, 2024 WL 2319115, at *3 (rejecting diminution of value theory where "[p]laintiffs never allege . . . that they were trying to derive any value from their personal data"); *Lochridge v. Quality Temp. Servs., Inc*., 2023 WL 4303577, at *4 n.2 (E.D. Mich. June 30, 2023) (loss in value of PII does not confer standing absent allegations that plaintiff attempted to sell her PII). Plaintiffs' vague reference to some hypothetical "active and robust legitimate marketplace for Private Information," Am. Compl. ¶ 107, does not cure this defect: they plead no facts showing they ever participated in such a market, intended to do so, or suffered any economic consequence tied to it. Unsurprisingly, courts consistently dismiss such speculative theories as inadequate to confer standing. *See, e.g.*, *Doe*, 2024 WL 3877530, at *7 (plaintiff's assertion of diminished value of PII failed because plaintiff does not allege that he ever tried to derive any value from his PII); *Tate*, 2023 WL 6383467, at *5 (diminution theory fails where plaintiffs do not allege they planned to sell their PII or explain how its value diminished "beyond presumptively claiming that it must have been"); *Chambliss v. CareFirst, Inc*., 189 F. Supp. 3d 564, 572 (D. Md. 2016) (no standing where plaintiffs did not allege they attempted to sell their PII or were forced to accept a lower price).

***Benefit of the Bargain.*** Plaintiffs' "benefit of the bargain" theory fares no better, because they do not plausibly allege any bargain with CPS at all. Plaintiffs contend that they overpaid their healthcare providers due to CPS's purportedly inadequate data security measures. Am. Compl. ¶ 117. But nowhere in the complaint do Plaintiffs plausibly allege that they entered into any contract with CPS, made any payments to CPS, or paid CPS specifically for data security services. To the contrary, Plaintiffs acknowledge that the only contracts at issue were between CPS and its

healthcare provider clients, *id.* ¶¶ 6, 203–07, and that they had no direct dealings with CPS, *id.* ¶ 29. Without any bargain, there can be no lost benefit of the bargain. *See Katz v. Pershing, LLC*, 672 F.3d 64, 77 (1st Cir. 2012) (plaintiff "has no bargain with the defendant and, therefore, no entitlement to any benefit from the defendant"); *Burger v. Healthcare Mgmt. Sols., LLC*, 2024 WL 473735, at *6 (D. Md. Feb. 7, 2024) (no standing where plaintiff did not allege they paid anything). Even assuming some bargain with CPS did exist, Plaintiffs fail to plausibly allege that data security services were a part of it, which further forecloses this standing theory. *See, e.g., Tate*, 2023 WL 6383467, at *5 (rejecting benefit of the bargain theory as "a stretch" and "unavailing" where plaintiffs failed "to allege facts showing that data security was a condition of any bargain made between themselves and [defendant]—other than conclusory assertions to this effect").

**Emotional Distress.** Plaintiffs' claims of "anxiety, sleep disruption, stress and fear," *see, e.g.*, Am. Compl. ¶¶ 123, 134, 143, are conclusory and too speculative to satisfy Article III. A "bare allegation of anxiety is not a cognizable, concrete injury." *Garland v. Orlans PC*, 999 F.3d 432, 439–40 (6th Cir. 2021) ("anxiety is too speculative to qualify as an injury in fact because it is merely a fear of a future harm that is not 'certainly impending'"); *Buccholz*, 946 F.3d at 865 ("undue sense of anxiety" is not concrete harm that can confer standing). Indeed, courts view these types of allegations with skepticism because they are "easy to manufacture." *Marlin*, 2024 WL 2319115, at *2 (citing *Garrett v. TransUnion, L.L.C.*, 2006 WL 2850499, at *11 (S.D. Ohio Sept. 29, 2006)). Accordingly, post-*TransUnion* cases have held that bare assertions of emotional injury like those present here do not establish concrete injury unless "incurred in response to a separate imminent harm." *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 435 (4th Cir. 2025); *Gordon v. Zeroed-In Tech., LLC*, 2025 WL 936415, at *8 (D. Md. Mar. 26, 2025) (rejecting conclusory allegations of emotional harm even where "tied to . . . [purported] loss of privacy and actual and impending identity theft");

*Whitehead v. Grant & Weber, Inc*., 2022 WL 19762152, at *3 (E.D.N.Y. Dec. 30, 2022), ("Conclusory allegations of injury and nebulous claims of emotional harm, like the ones found in Plaintiff's Complaints, are insufficient to confer standing" "following *TransUnion*").  Plaintiffs fail to allege such separate imminent harm here.

  ***Loss of Privacy.***  Finally, Plaintiffs also cannot establish Article III standing based on conclusory allegations about loss of privacy, because they do not allege that their information was disclosed to the public at large or any other concrete injury.  *See, e.g.*, *Marlin*, 2024 WL 2319115, at *3 (plaintiff failed to establish standing based on public disclosure of private facts because plaintiffs alleged only access by a single unauthorized party and no widespread disclosure to the "public as large"); *Tate*, 2023 WL 6383467, at *4 (alleged "violation of privacy" theory "inadequate to confer standing" as it "re[ies] on arguments the Supreme Court has rejected"); *see also Taylor v. UKG, Inc.*, 693 F. Supp. 3d 87, 100–01 (D. Mass. 2023) (data exfiltration, without further evidence of publication, does not constitute injury-in-fact); *In re Practicefirst Data Breach Litig*., 2022 WL 354544, at *8 (W.D.N.Y. Feb. 2, 2022) (explaining that "this theory of standing has been rejected in the data breach context where, like in this case, plaintiffs have failed to demonstrate any concrete or particularized injury associated with the disclosure") (collecting cases); *In re Zappos.com, Inc*., 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015) (loss of privacy theory insufficiently concrete where "Plaintiffs do not claim that they have suffered any damages").

  Because none of these additional theories of injury confer standing either, Plaintiffs' claims should be dismissed under 12(b)(1).

## II. <u>PLAINTIFFS FAIL TO STATE A CLAIM UNDER RULE 12(b)(6).</u>

  Separately and independently, the Amended Complaint should be dismissed because it fails to state a viable cause of action under Federal Rule of Civil Procedure 12(b)(6).  To survive a

motion to dismiss, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible only where the plaintiff "pleads factual conduct that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiffs must allege "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  A pleading therefore should be dismissed if it relies on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Rapp v. Dutcher,* 557 F. App'x 444, 447 (6th Cir. 2014).  A court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Id.*

Each of Plaintiffs' causes of action contains fatal flaws requiring dismissal.  Plaintiffs fail to adequately allege: (i) the existence of any duty to support a negligence claim, or actual damages, proximately caused, by a purported breach of any such duty; (ii) the violation of any federal statute that would support a negligence per se claim; (iii) the existence of a fiduciary relationship or a breach of any duty owed; (iv) facts supporting either the existence or breach of any third-party beneficiary contract; and (v) that CPS knowingly and unjustly benefited by receiving Plaintiffs' personal information.

### A.     Choice of Law Analysis

Although Plaintiffs filed this action in the Southern District of Ohio—where Defendant CPS is based—Plaintiffs reside in New York and allege that their injuries occurred there, raising potential conflict-of-laws questions.  Am. Compl. ¶¶ 12, 16, 20.  "A 'federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits.'" *Brickman*, 2022 WL 16836186, at *1 (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 65 (2013)).  Accordingly, Ohio's choice-of-law rules govern, and "the Ohio Supreme

Court has held that the Restatement (Second) of Conflicts governs choice of law questions in this state." *Charash v. Oberlin Coll.*, 14 F.3d 291, 296 (6th Cir. 1994).[7]

A full choice-of-law analysis is unnecessary here, however, because Plaintiffs' claims fail under either state's law.  "If two jurisdictions apply the same law, or would reach the same result applying their respective laws, a choice of law determination is unnecessary because there is no conflict, and the laws of the forum state apply."  *Galaria v. Nationwide Mut. Ins. Co.*, 2017 WL 4987663, at *5 (S.D. Ohio Aug. 16, 2017).  CPS therefore addresses both Ohio and New York law below.

## B.    Plaintiffs Fail to State a Claim for Negligence (Count I).

Under New York law, a plaintiff alleging negligence must establish: "(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result."  *Ferreira v. City of Binghamton*, 975 F.3d 255, 266 (2d Cir. 2020).  Ohio law requires the same.  *Nageotte v. Cafaro Co.*, 828 N.E.2d 683, 688 (Ohio Ct. App. 2005).  Because Plaintiffs cannot satisfy *any* of these requirements, their negligence claim fails as a matter of law and should be dismissed.

### 1.    Plaintiffs Cannot Identify Any Duty to Support a Negligence Claim

Plaintiffs' negligence claim fails at the first element because they have not plausibly alleged that CPS owed them a duty to safeguard their personal information.  Plaintiffs invoke a scattershot assortment of theories to argue that CPS owed them a duty of care, invoking: (i) common law; (ii) a "special relationship" between Plaintiffs and CPS; (iii) HIPAA; and (iv)

---

[7] While Plaintiffs bring this case as a putative class action, no class has yet been certified. Therefore, the Court need only evaluate choice of law with respect to the current named Plaintiffs. *See O'Bryan v. Holy See*, 556 F.3d 361, 381 n.8 (6th Cir. 2009).

\\4157-7630-3205  v1

industry standards.  Am. Compl. ¶¶ 163–67.  None establishes a recognized duty of care under the law.

**No General Common Law Duty.**  Plaintiffs contend that "[b]y assuming the responsibility to collect and store" their data and "using it for commercial gain," CPS—acting as a third-party vendor—had a duty to safeguard Plaintiffs' personal information.  *Id.* ¶ 163.  This theory is baseless.  No New York or Ohio state court has recognized a general duty to protect another's personal information from malicious third-party conduct (like the unauthorized actors behind the Phishing Incident here).  "As a general rule, New York law does not impose upon persons the duty to protect others from injuries caused by third parties."  *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, 468 F. Supp. 2d 508, 525 (S.D.N.Y. 2006) (citing *Purdy v. Public Adm'r of County of Westchester*, 526 N.E.2d 4, 7 (N.Y. 1988)).  Ohio is no different:  there is "no duty to act affirmatively for the protection of others" even where "harm to another is foreseeable."  *Jackson v. Forest City Enters., Inc.*, 675 N.E.2d 1356, 1358 (Ohio Ct. App. 1996).

Because neither state recognizes a free-standing duty to safeguard another's personal information absent a special relationship, this Court should decline to create one here.  *See Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.*, 625 F. Supp. 2d 508, 516 (E.D. Mich. 2008) ("This court is bound to apply state law as it currently exists, and the adoption of innovative theories of recovery is inappropriate in the exercise of diversity jurisdiction.").

**No Special Relationship.**  Plaintiffs next assert that a "special relationship" arose because they "entrusted [CPS] with their confidential Private Information" as "Patients of [CPS's] clients."  Am. Compl. ¶ 166.  But merely providing information to one's healthcare provider—whose technology vendor then processes that information—does not create a special relationship between the patient and the third-party vendor.

\\4157-7630-3205  v1

Plaintiffs allege only an attenuated connection with CPS.  As current or former patients of CPS's healthcare customers, they provided their personal information to their healthcare providers, who in turn provided it to CPS. [8]  *Id*. ¶ 29.  This does not give rise to a legal duty by CPS to protect Plaintiffs' data.  *See Hammond*, 2010 WL 2643307, at *9 (defendant owed no duty to non-customer plaintiffs in connection with data breach because "[n]one of the named Plaintiffs had any direct dealings with Defendant . . . Plaintiffs had relationships (only) with [Defendant's] institutional clients"); *Attias v. CareFirst, Inc.,* 365 F. Supp. 3d 1, 24 (D.D.C. 2019) (no duty where plaintiffs did "not allege a relationship beyond that envisioned in every day interactions with a health insurance provider").

Ohio follows the Restatement (Second) of Torts, which limits special relationships to narrow circumstances not relevant here.  *See Godwin v. Facebook, Inc.*, 160 N.E.3d 372, 379–81 (Ohio Ct. App. 2020); Restatement (Second) of Torts §§ 314A, 36, 320.  CPS is a third-party vendor, Am. Compl. ¶ 29, that falls outside of the enumerated categories and therefore no special relationship exists.

New York similarly limits special relationships that give rise to a duty of care, finding a special relationship only where the defendant "is in the best position to protect against the risk of harm" and where "the specter of limitless liability" is properly "circumscribed by the relationship." *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1061 (N.Y. 2001).  Plaintiffs cannot plausibly

---

[8] To the extent Plaintiffs elsewhere in the Amended Complaint offer contradictory and conclusory assertions of a direct relationship with CPS, *see* Am. Compl. ¶ 33 ("Plaintiffs and Class members directly or indirectly provided their Private Information to Defendant"), these allegations are not well pled.  "[C]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice" to survive a motion to dismiss.  *Bishop v. Lucent Techs., Inc*., 520 F.3d 516, 519 (6th Cir. 2008); *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B*., 727 F.3d 502, 506 (6th Cir. 2013) ("naked assertions devoid of further factual enhancement contribute nothing to the sufficiency of the complaint") (internal citations omitted).

\\4157-7630-3205  v1

allege a special relationship under this standard either. They received services from CPS's clients, not CPS itself, Am. Compl. ¶¶ 13, 17, 21, 29, 30, and nothing in the complaint indicates that CPS undertook any direct, personal, or protective duty toward them such that a special relationship was created. Imposing a duty on downstream service providers like CPS where it merely processed Plaintiffs' data would create precisely the "limitless liability" *Hamilton* warns against—effectively rendering every company that stores information into a *de facto* insurer against criminal hacking.

***No Duty Under HIPAA.*** Plaintiffs also assert that, under HIPAA, CPS had a "duty to use reasonable security measures." Am. Compl. ¶ 164. Courts have rejected this theory outright. As the court explained in *Sheldon v. Kettering Health Network*, invoking "HIPAA as an ordinary negligence 'standard of care' is tantamount to authorizing a prohibited private right of action for violation of HIPAA itself." 40 N.E.3d 661, 672 (Ohio Ct. App. 2015). The court in *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, likewise rejected a plaintiff's argument that "HIPAA may be used to establish an appropriate standard for the protection of health care information." 131 N.Y.S.3d 817, 825 (Sup. Ct. Westchester Cnty. 2020). HIPAA cannot serve as a basis for Plaintiffs' negligence claim.

***No Duty Based on Industry Standards.*** Plaintiffs' reliance on unspecified "industry standards" to argue that CPS owed Plaintiffs a duty of "reasonable care in protecting confidential data," Am. Compl. ¶¶ 165, 167, fares no better. "[C]ustom and practice do not give rise to an independent legal duty." *Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, 2004 WL 359138, at *4 (S.D.N.Y. Feb. 26, 2004); *Meerhoff v. Huntington Mortg. Co.*, 658 N.E.2d 1109, 1112 (Ohio Ct. App. 1995) (industry custom "fails to conclusively establish the legal standard of care"); *see also Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 2017 WL 1551330, at *4 (S.D. Ill. 2017) (neither "public policy concerns, [nor] the existence of industry standards" give rise to a duty in data breach

case).  At most, industry practice may inform the standard of care once a duty is established, but it cannot create a duty where, like here, none otherwise exists.  Because Plaintiffs do not allege any legal duty owed by CPS to them, their negligence claim fails at this threshold.

### 2.    Plaintiffs Allege Only Conclusory Allegations of Breach

Even if Plaintiffs had adequately alleged CPS owed them a cognizable duty (they have not), their negligence claim fails for the independent reason that the Amended Complaint contains only boilerplate assertions of breach.  Plaintiffs offer conclusory statements that CPS violated its duty to Plaintiffs by "failing to adopt, implement, and maintain adequate security measures," "failing to adequately monitor" its networks and systems, and "allowing unauthorized access." Am. Compl. ¶ 169; *see also id.* ¶ 71.[9]  Courts routinely reject these sort of threadbare allegations. Plaintiffs must "describe any insufficiency in [the defendant's] security procedures" or "explain how the procedures [the defendant] adopted failed to comply with [industry standards]." *Willey v. J.P. Morgan Chase, N.A.*, 2009 WL 1938987, at *4 (S.D.N.Y. July 7, 2009).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020); *New Wembley LLC v. Klar*, 202 N.E.3d 99, 105 (Ohio Ct. App. 2022).

Plaintiffs do not even attempt to allege how CPS's security program was deficient, whether CPS lacked particular controls, or how CPS failed to comply with FTC or HIPAA guidance. Phishing attacks are among "the most common modes through which threat actors are able to

---

[9] Indeed, Plaintiffs' conclusory allegations are contradicted by more specific allegations elsewhere in their Amended Complaint.  For example, although Plaintiffs allege that CPS failed to "adequately monitor" its networks and systems, they also allege that, in response to the Phishing Incident, CPS "immediately forced a password reset, disabled the email account, and took other appropriate steps to prevent further access" and that "[t]he email account . . .[was] secured that same day"—demonstrating an active and effective security monitoring system.  Am. Compl. ¶ 39.

breach systems,"[10] and notably absent from the pleadings here is any allegation that CPS failed to establish appropriate phishing safeguards or training. This warrants dismissal. *See, e.g., Maag v. U.S. Bank, Nat'l Ass'n*, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021) (unsupported allegations that defendant "failed to effectively monitor its systems for security vulnerabilities" did not state claim); *Springmeyer v. Marriott Int'l, Inc.*, 2021 WL 809894, at *3 (D. Md. Mar. 3, 2021) ("mere repetition of conclusory and nonspecific allegations of [the defendant's] alleged shortcomings does not overcome the need to plead sufficient facts relating to what it did or did not do that led to the injuries"); *Gardiner v. Walmart Inc*., 2021 WL 2520103, at *6 (N.D. Cal. Mar. 5, 2021) ("Plaintiff's vague allegations do not establish how Walmart failed to take reasonable measures to protect customer's data.").

In other words, Plaintiffs offer only a "formulaic recitation" that breach occurred, coupled with the conclusory premise that "a violation . . . must have occurred simply because the data loss incident occurred." *Willey*, 2009 WL 1938987, at *4 (dismissing claim on the basis that this "sort of ipse dixit pleading is insufficient"). But courts routinely reject attempts (like this) to impose de facto strict liability for cyberattacks, recognizing that "the existence of a [data] breach, by itself, does not show that systems were inadequate." *See, e.g.*, Order, *Crowe v. Managed Care of N. Am*., No. 0:23-cv-61065-AHS, ECF No. 160 (S.D. Fla. Aug. 16, 2024), at *11–12; *Hummel v. Teijin Auto. Techs., Inc.,* 2023 WL 6149059, at *5 (E.D. Mich. Sept. 20, 2023) (rejecting "troubling" request "to infer the breach of duty from the mere existence of the Cyberattack").

Plaintiffs' negligence claim therefore should also be dismissed for failure to adequately plead breach of any duty.

---

[10] Marc E. Elovitz, Esq., et al. *Cybersecurity Update for Private Fund Managers: Lessons from Recent SEC Enforcement Actions*, 2021 WL 4782905 (Oct. 13, 2021).

### 3.  Plaintiffs Have Not Plausibly Alleged Proximate Cause

Plaintiffs' negligence claim also suffers from lack of proximate cause.  Proximate cause requires a direct, continuous link between the challenged conduct and the alleged injury.  *See Whiting v. Ohio Dep't of Mental Health*, 750 N.E.2d 644, 647 (Ohio Ct. App. 2001); *Hain v. Jamison*, 68 N.E.3d 1233, 1237 (N.Y. 2016) (requiring "particular act of negligence" be "substantial cause" of injury).  Because Plaintiffs fail to meet the constitutional minimum of traceability, *see supra* Section I.A, they necessarily cannot clear the more exacting proximate cause standard.  *See Buchholz*, 946 F.3d at 866 ("The standard for establishing traceability for standing purposes is less demanding than the standard for proving tort causation.").

Plaintiffs' proximate cause allegations rest solely on temporal proximity.  In other words, they ask the Court to infer causation simply because their asserted harms took place sometime after the Phishing Incident.  Am. Compl. ¶ 180.  But a "temporal relationship by itself provides no evidence of causation."  *Silivanch v. Celebrity Cruises, Inc*., 171 F. Supp. 2d 241, 257 (S.D.N.Y. 2001); *Hupp v. United States*, 563 F. Supp. 25, 30 (S.D. Ohio 1982) (referencing "volumes of authority holding that a temporal relationship by itself is not sufficient to establish causation").

Plaintiffs' own pleadings underscore the causal gap.  According to the Amended Complaint, the Phishing Incident did *not* expose Plaintiffs' phone numbers, email addresses, login credentials, passwords, driver's license numbers, or payment card or bank account data.  Am. Compl. ¶¶ 39, 121, 130, 140.  Yet Plaintiffs seek to link the Phishing Incident to alleged frauds that require precisely this type of information.  Plaintiffs Webber and Pierce both allege that they were notified that their email accounts and passwords were found on the dark web, *id.* ¶¶ 132, 141, while Pierce further alleges that her Facebook account was compromised and an unauthorized charge was made on her bank account, *id.* ¶ 141, and Webber further alleges fraudulent charges

on her CashApp credit card, *id.* ¶ 132. Both also cite an uptick in spam to their email and phone numbers. *Id.* ¶¶ 132, 141.

These alleged injuries cannot plausibly stem from the Phishing Incident. The data exposed in this attack did not include the login credentials or contact information necessary to access Plaintiffs' bank, CashApp, or Facebook accounts, particularly given that Plaintiffs' email addresses and phone numbers were not exposed. Webber and Pierce also do not allege that the personal information they claim was discovered on the dark web is the same information implicated in the Phishing Incident. *Id.* ¶¶ 132, 141. In fact, Webber alleges the opposite—that only her email and affiliated passwords, which were *not* disclosed in the Phishing Incident—have been found on the dark web. *Id.* ¶ 132. The sole instance of alleged fraudulent activity involving *any* category of information actually alleged to have been affected by the Phishing Incident is Webber's unauthorized credit inquiry, which, by Plaintiffs' own telling, was successfully blocked using the complimentary credit monitoring service provided by CPS.[11] *Id.* ¶¶ 131–32.

This necessarily defeats causation for all of Washburn and Pierce's claims of actual misuse, with the possible exception of Webber's unauthorized credit inquiry allegation. In *SAIC*, the court found causation lacking between alleged fraudulent bank account activity and stolen data because of the same fatal "problem" present here: "[n]o one alleges that credit-card, debit-card, or bank-account information was . . . stolen" so the injury could not "be linked to Defendants' conduct."

---

[11] Although Webber alleges that her personal information purportedly compromised in the Phishing Incident included "some combination of her full name, date of birth, address, health insurance information . . . medical information . . . and Social Security number," Am. Compl. ¶ 130, the notice letter she received stated that "[f]or the majority of potentially affected individuals, Social Security numbers were not impacted," *id.* ¶ 39. Even assuming the truth of her allegations for the purposes of this motion, the fact that the unauthorized credit inquiry could only have been completed using her Social Security number—which the notice letter indicates was unlikely to have been affected—casts doubt on whether her allegation can ultimately be supported.

45 F. Supp. 3d at 31. *See also Fernandez*, 127 F. Supp. 3d at 1086 ("Plaintiff's allegations that someone attempted to open a bank account in his name, attempted to log in to his email accounts, and that he received an increased number of email advertisements targeting his medical conditions do not allege injuries in fact fairly traceable to the Data Breach, since Plaintiff has not alleged that bank account information or email addresses were on the stolen backup data tapes.").

Plaintiffs' own pleadings also reveal obvious alternative causes, further undermining Plaintiffs' claim that the Phishing Incident was the proximate cause of their alleged injuries. The Amended Complaint emphasizes the "surge" of data breaches across all industries in recent years affecting the data of hundreds of millions of individuals. Am. Compl. ¶¶ 56–57. And Plaintiffs' individualized allegations reinforce this point: Pierce implicitly concedes that her Facebook account was separately hacked around the same time as the Phishing Incident, *id*. ¶ 141, as none of the data involved in the Phishing Incident could have provided access to her Facebook account. The "unauthorized login attempts on her social media account" and resulting compromise of Pierce's email addresses and associated passwords are far more likely to be the source of much of the harms she alleges, including the significant uptick in spam emails. *Id*.

Moreover, it is telling that none of the Plaintiffs allege that their personal information has never previously been exposed in a data breach, weakening any claim that the Phishing Incident was a substantial factor in their alleged harms. *See, e.g., Resnick v. AvMed, Inc*, 693 F.3d 1317, 1326–27 (11th Cir. 2012) (absent allegations that plaintiffs never had data stolen in other breaches and that identity theft occurred close in time using the same data stolen, "we doubt whether the Complaint could have survived a motion to dismiss").

For all of these reasons, Plaintiffs have not plausibly alleged proximate cause, and their negligence claim should be dismissed on this additional ground.

\\4157-7630-3205 v1

4. <u>Plaintiffs Have Not Alleged Cognizable Harm.</u>

Finally, Plaintiffs' negligence claim also fails because they do not allege actual, legally cognizable injury—an essential element of negligence. *See Berry v. United States,* 2010 WL 11632639, at *3 (E.D.N.Y. Apr. 5, 2010) ("Actual loss, harm or damage" is required); *see also Cianfaglione v. Lake Nat'l Bank,* 134 N.E.3d 661, 666–67 (Ohio Ct. App. 2019) (same). Plaintiffs identify nothing more than a grab-bag of speculative or non-compensable purported harms, including (i) alleged fraudulent activity; (ii) risk of future fraud or identity theft, (iii) mitigation costs, (iv) emotional distress (v) loss of the value of personal information, (vi) loss of the benefit of the bargain, and (vi) loss of privacy. Am. Compl. ¶¶ 181–82. None of these theories constitutes the concrete, legally cognizable damages necessary to sustain a negligence claim (which is an even stricter showing than required to establish standing). *Krottner v. Starbucks Corp.,* 406 F. App'x 129, 131 (9th Cir. 2010).

*First,* while Plaintiffs Pierce and Webber allege certain unauthorized account activity, neither pleads any out-of-pocket loss. Webber claims that a credit account inquiry was made in her name in February 2025, but it was swiftly flagged and disputed through CPS's complimentary credit monitoring. Am. Compl. ¶ 132. She also alleges three suspicious CashApp charges, *id.*, while Pierce alleges a single fraudulent bank charge. *Id.* ¶ 141. Setting aside that these allegations are not plausibly traceable to the Phishing Incident, *supra* Section I.A, neither alleges that they were held responsible for these supposedly fraudulent charges and incurred an actual, unreimbursed monetary loss—a requirement for injury. *In re: SuperValu, Inc.,* 2018 WL 1189327, at *11 ("a cardholder's mere allegation of an unauthorized charge, unaccompanied by an out-of-pocket loss, is not sufficient to state an actionable injury"); *In re: Michaels Stores Pin Pad Litig.,*

830 F. Supp. 2d 518, 527 (N.D. Ill. 2011) ("Plaintiffs were reimbursed for all unauthorized withdrawals and bank fees and, thus, suffered no out-of-pocket losses.").

To the extent Plaintiffs Webber and Pierce allege harm stemming from spam emails and calls, Am. Compl. ¶¶ 132, 141, this too is not cognizable injury. Irritation is not injury. *See, e.g., In re Practicefirst Data Breach Litig.*, 2022 WL 354544, at *5 n.8 (even if plaintiff experienced increase in spam after data breach, such allegations would not constitute injury-in-fact) (collecting cases). Similarly, in *Cherny v. Emigrant Bank*, even where the plaintiff used a unique email for his account with defendant and started receiving spam emails shortly after that email address was compromised—meaning that, unlike here, causation plausibly existed—the court held there was no "actual injury for which damages are appropriate." 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009).

*Second,* Plaintiffs' allegations of a heightened risk of future identity theft do not constitute actual damages. Am. Compl. ¶ 181. The speculative threat of future identify theft, standing alone, is not cognizable harm. *See In re SuperValu, Inc.*, 925 F.3d 955, 964 (8th Cir. 2019) ("A purely speculative injury is by definition not 'real and measurable' and cannot constitute actual damage."); *Krottner*, 406 F. App'x at 131 ("danger of future harm" cannot "establish[] a cognizable injury for purposes of [Plaintiffs'] negligence claim"). For the same reason, time or expenses incurred guarding against such a speculative risk are not recoverable. Courts have "uniformly ruled" that mitigation costs undertaken to combat a perceived risk of future identity theft are not "injur[ies] the law is prepared to remedy." *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 284 (S.D.N.Y. 2008); *Kahle v. Litton Loan Servicing LP*, 486 F. Supp. 2d 705, 710–11 (S.D. Ohio 2007) (rejecting harm premised in time and money spent monitoring credit that are "solely the result of a perceived risk of future harm"). Plaintiffs' allegations of attempted misuse do not change this result: "[u]nsuccessful attempts by unknown

parties to open financial accounts are not enough to support a claim for credit monitoring damages without a direct financial detriment to the victim." *Holmes v. Countrywide Fin. Corp.*, 2012 WL 2873892, at *10 (W.D. Ky. July 12, 2012) (collecting cases).

*Third,* Plaintiffs' alleged "anxiety, emotional distress," and similar intangible fears also "do[] not rise to the level of actual damages" to support a negligence claim. *Willey*, 2009 WL 1938987, at *10; s*ee Sallie Holly v. Alta Newport Hosp., Inc*, 2020 WL 6161457, at *3–4 (C.D. Cal. Oct. 21, 2020) (allegations that plaintiff "experienced fear of identity theft, embarrassment, generalized anxiety . . . emotional pain and upset" were "too sparse and conclusory" to support claim for damages). Moreover, under Ohio law, claims for emotional distress cannot "proceed absent an allegation that Plaintiff 'feared or saw some quantifiable physical loss.'" *Foster v. Health Recovery Servs., Inc*., 493 F. Supp. 3d 622, 638 (S.D. Ohio 2020) (quoting *Lawyers Coop. Publ'g Co. v. Muething*, 603 N.E.2d 969, 974 (Ohio 1992)). Plaintiffs' failure to allege any physical injuries dooms their claims premised on emotional distress. *Id.*

*Fourth,* Plaintiffs fail to plead any facts plausibly showing that the Phishing Incident diminished the value of their personal information. Without factual allegations explaining how their data became less valuable as a result of the Phishing Incident or how Plaintiffs attempted (or planned) to monetize their personal information, their theory amounts to an unsupported legal conclusion. *See Galaria v. Nationwide Mut. Ins. Co.,* 998 F. Supp. 2d 646, 659–60 (S.D. Ohio 2014) ("Regardless of whether Named Plaintiffs argue the value of their PII has merely diminished or whether they allege complete deprivation of value, they have failed to allege any facts explaining how their PII became less valuable to them (or lost all value) by the data breach"), *rev'd on other grounds,* 663 F. App'x 384 (6th Cir. 2016); *In re USAA Data Sec. Litig*., 621 F. Supp. 3d 454, 470–71 (S.D.N.Y. 2022) (plaintiffs did not "plausibly allege damages based on the lost value

29

of their [PII]" where they supplied "only general allegations regarding the value of their [PII]" and did "not allege they could have monetized their [PII] or that their [PII] were actually monetized"); *Doe*, 2024 WL 3877530, at *7 (no diminution in value of PII under lower injury-in-fact standard where Plaintiff failed to "allege that he ever tried to derive any value from his PII").

*Fifth*, Plaintiffs' "benefit of the bargain" theory also fails.  Plaintiffs do not allege that they paid (much less overpaid) for any services from CPS.  They did not directly interact with CPS at all, let alone overpay CPS for data security.  Courts regularly dismiss damages claims where plaintiffs neither "paid any sort of premium in exchange for data security" nor alleged "that that the data breach diminished the value of the [underlying services] he received in return." *Legg v. Leaders Life Ins. Co*., 574 F. Supp. 3d 985, 995 (W.D. Okla. 2021) (rejecting plaintiff's benefit of the bargain theory in data breach action); *In re Practicefirst Data Breach Litig*., 2022 WL 354544, at *8 n.11 (rejecting argument that plaintiffs "failed to receive the 'benefit of their bargain'" where they "provid[ed] their private information to their medical providers, who then entrusted the data to defendants"); *Jackson v. Loews Hotels, Inc*., 2019 WL 6721637, at *2 (C.D. Cal. July 24, 2019) (rejecting "benefit of the bargain" theory where there was no explicit "promise to earmark a portion of the purchase price for ensuring data safety").

*Sixth*, Plaintiffs' asserted loss of privacy is not cognizable injury.  New York does not recognize a common-law privacy tort, and courts there reject attempts to repackage such a theory as negligence. *See Valeriano v. Rome Sentinel Co*., 842 N.Y.S.2d 805, 806 (N.Y. App. Div. 2007) (allowing negligence claim for loss of privacy would circumvent New York's refusal to recognize common law privacy tort); *see also In re Canon U.S.A. Data Breach Litig*., 2022 WL 22248656, at *8 (E.D.N.Y. Mar. 15, 2022) (no supporting authority "for the proposition that a loss of privacy can constitute damages for the purposes of a negligence claim").  And while Ohio recognizes

30

invasion of privacy as an intentional tort, it is distinct from negligence.  *See Eysoldt v. ProScan Imaging,* 957 N.E.2d 780, 785 (Ohio Ct. App. 2011).

Even if Plaintiffs had adequately alleged injury (they have not), if the court were to apply Ohio law, the economic loss doctrine bars their negligence claims in their entirety.  *See Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569 (6th Cir. 2006) ("economic-loss rule generally prevents recovery in tort of damages for purely economic loss").  Indeed, this Court has previously held that where, like here, a "Plaintiff's tort and breach of contract claims are premised on the same allegations of wrongdoing and are based on the same claims for damages," negligence claims are barred.  *Foster*, 493 F. Supp. 3d at 639 (J. Marbley) (economic loss rule barred plaintiff's recovery of credit monitoring costs incurred following data breach because tort and breach of contract claims were premised on same allegations); *Brickman v. Maximus, Inc*., 2023 WL 2563661, at *2 (S.D. Ohio Mar. 17, 2023) (dismissing data breach negligence claims under economic loss doctrine); *Newman v. Total Quality Logistics, LLC*, 2021 WL 1192669, at *6 (S.D. Ohio Mar. 30, 2021) (same).

Although failing to plead even one element of negligence would require dismissal, Plaintiffs fail to allege all four of the required elements, including duty, breach, proximate cause, and cognizable damages.  Their negligence claim therefore fails as a matter of law.

### C.  Plaintiffs Cannot Maintain a Negligence Per Se (Count II) Claim Based on the FTC Act or HIPAA.

Plaintiffs' negligence per se claim also fails because neither the FTC Act nor HIPAA supports a negligence per se theory.  Am. Compl. ¶¶ 186–96.  Courts applying both New York and Ohio law uniformly hold that negligence per se claims cannot be predicated on a federal statute that lacks a private enforcement mechanism.

31

Under New York law, "the unexcused omission or violation of a duty imposed by statute for the benefit of a particular class is negligence itself." *Chen v. United States*, 854 F.2d 622, 627 (2d Cir. 1988). But "not every statutory violation constitutes negligence per se . . . there must be some implied or express private right of action in the underlying statute itself." *In re GEICO Customer Data Breach Litig.*, 2023 WL 4778646, at *15 (E.D.N.Y. July 21, 2023), *R. and R. adopted*, 691 F. Supp. 3d 624 (E.D.N.Y. 2023). Accordingly, courts applying New York law consistently dismiss negligence per se claims premised on the FTC Act and HIPAA because neither statute provides a private right of action. *See, e.g., Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 503 (S.D.N.Y. 2023) (dismissing negligence per se claim because holding otherwise "would effectively afford a private right of action that the [FTC Act] does not recognize—contravening the legislative scheme"); *Cohen v. Ne. Radiology, P.C.*, 2021 WL 293123, at *7 (S.D.N.Y. Jan. 28, 2021) (dismissing negligence per se claim given that "[n]either the [HIPAA] nor the [FTC Act] provide for an express private right of action"); *Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*, 19 N.Y.S.3d 850, 859 (N.Y. App. Div. 2015) (dismissing negligence per se claim "[a]s HIPAA and its regulations do not create a private right of action").

Ohio law is the same. "[A] negligence *per se* claim cannot succeed if the underlying statute does not allow for a private right of action." *Rogozinsky v. Danek Med., Inc.*, 1999 WL 33537323, at *2 (N.D. Ohio July 8, 1999). Consistent with this principle, courts routinely dismiss negligence per se claims premised on either the FTC Act and HIPAA. *See, e.g., Brickman*, 2022 WL 16836186, at *7 (dismissing negligence per se claim in data breach case because "Section 5 of the [FTC Act] does not provide a private right of action"); *Sheldon*, 40 N.E.3d at 674 (rejecting HIPAA-based negligence per se theory because HIPAA "universally has been held not to authorize

a private right of action, [and] to permit HIPAA regulations to define per se the duty and liability for breach is no less than a private action to enforce HIPAA, which is precluded").

Because neither HIPAA nor the FTC Act provides a private right of action, Plaintiffs' negligence per se claim fails as a matter of law and should be dismissed with prejudice.

### D.     Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty (Count III).

Plaintiffs' allegations fall well short of stating a claim for breach of fiduciary duty. Under both New York and Ohio law, a plaintiff must plausibly allege: (1) a fiduciary relationship with the defendant, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct. *See J-K Apparel Sales Co. v. Jacobs*, 138 N.Y.S.3d 80, 83 (N.Y. App. Div. 2020); *Akerstrom v. 635 W. Lakeside, Ltd*., 105 N.E.3d 440, 446 (Ohio Ct. App. 2018).  Plaintiffs fail each requirement.

Plaintiffs' assertion that merely "g[iving] Defendant their Private Information," Am. Compl. ¶ 198, somehow creates a fiduciary relationship has no basis in the law.  As a threshold issue, Plaintiffs did not have *any* relationship with CPS.  They provided their personal information to their healthcare providers, who in turn shared this information with CPS.  *See id*. ¶ 29 ("Defendant's clients . . . provided [Plaintiffs'] Private Information to Defendant.").  There can be no fiduciary relationship where no relationship exists at all.

Moreover, courts have consistently rejected attempts to transform the routine receipt or storage of PII into a fiduciary obligation, even where a relationship between the parties otherwise exists.  The mere "fact that defendants stored [consumer plaintiffs'] PII and PHI does not mean that defendants were 'under a duty to act for or to give advice for the[ir] benefit.'" *Lazar v. Int'l Shoppes, LLC,* 2025 WL 1475627, at *5 (E.D.N.Y. May 22, 2025) (citing *Spinelli v. Nat'l Football League*, 903 F.3d 185, 207 (2d Cir. 2018)).  Numerous courts have found similarly.  *See Wiener*

*v. Lazard Freres & Co*., 672 N.Y.S.2d 8, 14 (N.Y. App. Div. 1998) ("the mere communication of confidential information" does not, by itself, "create a fiduciary relationship between a [company] and its customers"); *Brooks v. Peoples Bank*, 732 F. Supp. 3d 765, 781 (S.D. Ohio 2024) (no fiduciary duty arose even where there was a banking relationship, defendant accepted and maintained plaintiffs' PII, and defendant published a privacy statement on their website); *Groob v. KeyBank*, 843 N.E.2d 1170, 1175 (Ohio 2006) (declining "to impose a fiduciary duty on a [company] whenever it receives confidential information").

Plaintiffs also fail to plead any knowing breach or resulting damages, both of which are required to state a fiduciary-duty claim. As with their negligence claim, Plaintiffs do not identify any conduct that could constitute a breach, much less a *knowing* one. *See Judd Burstein, P.C. v. Long*, 2018 WL 6067226, at *8 (S.D.N.Y. Nov. 20, 2018), *aff'd*, 797 F. App'x 585 (2d Cir. 2019) (dismissing breach of fiduciary duty claim where Plaintiff failed to allege knowing breach and defendant had good-faith reasons for his actions). And Plaintiffs again fail to allege causation or damages for the same reasons established above. *See supra* Section II.B.3–4.

### E. Plaintiffs' Claim for Breach of Third-Party Beneficiary Contract (Count IV) Fails.

This claim fails at the outset because Plaintiffs do not identify any contract or contractual provision that CPS allegedly breached, nor sufficient facts to plausibly support that they are the third-party beneficiaries of such contract.

Under both New York and Ohio law, to plead a third-party beneficiary claim, a plaintiff must allege: "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *Doe v. Hobart & William Smith Colls.*, 750 F. Supp. 3d 79, 119–20

(W.D.N.Y. 2024) (citing *State of Cal. Pub. Emps. Ret. Sys. v. Shearman & Sterling*, 741 N.E.2d 101, 104 (N.Y. 2000)); *see also Carter v. Nat'l City Bank*, 2018 WL 3543699, at *11 (S.D. Ohio July 23, 2018), *R. and R. adopted*, 2018 WL 6681226 (S.D. Ohio Dec. 19, 2018) (similar).

It is "a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract" and "specify[ing] what provisions of that contract were breached." *Foster*, 493 F. Supp. 3d at 640 (citing *Robinson v. Chuy's Opco, Inc*., 2017 WL 4247547, at *3 (S.D. Ohio Sept. 25, 2017)) (explaining that the "Sixth Circuit does not permit a party to allege, in a cursory manner, the existence of a contract without pointing to specific language that was actually breached") (J. Marbley).  Vague allegations that CPS "breached the contracts it entered into with its clients," Am. Comp. ¶ 206, flunk this standard. *See also Barney v. PNC Bank*, 2012 WL 12887667, at *9 (N.D. Ohio Mar. 30, 2012) (dismissing third-party beneficiary contract claim where plaintiff "fail[ed] to either attach the specific contract to their Complaint or identify the specific contractual provisions that have been breached"), *aff'd sub nom.*, *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920 (6th Cir. 2013); *Yanes v. Ocwen Loan Servicing, LLC*, 2015 WL 631962, at *2 (E.D.N.Y. Feb. 12, 2015) ("Without pleading the terms of the contract or contracts that [plaintiff] relies upon, [plaintiff's] claim fails.").

Plaintiffs similarly fail to identify the contract or term that purportedly grants them third-party beneficiary rights.  The Amended Complaint contains only conclusory assertions that Plaintiffs are third-party beneficiaries of unspecified contracts between CPS and its unnamed customers.  Am. Compl. ¶ 203.  But Plaintiffs' conclusory assertion that the unnamed contracts "were made expressly for the benefit of Plaintiffs and the Class," *id*. ¶ 206, is legally insufficient. Plaintiffs allege no facts suggesting that CPS or its customers intended to provide them a direct, enforceable benefit under the purported contracts, so this claim must be dismissed.  *Mandarin*

*Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011) (dismissing complaint that "only offered conclusory allegations without pleading the pertinent terms of the purported agreement," because by failing to plead the "salient terms of a valid and binding contract, [plaintiff] cannot show that the contract was intended for its immediate benefit"); *Fellows v. CitiMortgage, Inc*., 710 F. Supp. 2d 385, 406 (S.D.N.Y. 2010) (dismissing third-party beneficiary breach of contract claim because plaintiff "points to no language in the Servicing Contract that clearly evidences the parties' intent to permit him to enforce the agreement" against defendant); *U.S. v. Osborne*, 2013 WL 1283888, at *3 (N.D. Ohio Mar. 25, 2013) (dismissing third-party beneficiary breach of contract claim and noting that "[i]n construing whether a contract was made for the direct or incidental benefit of a third party, the Court necessarily must look to the language of the contract at issue"). For all of these reasons, Plaintiffs' breach of contract claim should be dismissed.

### F.     Plaintiffs' Unjust Enrichment Claim (Count V) Should Be Dismissed.

Plaintiffs' unjust enrichment claim is also unviable.  Under New York law, an unjust enrichment claim has three requirements: (1) "the [defendant] was enriched," (2) "at the plaintiff's expense," and (3) "that it is against equity and good conscience to permit [the defendant] to retain what is sought to be recovered."  *E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E.3d 301, 312 (N.Y. 2018).  Ohio applies a similar standard.  *See Johnson v. Microsoft Corp*., 834 N.E.2d 791, 799 (Ohio 2005) (requiring (1) "a benefit conferred by a plaintiff upon a defendant"; (2) "knowledge by the defendant of the benefit"; and (3) "retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment").  Plaintiffs fail to plead any of these elements here.

*First,* Plaintiffs cannot show that CPS was unjustly enriched at their expense, because they have no direct transactional relationship with CPS through which they could have conferred any

36

economic benefit.  *See* Am. Compl. ¶ 29 ("Defendant's clients . . . provided [Plaintiffs'] Private Information to Defendant.").  This failure is fatal.  *See IDT Corp. v. Morgan Stanley Dean Witter & Co.,* 907 N.E.2d 268, 274 (N.Y. 2009) (plaintiff could not maintain unjust enrichment action against defendant where a third party—like Plaintiffs' medical providers here—had contracted with and paid defendant's fees); *Johnson,* 834 N.E.2d at 799 (where there was "no economic transaction" between the parties, the plaintiff "cannot establish that [defendant] retained any benefit to which it is not justly entitled"); *Becker v. Cardinal Health, Inc*., 179 N.E.3d 769, 777 (Ohio Ct. App. 2021) (rejecting unjust enrichment claim as "too indirect" where "the only direct benefit appellants conferred was upon their health insurance providers, not on [defendant]"); *Miller v. NextGen Healthcare, Inc*., 742 F. Supp. 3d 1304, 1315 (N.D. Ga. 2024) (rejecting unjust enrichment claim in data breach context where plaintiffs only "allege that they conferred a benefit to their healthcare providers and those providers conferred a benefit to [defendant]").

Furthermore, even if a direct relationship existed here, Plaintiffs do not allege that they paid either their healthcare providers or CPS for data security services that they failed to receive, meaning no unjust benefit was conferred.  *See Brooks*, 732 F. Supp. 3d at 782 ("Plaintiffs fail to plausibly allege that the banking fees Plaintiffs paid were in exchange for PII protection"); *Stephens v. Availity, L.L.C*., 2019 WL 13041330, at *6 (M.D. Fla. Oct. 1, 2019) ("There is no allegation [plaintiff] paid her healthcare insurer, healthcare providers, or [defendant] for data security services, so no benefit was conferred."); *Brush v. Miami Beach Healthcare Grp. Ltd*., 238 F. Supp. 3d 1359 (S.D. Fla. 2017) (dismissing claim because plaintiffs failed to allege they conferred any benefit beyond payment for received healthcare service).

*Second*, Plaintiffs allege no facts showing that any purported enrichment of CPS was at their expense or with CPS's knowledge.  Nothing suggests CPS understood Plaintiffs to be

providing their personal information in exchange for data security services, as opposed to the pharmacy technology services explicitly contracted for with their medical providers.  *See Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016) (customer who paid for food "did not pay for a side order of data security and protection").

*Third,* even if CPS received some benefit at Plaintiffs' expense (it did not), Plaintiffs still fail to plead that any such enrichment was unjust.  Even if Plaintiffs suffered damage, it was "[t]he third-party hackers [who] benefitted at the expense of both the plaintiffs and [CPS], and it is that person or persons which in equity and good conscience owes restitution to the plaintiffs."  *In re Waste Mgmt. Data Breach Litig.*, 2022 WL 561734, at *6 (S.D.N.Y. Feb. 24, 2022).  And while Plaintiffs make vague references to money that CPS "should have used" on data security, Plaintiffs allege no facts that CPS accepted more money from Plaintiffs' providers than was due for the pharmacy technology services provided.  Consequently, even if there was any benefit conferred on CPS, this enrichment was bargained for—not unjust.  *See, e.g.*, *Tate,* 2023 WL 6383467, at *8 ("Plaintiffs got what they paid for—vision benefits"); *Brush*, 238 F. Supp. 3d at 1369 (rejecting unjust enrichment claim where allegations did not establish that "Defendants accepted more money than was owed for their healthcare services"); *In re Zappos.com, Inc. Customer Data Sec. Breach Litig.*, 2013 WL 4830497, at *5 (D. Nev. Sept. 9, 2013) (no unjust enrichment where plaintiffs "bestowed the benefit of their purchase . . . [and] [d]efendant provided [p]laintiffs a benefit in return (providing the goods)").  Plaintiffs also have not alleged that CPS misled or deceived them to obtain their data, as is required to show that enrichment is unjust under New York law.  *See Myers v. Wakefern Food Corp.*, 2022 WL 603000, at *8 (S.D.N.Y. Mar. 1, 2022) (dismissing claim where plaintiff failed to allege defendant's gains were unjust because "she has not plausibly alleged that a reasonable consumer would be misled or deceived").

Finally, even assuming Plaintiffs had adequately pled the required elements to state an unjust enrichment claim, their claim is independently barred under New York law as duplicative of their negligence and third-party beneficiary claims.  Unjust enrichment is not a "catchall cause of action" and cannot be used where, as here, it "simply duplicates, or replaces, a conventional contract or tort claim."  *Corsello v. Verizon N.Y., Inc*., 967 N.E.2d 1177, 1185 (N.Y. 2012).  Plaintiffs' unjust enrichment claim rests on the same allegations underlying their negligence and third-party beneficiary claims, namely, that CPS purportedly failed to maintain adequate data security measures.  *See* Am. Compl.  ¶ 214 (alleging in support of unjust enrichment count, that CPS "failed to investigate and/or disclose the inadequate data security practices"); *id*. ¶ 169 (alleging "fail[ure] to adopt, implement, and maintain adequate security measures" for negligence claim); *id.* ¶ 207 (alleging "fail[ure]" "to use reasonable data security measures" for third-party beneficiary claim).  The Court can dismiss their unjust enrichment claim on this additional basis.  *See Twohig v. Shop-Rite Supermarkets, Inc*., 2021 WL 518021, at *9 (S.D.N.Y. Feb. 11, 2021) (dismissing unjust enrichment claim as duplicative of negligence and other claims); *In re Waste Mgmt. Data Breach Litig*., 2022 WL 561734, at *6 (same); *Barreto v. Westbrae Nat., Inc*., 2021 WL 76331, at *8 (S.D.N.Y. Jan. 7, 2021) (same).[12]

For all of these reasons, Plaintiffs' unjust enrichment claim should be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint under Rules 12(b)(1) and 12(b)(6).

---

[12] Dismissal of the unjust enrichment claim is warranted even when the duplicative claims are also dismissed when "plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action."  *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) (dismissing all claims); *see also Corsello*, 967 N.E.2d at 1185 ("if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects").

\\4157-7630-3205  v1

March 9, 2026

Respectfully Submitted,

**CARPENTER LIPPS LLP**

*/s/ Joel E. Sechler*
Joel E. Sechler (0076320) (*Trial Attorney*)
Katheryn M. Lloyd (0075610)
Amber L. Merl (0080655)
280 North High Street, Suite 1300
Columbus, Ohio 43215
Tel: (614) 365-4100
Fax: (2614) 365-9145
sechler@carpenterlipps.com
lloyd@carpenterlipps.com
merl@carpenterlipps.com

**HOGAN LOVELLS US LLP**

Allison M. Ryan (admitted *pro hac vice*)
Jennifer S. Windom (admitted *pro hac vice*)
555 Thirteenth Street, NW
Washington, D.C. 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
allison.holt-ryan@hoganlovells.com
Jennifer.windom@hoganlovells.com

*Counsel for Defendant CPS Solutions, LLC*

40

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 9, 2026, a copy of the foregoing DEFENDANT CPS SOLUTIONS, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Joel E. Sechler*
Joel E. Sechler (0076320)
**CARPENTER LIPPS LLP**

*Counsel for Defendant CPS Solutions, LLC*

\\4157-7630-3205  v1