**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| RONDA WASHBURN, DANIELLE WEBBER and JODI PIERCE, *on behalf of themselves and all others similarly situated,* | Case No. 2:25-cv-00400 |
| | Judge Algenon L. Marbley |
| Plaintiffs, | Magistrate Judge S. Courtis Shimeall |
| v. | |
| CPS SOLUTIONS, LLC, | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| Defendant. | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... viii

INTRODUCTION.................................................................................................................1

BACKGROUND ..................................................................................................................2

LEGAL STANDARD ...........................................................................................................2

ARGUMENT......................................................................................................................3

    I.       Plaintiffs Have Article III Standing ...........................................................3

To demonstrate Article III standing, a plaintiff must "present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling." *Horne v. Flores*, 557 U.S. 433, 445 (2009).

    A.       Plaintiffs Adequately Allege Concrete Injuries............................................3

To determine whether a plaintiff has suffered a concrete harm, courts assess whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Numerous courts have found standing under analogous circumstances. *See, e.g., Allen v. Wenco Mgmt., LLC*, 696 F. Supp. 3d 432, 437-38 (N.D. Ohio 2023); *In re Bon Secours Mercy Health Data Breach Litig.*, No. 1:24-CV-594, 2025 WL 1827804, at *5 (S.D. Ohio July 2, 2025); *In re CBIZ Data Breach Litig.*, No. 1:24-CV-1722, 2025 WL 1557033, at *5 (N.D. Ohio June 2, 2025); *Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 675-94 (W.D. Ky. 2024).

    1.       Allegations of Actual Fraud Are Concrete Injuries Fairy Traceable to the Data Breach .....................................................................4

Plaintiffs plausibly allege that they have experienced fraud, identity theft, and a substantial increase in scam and spam communications. All of this constitutes the misuse of PI in a way that plainly confers standing. *Attias v. Carefirst, Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017). Defendant is incorrect that Plaintiffs must allege out-of-pocket economic loss or physical injury. *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 262-63 (1977); *Webb v. Injured Workers Pharm.*, LLC, 72 F.4th 365, 374 (1st Cir. 2023); *Mercy Health*, 2025 WL 1827804, at *10-11. Further, although a tangible injury is not required (intangible injury will suffice), the Plaintiffs who (even temporarily) lost access to money or credit as a result of the Data Breach have suffered tangible economic injuries related to the lost time value of money. *Alcarez v. Akorn, Inc.*, 99 F.4th 368, 374 (7th Cir. 2024); *Van v. LLR, Inc.*, 962 F.3d 1160, 1164 (9th Cir. 2020).

The misuse of PI that Plaintiffs experienced is traceable to Defendant's inadequate security, which is a proximate cause of the Data Breach. *See Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 390 (6th Cir. 2016); *Webb*, 72 F.4th at 377; *Clemens*, 48 F.4th at 158. Plaintiffs have also plausibly alleged that the misuse of PI they experienced was caused by the Data Breach, and is therefore traceable to Defendant. The information stolen in the Data Breach is sensitive enough

to commit the fraud that Plaintiffs allege. *See Mercy Health*, 2025 WL 1827804, at *5; *Gordon v. Zeroed-In Tech., LLC*, No. CV 23-3284-BAH, 2025 WL 936415, at *10 (D. Md. Mar. 26, 2025). Plaintiffs have alleged that their Social Security numbers were stolen, which is an issue of fact that cannot be decided at this stage. *Mulkey v. RoundPoint Mortg. Servicing Corp.*, No. 1:21 CV 01058, 2021 WL 5804575, at *5 (N.D. Ohio Dec. 7, 2021). The Court should defer the rest of the standing analysis until later. *Attias*, 865 F.3d at 629; *In re CBIZ Data Breach Litig.*, 2025 WL 1557033, at *2 (citing *Horne*, 557 U.S. at 446).

### 2. Plaintiffs Adequately Allege Intangible Privacy Injuries.......................8

The misuse of PI is not required to demonstrate Article III standing. Instead, all Plaintiffs suffered intangible privacy injuries analogous to intrusion upon seclusion and the publication of private facts when their PI was exfiltrated by cybercriminals. *TransUnion*, 594 U.S. at 425; *Allen*, 696 F. Supp. 3d at 437; *Savidge*, 727 F. Supp. 3d at 691-92; *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 285 (2d Cir. 2023); *Rodriguez v. CRG Lynwood LLC*, No. 24-11576, 2025 WL 2700614, at *4 (E.D. Mich. Sept. 22, 2025).

### 3. Plaintiffs Adequately Allege Substantial Risk of Harm .........................9

Plaintiffs also have standing to seek damages based on the substantial risk of harm they now face, along with the independent injuries that the substantial risk of harm has or will cause (like emotional distress and the cost of time or money to mitigate their risk). An allegation of future injury may suffice if there is a substantial risk that the harm will occur. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). The past or future injuries caused by a substantial risk of harm following a data breach confer standing. *Galaria*, 663 F. App'x at 388; *Bohnak*, 79 F.4th at 289–90; *Webb*, 72 F.4th at 376; *Clemens*, 48 F.4th at 152–58; *Allen*, 696 F. Supp. 3d at 438. A consistent ruling is warranted here.

Cybercriminals targeted and seized Plaintiffs' PI. "Where a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in Plaintiffs' complaints." *Galaria*, 663 F. App'x at 388. This is the "most important" indicator that a substantial risk of harm exists. *Savidge*, 727 F. Supp. 3d at 683-84. However, the risk is also obvious where, like here, some portion of the compromised dataset has already been misused, or the data exposed is sensitive such that it presents a heightened risk of identity theft or fraud. *Capiau v. Ascendum Mach., Inc.*, 2024 WL 3747191, at *8 (W.D.N.C. Aug. 9, 2024) (collecting cases); *Bohnak*, 79 F.4th at 289. Thus, Plaintiffs have standing to seek past and future damages caused by the substantial risk of harm from the Data Breach. *Allen*, 696 F. Supp. 3d at 438; *Bohnak*, 79 F.4th at 289–90; *Galaria*, 663 F. App'x at 388.

### 4. Plaintiffs' Emotional Distress is a Concrete Injury ..............................11

Plaintiffs' emotional injuries, including "anxiety, sleep disruption, stress, and fear" are additional concrete injuries caused by the substantial risk of harm sufficient to confer standing. In *Foster*, this Court correctly concluded that "at the motion to dismiss stage," similar allegations are "sufficient to state a claim for an actual injury" after a data breach. *Foster v. Health Recovery Servs., Inc.*, 493 F. Supp. 3d 622, 632 (S.D. Ohio 2020); *see also TransUnion*, 594 U.S. at 436 n.7; *In re CBIZ*, 2025 WL 1557033, at *5; *Bowen v. Paxton Media Grp., LLC*, No. 5:21-CV-00143-

GNS, 2022 WL 4110319, at *5 (W.D. Ky. Sept. 8, 2022); *Cahill v. Mem'l Heart Inst., LLC*, No. 1:23-cv-168, 2024 WL 4311648, at *3 (E.D. Tenn. Sept. 26, 2024); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1203 (S.D. Fla. 2022). Plaintiffs have suffered the same injury here.

**5. Plaintiffs' Mitigation Steps Are Concrete Injuries** ..............................**12**

Plaintiffs allege a past and future loss of time, money, and productivity due to the necessary steps they will need to take to mitigate the substantial risk of harm that they face. This constitutes injury-in-fact: *Webb*, 72 F.4th at 377; *Galaria*, 663 F. App'x at 388-89; *Bohnak*, 79 F.4th at 286. It would be unreasonable to expect Plaintiffs to wait before taking steps to ensure their own personal and financial security. *Galaria*, 663 F. App'x at 388; *Clemens*, 48 F.4th at 156. Such measures are particularly necessary in the wake of identity theft and spam increases experienced by Plaintiffs. The time spent to set things right after identity theft and fraud have occurred is also a cognizable injury. *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967 (7th Cir. 2016). Under the circumstances, Plaintiffs' past and future efforts to mitigate the risk of harm they now face have caused independent injuries that confer standing.

**6. Plaintiffs Have Also Suffered Injury Related to the Value of their PI** .....................................................................................................**12**

Plaintiffs would not have entrusted their PI to Defendant absent a promise to safeguard that information. Although this benefit was not a monetary payment, Plaintiffs' PI was highly valuable, and Plaintiffs suffered injury when Defendant retained the value of this PI without implementing and maintaining reasonable data security. *See In re CBIZ*, 2025 WL 1557033, at *5, *6 n.4. There is no requirement that this injury be set forth with greater specificity than the allegations in the Complaint. *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1190 (D. Nev. 2022). Plaintiffs have been injured from Defendant's unjust retention of the benefits conferred by Plaintiffs' PI, which is central to the services that it performs in exchange for compensation.

**II. PLAINTIFFS ADEQUATELY STATE THEIR CLAIMS** ....................................**13**

**A. Choice of Law Analysis** ...................................................................**13**

Plaintiffs agree there is no conflict of law, which means the Court can apply the law of the forum state (Ohio). To the extent a conflict exists, the Court should defer the arguments in Defendant's motion until after discovery, at which point it will have the benefit of a full record to conduct a choice of law analysis. *Alford v. Beechmont II Leasing Co., LLC*, No. 1:24-cv-63, 2024 WL 232294, at *3 (S.D. Ohio 2024); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. CV 19-MD-2904, 2021 WL 5937742, at *14 (D.N.J. Dec. 16, 2021).

**B. Plaintiffs Adequately State a Claim for Negligence** .....................**14**

Negligence requires (1) the existence of a legal duty, (2) a defendant's breach of that duty, and (3) an injury proximately resulting from the defendant's breach. *Wallace v. Ohio Dep't of Commerce*, 2002-Ohio-4210, ¶ 22; *Solomon v. City of N.Y.*, 66 N.Y.2d 12026, 1027 (N.Y. 1985).

iii

**1.  Plaintiffs Adequately Allege Duty** .........................................................14

Plaintiffs adequately allege the existence of a common law duty to implement and maintain reasonable data security. First and foremost, the existence of a duty depends upon the foreseeability of harm. *Wallace*, 2002-Ohio-4210, ¶ 23. It should have been obvious to Defendant that Plaintiffs would be injured by the failure to implement and maintain reasonable data security. *Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213, 1220 (11th Cir. 2023); *Rodriguez v. Mena Hosp. Comm'n*, No. 2:23-CV-2002, 2023 WL 7198441, at *4 (W.D. Ark. Nov. 1, 2023). A duty to exercise reasonable care is not limited to circumstances where a "special relationship" exists. Instead, Defendant is liable for its own conduct creating a foreseeable risk by storing Plaintiffs' Private Information in dangerous conditions susceptible to foreseeable theft. *Cincinnati v. Beretta USA Corp.*, 2002-Ohio-2480, ¶ 19; *In re Nat'l Prescription Opiate Litig.*, No. MDL 2804, 2018 WL 6628898, at *19 (N.D. Ohio Dec. 19, 2018).

It is also well-established that when one undertakes a duty voluntarily, the volunteer is required to exercise ordinary care in completing the duty. *Douglass v. Salem Cmty. Hosp.*, 2003-Ohio-4006, ¶ 74; *Brier v. Lathrop Co.*, 22 Ohio St. 2d 166, 172 (1970). This same rule applies in the data breach context. Otherwise, there would have been no need for the General Assembly to enact a safe harbor statute that shields companies from liability if they can prove, at trial, that they implemented industry standard data protection. *See* Ohio Rev. Code Ann. § 1354.01; *Mulkey*, 2021 WL 5804575, at *3. Because Defendant voluntarily undertook to receive, process, and store Plaintiffs' PI, Defendant assumed a duty to exercise reasonable care in safeguarding that information, irrespective of whether Plaintiffs directly engaged Defendant's services.

**2.  Plaintiffs Adequately Allege Breach**.......................................................17

Plaintiffs plausibly allege that Defendant breached a duty to exercise reasonable care. The relevant common law duty is to conform to the legal standard of reasonable conduct in the light of apparent risk. *Berdyck v Shinde*, 613 N.E.2d 1014, 1020 (Ohio 1993). The Complaint contains detailed factual allegations supporting the inference that Defendant failed to implement reasonable security measures. It is more than plausible Defendant failed to exercise reasonable care when it voluntarily collected and stored Plaintiffs' PI under conditions that made it vulnerable to foreseeable theft. *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186-TBR, 2017 WL 5986972, at *3 (W.D. Ky. Dec. 1, 2017); *Rodriguez*, 2023 WL 7198441, at *6.

Defendant incorrectly argues that Plaintiffs' breach allegations are "conclusory." However, "data breach cases present unique challenges for plaintiffs at the pleading stage. A plaintiff may know only what the company has disclosed in its notice of a data breach." *Ramirez*, 69 F.4th at 1220. Accordingly, courts cannot expect a plaintiff to plead with exacting detail every aspect of a defendant's security history and procedures. *Id.*; *see also In re Eureka Casino Breach Litig.*, No. 2:23-CV-00276-CDS-BNW, 2024 WL 4253198, at *12 (D. Nev. Sept. 19, 2024); *Flores-Mendez v. Zoosk, Inc.*, No. C 20-04929 WHA, 2021 WL 308543, at *4 (N.D. Cal. Jan. 30, 2021). The same logic applies here. However, Plaintiffs' allegations would survive stricter interpretations of the *Iqbal*/*Twombly* standard. *Hummel v. Teijin Auto. Techs., Inc.*, No. 23-cv-10341, 2023 WL 6149059, at *7 (E.D. Mich. Sep. 20, 2023); *Cahill*, 2024 WL 4311648, at *7.

Defendant's emphasis on its post-breach remediation efforts does not defeat Plaintiffs'

breach allegations because the cat is already out of the bag. Instead, Defendant's post-breach efforts demonstrate that it could have prevented the Data Breach.

**3. Plaintiffs Adequately Allege Proximate Cause....................................20**

Plaintiffs have adequately alleged that Defendant's conduct was a proximate cause of the Data Breach, and that the Data Breach was the proximate cause of their injuries. Proximate cause is typically also an issue for the jury to decide. *Pacher*, 2003-Ohio-5333, at ¶ 41; *Drayton v. Jiffee Chem. Corp.*, 591 F.2d 352, 360 (6th Cir. 1978). Plaintiffs have adequately alleged proximate cause for the same reasons they have plausibly alleged traceability for purposes of the standing analysis. *Mercy Health*, 2025 WL 1827804, at *10.

Defendant argues that there is no direct link between its conduct and Plaintiffs' injuries. However, where defendant's failure to implement adequate security measures foreseeably enabled the Data Breach, the intervening criminal act does not diminish causation. *Ramirez*, 69 F.4th at 1219; *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 405 (E.D. Va. 2020); *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 910–11 (N.D. Cal. 2024); *Beretta*, 2002-Ohio-2480, at ¶ 19. Plaintiffs have alleged a direct connection between Defendant and their injuries.

Defendant argues that the Data Breach did not expose certain data types. This argument has nothing to do with Plaintiffs' privacy, risk, and bargain-based injuries, which are unrelated to the subsequent misuse of their Private Information after its theft. Plaintiffs have also plausibly alleged that the fraud and identity theft they suffered was caused by the Data Breach. *See Galaria*, 663 F. App'x at 388. Defendant argues that Plaintiffs' injuries could have resulted from other data breaches or nefarious sources. However, Plaintiffs need not explicitly state that other breaches did *not* cause these alleged injuries, since their allegations that this Data Breach *did* cause their injuries implies such an allegation. *In re Equifax*, 362 F. Supp. 3d at 1318. Furthermore, allowing the Defendants to rely on other data breaches to defeat a causal connection would create a perverse incentive for companies to allow data breaches. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *19 (N.D. Cal. Aug. 30, 2017) (quoting *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 988 (N.D. Cal. 2016)).

**4. Plaintiffs Adequately Allege Cognizable Harm ...................................22**

Plaintiffs have suffered a cognizable injury for purposes of their injury claim under Ohio law for the same reasons that they have suffered concrete Article III injuries. *Allen*, 696 F. Supp. 3d at 437 (citing *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018)); *accord Bohnak*, 79 F.4th at 290. Both past and future damages are recoverable. *Jessica v. Ohio Dep't of Job & Fam. Servs.*, 2025-Ohio-2604, ¶ 57 (10th Dist.); *In re CBIZ*, 2025 WL 1557033, at *3; *Susan B. Anthony List*, 573 U.S. at 158. The victims of a targeted cyberattack face a substantial risk of harm. *Galaria*, 663 F. App'x at 388. Therefore, Plaintiffs can recover future damages.

Intangible privacy injuries, the expense of time or money, and emotional distress are cognizable injuries that support a claim for negligence. *See Mulkey*, 2021 WL 5804575, at *4; *Allen*, 696 F. Supp. 3d at 437; *Mason v. Wright Bros. Constr. Co., Inc.*, 2025 WL 939709, at *7 (E.D. Tenn. Mar. 27, 2025); *Cahill*, 2024 WL 4311648, at *8; *Jessica*, 2025-Ohio-2604, ¶¶ 51-57.

**5.    The Economic Loss Rule Does Not Apply to Plaintiffs' Claims ..........24**

The economic loss rule does not apply to Plaintiffs' negligence claim because Plaintiffs allege both economic and non-economic injuries. *Corporex Dev. & Constr. Mgmt. v. Shook*, Inc., 2005-Ohio-5409, ¶ 6; *Mulkey*, 2021 WL 5804575, at *2-3; *Jessica*, 2025-Ohio-2604, ¶ 31-32; *Allen*, 696 F. Supp. 3d at 439. Even if Plaintiffs alleged purely economic loss, it would not matter because their negligence claim is not premised upon the terms of a contract. *Allen*, 696 F. Supp. 3d at 439; *Corporex*, 2005-Ohio-5409, at ¶¶ 6, 9-10; *Morris v. Gedraitis*, 2023-Ohio-2317, ¶¶ 69-71 (5th Dist.); *Mercy Health*, 2025 WL 1827804, at *10; *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 749–50 (S.D.N.Y. 2017); *Foster*, 493 F. Supp. 3d at 639.

**C.    Plaintiffs Adequately State a Claim for Unjust Enrichment .....................27**

Plaintiffs have adequately stated their claims for unjust enrichment based on the inequitable retention of the value and benefits provided by Defendant's possession of their Private Information. Unjust enrichment occurs when a party retains money or benefits which in justice and equity belong to another. *Foster*, 493 F. Supp. 3d at 641; *Koeller v. Numrich Gun Parts Corp.*, 675 F. Supp. 3d 260, 271 (N.D.N.Y. 2023).

Plaintiffs reasonably understood that entities possessing their Private Information for the purpose of facilitating their healthcare would take basic precautions to protect it from foreseeable threats. *See, e.g.*, *In re Change Healthcare, Inc. Customer Data Sec. Breach Litig.*, No. MDL 24-3108 (DWF/DJF), 2025 WL 3693201, at *16 (D. Minn. Dec. 19, 2025); *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, 748 F. Supp. 3d 262, 278 (E.D. Pa. 2024).

Defendant understood Plaintiffs were providing PI with the expectation of data security. "[I]t is difficult to imagine how … the mandatory receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to protect the information sufficiently." *Savidge*, 2017 WL 5986972, at *9 (quoting *Castillo v. Seagate Tech., LLC*, No. 16-CV-01958-RS, 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016)).

Defendant's argument that it was not unjustly enriched because third-party cybercriminals stole Plaintiffs' PI fails for similar reasons. The crux of Plaintiffs' Complaint is that Defendant's failure to provide adequate security resulted in cybercriminals accessing the PI in its possession. This is sufficient to support Plaintiffs' claim. *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 412 (E.D. Va. 2020); *In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 384–85 (S.D.N.Y. 2024); *Smith v. Am. Pain & Wellness, PLLC*, 747 F. Supp. 3d 989, 1003 (E.D. Tex. 2024); *Gordon*, 2025 WL 936415, at *16; *Capiau*, 2024 WL 3747191, at *12.

Finally, to the extent necessary, Plaintiffs are permitted to plead claims in the alternative at this stage. Fed. R. Civ. P. 8(d)(2), (d)(3), (e); *Mike Albert, Ltd. v. 540 Auto Repair, Inc.*, No. 1:21-CV-286, 2022 WL 488969, at *9 (S.D. Ohio Feb. 17, 2022); *Freedom Holding, Inc. v. Haart*, 172 N.Y.S.3d 873, 885 (N.Y. Sup. Ct. 2022).

**CONCLUSION** ............................................................................................................**30**

**CERTIFICATE OF SERVICE** ..................................................................................**32**

# TABLE OF AUTHORITIES

**Cases**

*Alcarez v. Akorn, Inc.*,
 99 F.4th 368 (7th Cir. 2024) ............................................................................................ 5

*Alford v. Beechmont II Leasing Co., LLC*,
 No. 1:24-cv-63, 2024 WL 232294 (S.D. Ohio 2024) ............................................... 13

*Allen v. Wenco Mgmt., LLC*,
 696 F. Supp. 3d 432 (N.D. Ohio 2023).......................................................... passim

*Arlington Heights v. Metro. Housing Dev. Corp.*,
 429 U.S. 252 (1977)......................................................................................... 5

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).......................................................................................... 2

*Attias v. Carefirst, Inc.*,
 865 F.3d 620 (D.C. Cir. 2017) ..................................................................... 5, 8

*Baton v. Ledger SAS*,
 740 F. Supp. 3d 847 (N.D. Cal. 2024) ........................................................ 20

*Bender v. Durrani*,
 2024-Ohio-1258 (1st Dist.)........................................................................... 23

*Berdyck v. Shinde*,
 613 N.E.2d 1014 (Ohio 1993)....................................................................... 17

*Bohnak v. Marsh & McLennan Cos.*,
 79 F.4th 276 (2d Cir. 2023) .............................................................. passim

*Bowen v. Paxton Media Grp., LLC*,
 No. 5:21-CV-00143-GNS, 2022 WL 4110319 (W.D. Ky. Sept. 8, 2022) ............. 11

*Brier v. Lathrop* Co.,
 22 Ohio St. 2d 166 (1970)........................................................................... 16

*Cahill v. Mem'l Heart Inst., LLC*,
 No. 1:23-cv-168, 2024 WL 4311648 (E.D. Tenn. Sept. 26, 2024)............... 11, 19, 24

*Capiau v. Ascendum Mach., Inc.*,
 2024 WL 3747191 (W.D.N.C. Aug. 9, 2024)................................................ 10, 29

*Cartwright v. Garner*,
 751 F.3d 759 (6th Cir. 2014) ....................................................................... 2

*Castillo v. Seagate Tech., LLC*,
 No. 16-CV-01958-RS, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016)................... 29

*Cincinnati v. Beretta USA Corp.*,
 2002-Ohio-2480 ................................................................................ 15, 20

*Clemens v. ExecuPharm Inc.*,
    48 F.4th 146 (3d Cir. 2022) ............................................................ 3, 6, 10, 12

*Corporex Dev. & Constr. Mgmt. v. Shook, Inc.*,
    2005-Ohio-5409 ............................................................................ 25, 26

*Dailey v. Craigmyle & Son Farms, L.L.C.*,
    894 N.E.2d 1301 (Ohio Ct. App. 4th Dist. 2008) ................................... 27

*Dieffenbach v. Barnes & Noble, Inc.*,
    887 F.3d 826 (7th Cir. 2018) ........................................................... 22

*Doe v. Mission Essential Group, LLC*,
    2024 WL 3877530 (S.D. Ohio 2024)................................................... 7

*Douglass v. Salem Cmty. Hosp.*,
    2003-Ohio-4006 (7th Dist.) .............................................................. 15

*Drayton v. Jiffee Chem. Corp.*,
    591 F.2d 352 (6th Cir. 1978) ........................................................... 20

*Flores-Mendez v. Zoosk, Inc.*,
    No. C 20-04929 WHA, 2021 WL 308543 (N.D. Cal. Jan. 30, 2021)........................ 18

*Foster v. Health Recovery Servs., Inc.*,
    493 F. Supp. 3d 622 (S.D. Ohio 2020) ....................................... passim

*Freedom Holding, Inc. v. Haart*,
    172 N.Y.S.3d 873 (N.Y. Sup. Ct. 2022) .............................................. 30

*Galaria v. Nationwide Mut. Ins. Co.*,
    663 F. App'x 384 (6th Cir. 2016) .............................................. passim

*Gordon v. Zeroed-In Tech., LLC*,
    No. CV 23-3284-BAH, 2025 WL 936415 (D. Md. Mar. 26, 2025)................... 7, 29

*Haney v. Charter Foods N., LLC*,
    747 F. Supp. 3d 1093 (E.D. Tenn. 2024)............................................. 10

*Horne v. Flores*,
    557 U.S. 433 (2009).................................................................... 3, 8

*Hummel v. Teijin Auto. Techs., Inc.*,
    No. 23-cv-10341, 2023 WL 6149059 (E.D. Mich. Sep. 20, 2023)......................... 19

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
    No. CV 19-MD-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) ........................ 13

*In re Anthem, Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016) ............................................... 22

*In re Bon Secours Mercy Health Data Breach Litig.*,
    No. 1:24-CV-594, 2025 WL 1827804 (S.D. Ohio July 2, 2025)................... passim

*In re Cap. One Consumer Data Sec. Breach Litig.*,
    488 F. Supp. 3d 374 (E.D. Va. 2020) ............................................ 20, 29

*In re CBIZ Data Breach Litig.*,
   No. 1:24-CV-1722, 2025 WL 1557033 (N.D. Ohio June 2, 2025) .................................. passim

*In re Change Healthcare, Inc. Customer Data Sec. Breach Litig.*,
   No. MDL 24-3108 (DWF/DJF), 2025 WL 3693201 (D. Minn. Dec. 19, 2025) ..................... 28

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
   371 F. Supp. 3d 1150 (N.D. Ga. 2019) .......................................................... 16, 21, 22

*In re Eureka Casino Breach Litig.*,
   No. 2:23-CV-00276-CDS-BNW, 2024 WL 4253198 (D. Nev. Sept. 19, 2024)..................... 18

*In re HCA Healthcare, Inc. Data Security Litigation*,
   2024 WL 3857330 (M.D. Tenn. Aug. 15, 2024) ...................................................... 16

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
   603 F. Supp. 3d 1183 (S.D. Fla. 2022) ................................................................ 11

*In re Nat'l Prescription Opiate Litig.*,
   No. MDL 2804, 2018 WL 6628898 (N.D. Ohio Dec. 19, 2018)..................................... 15

*In re NCB Mgmt. Servs., Inc. Data Breach Litig.*,
   748 F. Supp. 3d 262 (E.D. Pa. 2024) .................................................................. 28

*In re Numotion Data Incident Litig.*,
   2025 WL 57712 (M.D. Tenn. Jan. 9, 2025)............................................................ 10

*In re Unite Here Data Sec. Incident Litig.*,
   740 F. Supp. 3d 364 (S.D.N.Y. 2024).................................................................. 29

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ........................................................ 22

*Jessica v. Ohio Dep't of Job & Fam. Servs.*,
   2025-Ohio-2604 (10th Dist.) ................................................................... 23, 24, 25

*Koeller v. Numrich Gun Parts Corp.*,
   675 F. Supp. 3d 260 (N.D.N.Y. 2023)................................................................. 27

*Krupa v. TIC Intl. Corp.*,
   No. 1:22-CV-01951-JRS-MG, 2023 WL 143140 (S.D. Ind. Jan. 10, 2023) ............................ 3

*Lewert v. P.F. Chang's China Bistro, Inc.*,
   819 F.3d 963 (7th Cir. 2016) .......................................................................... 12

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)..................................................................................... 3

*Mason v. Wright Bros. Constr. Co., Inc.*,
   2025 WL 939709 (E.D. Tenn. Mar. 27, 2025) ........................................................ 24

*McKenzie v. Allconnect, Inc.*,
   369 F. Supp. 3d 810 (E.D. Ky. 2019) ................................................................. 16

*Mike Albert, Ltd. v. 540 Auto Repair, Inc.*,
   No. 1:21-CV-286, 2022 WL 488969 (S.D. Ohio Feb. 17, 2022) ........................................ 30

*Mitchell v. BMI Fed. Credit Union*,
  374 F. Supp. 3d 664 (S.D. Ohio 2019) ................................................................. 28

*Morris v. Gedraitis*,
  2023-Ohio-2317 (5th Dist.) ................................................................ 25, 27

*Mulkey v. RoundPoint Mortg. Servicing Corp.*,
  No. 1:21 CV 01058, 2021 WL 5804575 (N.D. Ohio Dec. 7, 2021) ......................... 7, 16, 23, 25

*Mussivand v. David*,
  544 N.E.2d 265 (Ohio 1989) ................................................................. 14

*Navistar, Inc. v. Dutchmaid Logistics, Inc.*,
  2021-Ohio-1425 (5th Dist.) ................................................................. 26

*Pacher v. Invisible Fence of Dayton*,
  2003-Ohio-5333 (2d Dist.) ................................................................. 17, 20

Parsons v. United States,
  801 F.3d 701 (6th Cir. 2015) ................................................................. 6

*Ramirez v. Paradies Shops, LLC*,
  69 F.4th 1213 (11th Cir. 2023) ................................................................. 14, 18, 20

*Rodriguez v. CRG Lynwood LLC*,
  No. 24-11576, 2025 WL 2700614 (E.D. Mich. Sept. 22, 2025) ......................... 9

*Rodriguez v. Mena Hosp. Comm'n*,
  No. 2:23-CV-2002, 2023 WL 7198441 (W.D. Ark. Nov. 1, 2023) ......................... 14, 15, 18

*Sackin v. TransPerfect Glob., Inc.*,
  278 F. Supp. 3d 739 (S.D.N.Y. 2017) ................................................................. 26

*Savidge v. Pharm-Save, Inc.*,
  727 F. Supp. 3d 661 (W.D. Ky. 2024) ................................................................. passim

*Smallman v. MGM Resorts Int'l*,
  638 F. Supp. 3d 1175 (D. Nev. 2022) ................................................................. 13

*Smith v. Am. Pain & Wellness, PLLC*,
  747 F. Supp. 3d 989 (E.D. Tex. 2024) ................................................................. 29

*Solomon v. City of N.Y.*,
  66 N.Y.2d 1026 (N.Y. 1985) ................................................................. 14

*Stasi v. Inmediata Health Grp. Corp.*,
  501 F. Supp. 3d 898 (S.D. Cal. 2020) ................................................................. 14

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ................................................................. 9, 23

*Tate v. EyeMed Vision Care, LLC*,
  2023 WL 6383467 (S.D. Ohio Sept. 29, 2023) ................................................................. 6

*Tefft v. Seward*,
  689 F.2d 637 (6th Cir. 1982) ................................................................. 30

x

*Tracy v. Elekta, Inc.*,
   667 F. Supp. 3d 1276 (N.D. Ga. 2023) ................................................................. 23

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ............................................................................... passim

*Tucker v. Marietta Area Health Care, Inc.*,
   No. 2:22-cv-184, 2023 WL 423504 (S.D. Ohio Jan. 26, 2023) ....................... 26, 28

*Van v. LLR, Inc.*,
   962 F.3d 1160 (9th Cir. 2020) ................................................................................. 5

*Wallace v. Ohio Dep't of Commerce*,
   2002-Ohio-4210 ....................................................................................... 14, 15

*Webb v. Injured Workers Pharm., LLC*,
   72 F.4th 365 (1st Cir. 2023) ................................................................. 5, 6, 10, 12

*Wheeler v. Estes Exp. Lines*,
   53 F. Supp. 3d 1032 (N.D. Ohio 2014) ................................................................ 20

**Statutes**

Ohio Rev. Code § 3798.01, *et seq.* ........................................................................ 14

Ohio Rev. Code § 1354.01 ..................................................................................... 16

Ohio Rev. Code § 2323.56 ..................................................................................... 23

**Rules**

Fed. R. Civ. P. 15(a)(2) .......................................................................................... 30

Fed. R. Civ. P. 8(d) ................................................................................................ 29

Fed. R. Civ. P. 8(e) ................................................................................................ 29

**INTRODUCTION**

For at least two days in December 2024, cybercriminals had access to a CPS Solutions employee email account containing the names, dates of birth, addresses, Social Security numbers, medical records, and insurance information of patients served by CPS's healthcare clients (the "Data Breach"). Amended Class Action Complaint ("Compl."), ECF No. 18, ¶¶ 1-5, 39, Ex. A.[1] CPS discovered the intrusion on December 4, 2024, yet waited more than four months—until April 9, 2025—to notify the individuals whose most sensitive information had been compromised. *Id.* ¶¶ 39, 42, Ex. A. When it finally did, CPS warned Plaintiffs to "remain vigilant" and "review [their] bank accounts, credit card bills, and free credit reports for unauthorized activity." *Id.*, Ex. A. In other words, CPS acknowledged the danger its security failure had created.

The danger has already materialized. Plaintiff Webber experienced a fraudulent credit inquiry, unauthorized CashApp charges, and the publication of her personal information on the dark web. Compl. ¶ 132. Plaintiff Pierce suffered a fraudulent bank charge. *Id.* ¶ 141. All three Plaintiffs experienced a substantial increase in scam and spam communications. *Id.* ¶¶ 125, 132, 141. And all three now face the ongoing burden of monitoring their financial lives against the threat of identity theft—a threat CPS itself told them to take seriously.

CPS now asks this Court to dismiss these claims by repackaging the same arguments that courts in this District and across the country have rejected in case after case. It argues that no duty exists to safeguard personal information, even for a company that collects and stores the Social Security numbers and medical records of thousands of patients. It argues that actual fraud does not confer standing unless Plaintiffs prove unreimbursed economic loss at the pleading stage. And it argues that the theft of Plaintiffs' most sensitive data by cybercriminals creates no cognizable

---

[1] The personally identifiable information ("PII") and Protected Health Information ("PHI") that was exfiltrated in the Data Breach is referred to collectively as "Private Information" or "PI".

injury at all. Each of these arguments is wrong, and each is foreclosed by controlling or persuasive authority. The motion should be denied. [2]

## BACKGROUND

Defendant CPS Solutions, LLC ("Defendant") is a business that provides pharmacy technology solutions to over 800 healthcare providers. Compl. ¶¶ 2, 28. Plaintiffs Ronda Washburn, Danielle Webber and Jodi Pierce ("Plaintiffs") are patients of Defendant's clients who, as a condition of receiving services, were required to entrust Defendant with their highly sensitive and confidential PI. *Id*. ¶¶ 13, 17, 21, 46, 204. This PI included Plaintiffs' names, dates of birth, addresses, Social Security numbers, health records, insurance information, and other sensitive information. *Id*. ¶¶ 4, 30, 39, 44, 121, 130, 140, Ex. A.

Defendant failed to take basic precautions to safeguard their PI, resulting in the Data Breach and causing Plaintiffs to suffer various damages, as discussed in detail herein.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A facial Rule 12(b)(1) motion as to standing goes to "whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true" for those purposes. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).

---

[2] Plaintiffs respectfully request that their claims for Negligence Per Se (Count II), Breach of Fiduciary Duty (Count III), and Breach of Third-Party Beneficiary Contract (Count IV) be dismissed without prejudice.

## ARGUMENT

### I.   PLAINTIFFS HAVE ARTICLE III STANDING

To demonstrate Article III standing, a plaintiff must "present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling." *Horne v. Flores*, 557 U.S. 433, 445 (2009). Plaintiffs have clearly alleged standing at this stage. As explained below, the theft of Plaintiffs' PI caused concrete injuries that are fairly traceable to Defendant's inadequate data security and redressable by a favorable verdict.[3]

#### A.  Plaintiffs Adequately Allege Concrete Injuries

Plaintiffs plausibly allege concrete injuries (and a risk of future injuries) that support their claims for damages and injunctive relief. To have standing, a "plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). To determine whether a plaintiff has suffered a concrete harm, courts "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, (2021) (citation omitted).

"In the data breach context, there are several potential parallels to harms traditionally recognized at common law, depending on the precise theory of injury the plaintiff puts forward." *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 154–55 (3d Cir. 2022); *see also Krupa v. TIC Intl. Corp.*, No. 1:22-CV-01951-JRS-MG, 2023 WL 143140, at *2 (S.D. Ind. Jan. 10, 2023) ("Having

---

[3] Plaintiffs do not discuss redressability below because Defendant does not contest that Plaintiffs' alleged injuries would be redressed by a favorable judgment. *See Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 391 (6th Cir. 2016) ("Here, Plaintiffs seek compensatory damages for their injuries, and a favorable verdict would provide redress.").

one's social security number stolen seems an obvious harm."). And indeed, following the Supreme Court's opinion in *TransUnion*, federal courts in Ohio have largely concluded that the theft of personal information like Social Security numbers and PHI causes concrete privacy and risk-based injuries. *See, e.g.*, *Allen v. Wenco Mgmt., LLC*, 696 F. Supp. 3d 432, 437-38 (N.D. Ohio 2023) ("[T]he weight of post-*TransUnion* authority establishes that Allen's alleged privacy injury is sufficiently concrete for Article III purposes."); *In re Bon Secours Mercy Health Data Breach Litig.*, No. 1:24-CV-594, 2025 WL 1827804, at *5 (S.D. Ohio July 2, 2025) ("Ultimately, the Court concludes that each Plaintiff has alleged an already-incurred actual injury—either identity theft and fraud or spam and harassment—sufficient to confer Article III standing."); *In re CBIZ Data Breach Litig.*, No. 1:24-CV-1722, 2025 WL 1557033, at *5 (N.D. Ohio June 2, 2025) ("Plaintiffs have alleged already realized injuries through invasion of privacy, loss of benefit of the bargain, emotional stress, and the expenditure of time and resources to monitor and take other preventative measures to protect themselves from a risk future harm.").

These cases are consistent with courts nationwide that have found standing after a data breach. *See Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 675-94 (W.D. Ky. 2024) (reviewing circuit-level authority and finding that data breach victims had standing based on the loss of privacy and substantial risk of harm). The Court should follow this authority and hold that Plaintiffs have standing to pursue their claims.

### 1. Allegations of Actual Fraud Are Concrete Injuries Fairly Traceable to the Data Breach

#### a. The Misuse of PI is a Concrete Injury

Plaintiff Pierce plausibly alleges that she experienced a fraudulent charge on her bank account because of the Data Breach, and Plaintiff Webber plausibly alleges that the Data Breach caused her to experience a fraudulent credit account inquiry, unauthorized CashApp charges, and

4

the publication of her personal information on the dark web. Compl. ¶¶ 132, 141.[4] Plaintiffs have also experienced a substantial increase in scam and spam communications. *Id*. All of this constitutes the misuse of PI in a way that plainly confers standing. *Attias v. Carefirst, Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017) ("Nobody doubts that identity theft, should it befall one of these plaintiffs, would constitute a concrete and particularized injury."). Defendant is incorrect that Plaintiffs must allege out-of-pocket economic loss or physical injury. *Compare* MTD at PageID 268 *with Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 262-63 (1977) ("It has long been clear that economic injury is not the only kind of injury that can support a plaintiff's standing."), *Webb v. Injured Workers Pharm., LLC*, 72 F.4th 365, 374 (1st Cir. 2023) ("We reject IWP's argument that the alleged actual misuse is not itself a concrete injury absent even more resulting harm to Webb."), *and Mercy Health*, 2025 WL 1827804, at *10-11 (citing *Attias* and *Webb*, stating "actual misuse counts as injury in fact" and "both the identity theft and the spam emails and texts 'count' as injuries for standing purposes").

Further, although a tangible injury is not required (intangible injury will suffice), the Plaintiffs who (even temporarily) lost access to money or credit as a result of the Data Breach have suffered tangible economic injuries related to the lost time value of money. *See Alcarez v. Akorn, Inc.*, 99 F.4th 368, 374 (7th Cir. 2024) ("[W]e have held that a small loss caused by a brief inability to use a credit card after a data breach confers standing.") (collecting cases); *Van v. LLR, Inc.*, 962 F.3d 1160, 1164 (9th Cir. 2020) ("In sum, we hold that the temporary loss of use of one's money constitutes an injury in fact for purposes of Article III."). For these reasons, the Plaintiffs who suffered from the misuse of their PI after the Data Breach have suffered additional tangible and

---

[4] Defendant mischaracterizes Compl. ¶ 104 for the proposition that Plaintiffs could have mitigated their harms by canceling their cards. Rather, Plaintiffs Complaint alleges the opposite: that, opposed to retailer credit card breaches, the information impacted in this breach is much more difficult to change.

intangible injuries that confer standing at this stage.

### b.    The Misuse of Plaintiffs' PI is Fairly Traceable to Defendant

The misuse of PI Plaintiffs have experienced is fairly traceable to Defendant's inadequate security, which Plaintiffs allege is a proximate cause of the Data Breach. This analysis "is not focused on whether the defendant caused the plaintiff's injury in the liability sense . . . because causation to support standing is not synonymous with causation sufficient to support a claim." *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 390 (6th Cir. 2016) (internal quotations omitted). In this context, "the allegation that a defendant's conduct was a motivating factor in the third party's injurious actions satisfies the requisite standard." *Parsons v. United States*, 801 F.3d 701, 714 (6th Cir. 2015).

The Sixth Circuit has found traceability where plaintiffs alleged that, "but for [the defendant's] allegedly lax security, the hackers would not have been able to steal [the plaintiff's] data." *Galaria*, 663 F. App'x at 390. This is consistent with federal courts across the country. *See Webb*, 72 F.4th at 377 ("The complaint alleges that IWP's actions led to the exposure and actual or potential misuse of the plaintiffs' PII, making their injuries fairly traceable to IWP's conduct."); *Clemens*, 48 F.4th at 158 (similar). Plaintiffs allege the same here. Compl. ¶¶ 50, 61, 112, 179, 194.

Plaintiffs have also plausibly alleged that the misuse of PI they experienced was caused by the Data Breach, and therefore, fairly traceable to Defendant. Defendant likens this case to *Tate v. EyeMed Vision Care, LLC*, 2023 WL 6383467 (S.D. Ohio Sept. 29, 2023) (Cole, J.), in which a court in this District found it was implausible one of the plaintiffs suffered fraudulent credit card charges and tax fraud as a result of a data breach that, unlike here, did not compromise the plaintiff's Social Security number. *See id.* at *2, 4 n.6; MTD at PageID 265. However, the

circumstances of this case are more akin to *Mercy Health*, also decided by Judge Cole, which held that allegations of misuse following a data breach, including the "unauthorized transactions, [the] opening of a fraudulent credit card, and increased spam communications," were plausible in light of the allegation that the plaintiffs' "names, birthdates, Social Security numbers, and addresses were divulged in the breach." *Mercy Health*, 2025 WL 1827804, at *5; *see also Gordon v. Zeroed-In Tech., LLC*, No. CV 23-3284-BAH, 2025 WL 936415, at *10 (D. Md. Mar. 26, 2025) ("The Court is ultimately not persuaded by Defendant's argument that fraudulent activity related to credit cards and bank accounts severs traceability because that information was not directly disclosed during the Data Breach.").[5] The traceability of Plaintiffs' injuries is further bolstered by allegations that they are careful about protecting their data, yet suffered identity theft or other data misuse shortly after the Data Breach. *See* Compl. ¶¶ 120, 129, 139.

Notably citing to its own notice letter, Defendant says that Plaintiffs "recognize that 'for the majority of potentially affected individuals, Social Security numbers were not impacted.'" Compl. ¶ 39. However, that is Defendant's language—not Plaintiffs', all of whom have alleged their Social Security numbers were compromised in the Data Breach, which is an issue of fact that cannot be decided at this stage. *Mulkey v. RoundPoint Mortg. Servicing Corp.*, No. 1:21 CV 01058, 2021 WL 5804575, at *5 (N.D. Ohio Dec. 7, 2021) ("Defendant's denial that Plaintiffs' social security numbers were disclosed cannot be established on a motion to dismiss.").[6]

---

[5] Defendant also compares this case to *Doe v. Mission Essential Group, LLC*, 2024 WL 3877530 (S.D. Ohio 2024), which held that the theft of Social Security numbers causes concrete injury (*id.* at *8), but that the plaintiff did not suffer injury in that case because he failed to plausibly allege "that a data breach actually occurred" at all. *Id.* at *4. Those facts are plainly different from this case, in which Defendant has admitted that following a "phishing incident," unauthorized third parties gained access to an employee email account and "remove[d] data from the account." Compl. ¶ 39.

[6] Defendant states that the subsequent identity theft suffered by Plaintiff Webber was "blocked using the complimentary credit monitoring service provided by CPS," MTD at PageID 267 n.2, but that is not what

In fact, because the Court assumes for purposes of the standing analysis at this stage that Plaintiffs will prevail on the merits of their claims, the Court should defer the entire traceability analysis until a later stage of the case. *See Attias*, 865 F.3d at 629 ("Because we assume, for purposes of the standing analysis, that plaintiffs will prevail on the merits of their claim that CareFirst failed to properly secure their data and thereby subjected them to a substantial risk of identity theft, we have little difficulty concluding that their injury in fact is fairly traceable to CareFirst.") (internal citation omitted). Furthermore, federal courts in Ohio have followed Supreme Court precedent to hold (contrary to Defendant's motion) that if at least one plaintiff has plausibly alleged a concrete injury, the Court can stop its inquiry there without addressing other forms of injury. *In re CBIZ Data Breach Litig.*, 2025 WL 1557033, at *2 ("If the Court finds that any Plaintiff has standing, it need not consider the issue any further at this stage of the litigation.") (citing *Horne*, 557 U.S. at 446).

### 2. *Plaintiffs Adequately Allege Intangible Privacy Injuries*

Although multiple Plaintiffs have already uncovered evidence that their PI was misused after the Data Breach, this is not required to demonstrate Article III standing. Instead, all Plaintiffs suffered intangible privacy injuries the moment their PI was exfiltrated by cybercriminals.

After this Court's opinion in *Foster v. Health Recovery Servs., Inc.*, 493 F. Supp. 3d 622 (S.D. Ohio 2020), which addressed Article III standing in the context of a data breach but did not consider alleged privacy injuries, the Supreme Court clarified that "[v]arious intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, *disclosure of private information, and intrusion upon seclusion*." *TransUnion*,

---

the Complaint says. *See* Compl. ¶¶ 131-32 (stating that the credit monitoring service merely notified him that his personal information is now on the dark web following the Data Breach).

594 U.S. at 425 (internal citation omitted; emphasis added). "And applying this principle, courts have held that a privacy injury stemming from a data breach 'bears some relationship to a well-established common-law analog: public disclosure of private facts.'" *Allen*, 696 F. Supp. 3d at 437 (quoting *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 285 (2d Cir. 2023)); *see also Savidge*, 727 F. Supp. 3d at 691-92 (reviewing circuit-level authority and holding a data breach caused concrete injury analogous to public disclosure of private facts). Courts have also concluded that data breach victims suffer privacy injuries akin to that caused by intrusion upon seclusion. *See, e.g.*, *Rodriguez v. CRG Lynwood LLC*, No. 24-11576, 2025 WL 2700614, at *4 (E.D. Mich. Sept. 22, 2025). Plaintiffs suffered the same injuries when their PI was accessed and exfiltrated by unauthorized third parties. *See, e.g.*, Compl. ¶¶ 3, 44, 121, 130, 140, 180. These "alleged privacy [injuries are] sufficiently concrete for Article III purposes." *Allen*, 696 F. Supp. 3d at 437.[7]

### 3. *Plaintiffs Adequately Allege Substantial Risk of Harm*

Plaintiffs also have standing to seek damages based on the substantial risk of harm they now face, along with the independent injuries that the substantial risk of harm has or will cause (like emotional distress and the cost of time or money to mitigate their risk). "An allegation of future injury may suffice if . . . there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks and citation omitted). It is well-established that present or future injuries caused by a substantial risk of harm following a data breach confer standing. *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) ("Here, Plaintiffs' allegations of a substantial risk of harm, coupled with reasonably incurred mitigation costs, are sufficient to establish a cognizable Article III injury at

---

[7] Plaintiffs are not required to state a claim for invasion of privacy to recover for this injury. *Savidge*, 727 F.Supp.3d at 692 ("Pharm-Save argues that Plaintiffs cannot rely on any invasion of privacy tort if the Court has already dismissed their claim for that tort. But whether a plaintiff can maintain a separate cause of action for a specific claim is not the inquiry here.").

the pleading stage of the litigation.");[8] *Bohnak*, 79 F.4th at 289–90 (an "alleged injury arising from the increased risk of harm *is* cognizable for standing purposes"); *Webb*, 72 F.4th at 376 ("the risk of future [PII] misuse confers standing"); *Clemens*, 48 F.4th at 152–58 (standing based on identity-theft risk). The court in *Allen* found *Bohnak*, *Webb*, *Clemens*, and *Galaria* persuasive, holding that the plaintiff's "increased risk of identity theft" gave him standing to sue. *Allen*, 696 F. Supp. 3d at 438. A consistent ruling is warranted here.

Notably, cybercriminals targeted and seized Plaintiffs' PI—this incident was not the product of an accidental disclosure. Compl. ¶¶ 3, 39, 44-45, 53-54, 92-96, 113. "Where a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in Plaintiffs' complaints." *Galaria*, 663 F. App'x at 388. This is the "most important" indicator that a substantial risk of harm exists. *Savidge*, 727 F. Supp. 3d at 683-84. However, the risk is also obvious where, like here, "some portion of the compromised dataset has already been misused, . . . or the data exposed is sensitive such that it presents a heightened risk of identity theft or fraud." *Capiau v. Ascendum Mach., Inc.*, 2024 WL 3747191, at *8 (W.D.N.C. Aug. 9, 2024) (collecting circuit-level authority).

The data stolen from Defendant is very sensitive and has already been misused. *See* Compl. ¶¶ 4, 7, 8, 30, 44-45, 53, 60, 96, 103-06, 108, 121, 130, 132, 140-41; *Bohnak*, 79 F.4th at 289 ("Bohnak alleges that the PII taken by the hackers includes her name and SSN. This is exactly the kind of information that gives rise to a high risk of identity theft.") (internal citation omitted); Thus, as numerous courts have concluded under analogous circumstances, Plaintiffs have standing to seek past and future damages caused by the substantial risk of harm from the Data Breach

---

[8] Contrary to Defendant's contention, "*TransUnion* does not invalidate *Galaria*." *In re Numotion Data Incident Litig.*, 2025 WL 57712, at *5 (M.D. Tenn. Jan. 9, 2025); *see also Haney v. Charter Foods N., LLC*, 747 F. Supp. 3d 1093, 1105 n.3 (E.D. Tenn. 2024) (collecting cases).

(including time or money to mitigate the risk or the emotional distress that the risk causes). *Allen*, 696 F. Supp. 3d at 438; *Bohnak*, 79 F.4th at 289–90; *Galaria*, 663 F. App'x at 388.

### 4. *Plaintiffs' Emotional Distress Is a Concrete Injury*

Plaintiffs' emotional injuries, including "anxiety, sleep disruption, stress, and fear" are additional concrete injuries caused by the substantial risk of harm sufficient to confer standing. *See* Compl. ¶¶ 123, 134, 143, 182. In *Foster*, this Court correctly concluded that "at the motion to dismiss stage," similar allegations are "sufficient to state a claim for an actual injury" after a data breach. *Foster*, 493 F. Supp. 3d at 632 (collecting cases). Since then, courts in this Circuit have overwhelmingly reached the same conclusion. *See, e.g.*, *In re CBIZ*, 2025 WL 1557033, at *5 (finding that "emotional stress" after a data breach confers standing); *Bowen v. Paxton Media Grp., LLC*, No. 5:21-CV-00143-GNS, 2022 WL 4110319, at *5 (W.D. Ky. Sept. 8, 2022) (finding standing where "Plaintiffs allege that they suffered emotional distress related to their fear of identity theft"); *Cahill v. Mem'l Heart Inst., LLC*, No. 1:23-cv-168, 2024 WL 4311648, at *3 (E.D. Tenn. Sept. 26, 2024) (similar).

Of course, Plaintiffs do not merely allege generalized anxiety, but rather emotional harm in conjunction with the harms detailed above. *See TransUnion*, 594 U.S. at 436 n.7; *see also In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1203 (S.D. Fla. 2022) ("[T]he question in this case is not whether Plaintiffs' allegations of emotional distress, on their own, are sufficiently concrete to establish injuries in fact. Instead, it is whether allegations of emotional distress, coupled with the substantial risk of future harm, are sufficiently concrete to establish standing in a claim for damages."). The Court should similarly conclude that emotional distress proportional to the risk of harm from the theft of their PI suffices to confer standing.

11

### 5. *Plaintiffs' Mitigation Steps Are Concrete Injuries*

Plaintiffs allege past and future losses of time, money, and productivity due to the necessary steps they will need to take to mitigate the substantial risk of harm that they face. This constitutes injury-in-fact: "We join other circuits in concluding that time spent responding to a data breach can constitute a concrete injury sufficient to confer standing, at least when that time would otherwise have been put to profitable use." *Webb*, 72 F.4th at 377 (citing *Galaria*, 663 F. App'x at 388-89 and authority from the Third, Fourth, Seventh, and Eleventh Circuits); *Bohnak*, 79 F.4th at 286 (following *Webb* on this point). Courts appreciate that "it would be unreasonable to expect Plaintiffs to wait . . . before taking steps to ensure [their] own personal and financial security." *Galaria*, 663 F. App'x at 388. Therefore, the "only way to allay those concerns [about identity theft and the like] is to invest time and money into precautionary measures that could mitigate the potential misuse" of PI. *Clemens*, 48 F.4th at 156. Such measures are particularly necessary in the wake of identity theft and spam increases experienced by Plaintiffs. The time spent to set things right after identity theft and fraud have occurred is also a cognizable injury. *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967 (7th Cir. 2016) ("Even if those fraudulent charges did not result in injury to his wallet (he stated that his bank stopped the charges before they went through), he has spent time and effort resolving them."). Under the circumstances, past and future expenditures of time or money to mitigate the risk of harm from the Data Breach are independent concrete injuries.

### 6. *Plaintiffs Have Also Suffered Injury Related to the Value of their PI*

Plaintiffs would not have entrusted their PI to Defendant absent a promise to safeguard that information. Compl. ¶¶ 15, 19, 23, 161, 198. Although this benefit was not a monetary payment, Plaintiffs' PI was highly valuable, and Plaintiffs suffered injury when Defendant retained the value

of this PI without implementing and maintaining reasonable data security. *See id.* ¶¶ 37, 47, 103-12, 210-21; *see also In re CBIZ*, 2025 WL 1557033, at \*5, \*6 n.4 (recognizing that "loss of the benefit of the bargain" confers standing and that it "would arise under the theory of unjust enrichment"). There is no requirement that this injury be set forth with greater specificity than the allegations in the Complaint. *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1190 (D. Nev. 2022) ("[T]he Court finds 'more persuasive the line of cases that accept at the pleading stage more general factual allegations about . . . the contours of the parties' bargain.'"). The Court should conclude Plaintiffs have been injured from Defendant's unjust retention of the benefits conferred by Plaintiffs' PI, which is central to the services that it performs in exchange for compensation from Plaintiffs' healthcare providers.

## II. PLAINTIFFS ADEQUATELY STATE THEIR CLAIMS

### A. Choice of Law Analysis

Plaintiffs agree there is not a conflict of law because, as set forth below, the motion to dismiss for failure to state a claim should be denied under either New York or Ohio law. To the extent the Court finds otherwise and holds that there is a conflict, it should defer the arguments in Defendant's motion to dismiss until after discovery, at which point it can complete a full conflict of law analysis with the benefit of a full record, including for example where Defendant's allegedly negligent cybersecurity decisions were made and where the data was stored. *See Alford v. Beechmont II Leasing Co., LLC*, No. 1:24-cv-63, 2024 WL 232294, at \*3 (S.D. Ohio 2024) (deferring fact-intensive choice of law inquiry until after discovery)*; see also In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. CV 19-MD-2904, 2021 WL 5937742, at \*14 (D.N.J. Dec. 16, 2021) (same, in a data breach case) (internal citation omitted).

### B. Plaintiffs Adequately State a Claim for Negligence

Negligence requires (1) the existence of a legal duty, (2) a defendant's breach of that duty, and (3) an injury proximately resulting from the defendant's breach. *Wallace v. Ohio Dep't of Commerce*, 2002-Ohio-4210, ¶ 22; *see also Solomon v. City of N.Y.*, 66 N.Y.2d 1026, 1027 (N.Y. 1985). Defendant's argument that Plaintiffs have failed to satisfy each of these elements is flawed and misunderstands Plaintiffs' well-pled allegations.

#### 1. Plaintiffs Adequately Allege Duty

Plaintiffs have adequately alleged the existence of a common law duty to implement and maintain reasonable data security. "There is no formula for ascertaining whether a duty exists. Duty … is the court's expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Mussivand v. David*, 544 N.E.2d 265, 270 (Ohio 1989). Courts recognize that "imposing a common law duty on companies that possess personal and medical information to safeguard that information further promotes a policy, statutorily recognized, of preventing identity theft and protecting the confidentiality of medical information." *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 915 (S.D. Cal. 2020); *see also generally* Ohio Rev. Code § 3798.01, *et seq.* But first and foremost, "the existence of a duty depends upon the foreseeability of harm: if a reasonably prudent person would have anticipated that an injury was likely to result from a particular act, the court could find that the duty element of negligence is satisfied." *Wallace*, 2002-Ohio-4210, at ¶ 23.

As alleged in the Complaint, it should have been obvious to Defendant, a large company that possesses sensitive Private Information belonging to thousands of medical patients, that Plaintiffs would be injured by the failure to implement and maintain reasonable data security. *See* Compl. ¶¶ 53-63; *see also Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213, 1220 (11th Cir. 2023)

14

("Drawing on our judicial experience and common sense, we can reasonably infer that a company of Paradies's size and sophistication—especially one maintaining such an extensive database of prior employees' PII—could have foreseen being the target of a cyberattack."); *Rodriguez v. Mena Hosp. Comm'n*, No. 2:23-CV-2002, 2023 WL 7198441, at *4 (W.D. Ark. Nov. 1, 2023) ("Mena should be able to 'reasonably foresee an appreciable risk of harm to others' if it has inadequate security measures. This Court is far from the first court to recognize this duty in the data breach context.") (internal and external citations omitted). Under Ohio Supreme Court precedent, "the court could find that the duty element of negligence is satisfied" on this basis alone. *Wallace*, 2002-Ohio-4210, at ¶ 23.

Defendant argues no common law duty exists to protect personal information because the Complaint purportedly fails to plead a special relationship between the parties. MTD at PageID 279-81. This argument overlooks the well-established principle that a duty to exercise reasonable care is not limited to circumstances where a "special relationship" exists. Instead, Defendant is liable for its own conduct creating a foreseeable risk by storing Plaintiffs' Private Information in dangerous conditions susceptible to foreseeable theft. *Cincinnati v. Beretta USA Corp.*, 2002-Ohio-2480, ¶ 19 ("special relationship" rule was not determinative where the defendant created the conditions that led to foreseeable harm by third parties); *accord In re Nat'l Prescription Opiate Litig.*, No. MDL 2804, 2018 WL 6628898, at *19 (N.D. Ohio Dec. 19, 2018) (upholding plaintiffs' argument that "Defendants, like all reasonably prudent persons, have a duty 'to not expose Plaintiffs to an unreasonable risk of harm'").

It is also well-established that "when one undertakes a duty voluntarily, and another reasonably relies on that undertaking, the volunteer is required to exercise ordinary care in completing the duty." *Douglass v. Salem Cmty. Hosp.,* 2003-Ohio-4006, ¶ 74 (7th Dist.). Once a

voluntary act is undertaken it must be "completely performed with the exercise of due care under the circumstances." *Brier v. Lathrop* Co., 22 Ohio St. 2d 166, 172 (1970). This same rule applies in the data breach context. Otherwise, there would have been no need for the General Assembly to enact a safe harbor statute that shields companies from liability if they can prove, at trial, that they implemented industry standard data protection. *See* Ohio Rev. Code § 1354.01; *Mulkey*, 2021 WL 5804575, at \*3 ("While Ohio law does not explicitly impose a duty to protect PII on businesses that collect such information, it does provide a safe harbor statute . . . [T]he fact that a statute provides a statutory defense against breach of data implies that the law also presumes that such covered businesses have a duty to protect such data.").

Courts in other jurisdictions regularly apply this rule in the context of a data breach as well, finding that a duty arises when a defendant voluntarily collects and benefits from individuals' sensitive information. *See, e.g.*, *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1172–73 (N.D. Ga. 2019) ("entities that collect sensitive, private data from consumers and store that data on their networks have a duty to protect that information"); *In re HCA Healthcare*, *Inc. Data Security Litigation*, 2024 WL 3857330, at \*4 (M.D. Tenn. Aug. 15, 2024) (allegations that defendant "affirmatively created, collected, and stored Plaintiffs' PII/PHI" and that the breach was foreseeable were "sufficient to establish duty for Plaintiffs' negligence claims"); *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 817–18 (E.D. Ky. 2019) (recognizing the existence of a duty where the defendant "obligated [them] to provide sensitive personal information"). Plaintiffs make the same allegations in this case.

Defendant required Plaintiffs to disclose sensitive PI and used that data to provide its services. Compl. ¶¶ 13, 17, 21, 30, 37, 46-47, 118, 127, 137, 159-60, 204. Defendant collected and stored this PI in its computer systems and understood the importance of safeguarding the

16

information. *Id.* ¶¶ 21, 38, 47-48, 51, 119, 128, 138, 160, 173, 205. Further, the risk of a cyberattack on Defendant, a large company that collected and stored vast amounts of sensitive PI, was highly foreseeable. Compl. ¶¶ 73, 91, 170-71, 173-74. Defendant was keenly aware of the value of Plaintiffs' PI, the dangers of failing to properly secure this PI, and its obligation to secure Plaintiffs' PI. Compl. ¶¶ 33, 36, 54, 60, 68, 73, 96, 111.

Because Defendant voluntarily undertook to receive, process, and store the highly sensitive PI of Plaintiffs, Defendant assumed a duty to exercise reasonable care in safeguarding that information, irrespective of whether Plaintiffs directly engaged Defendant's services. It cannot reap the benefits of collecting vast amounts of PI while simultaneously disavowing the duties that accompany such conduct.

### 2. *Plaintiffs Adequately Allege Breach*[9]

Plaintiffs plausibly allege that Defendant breached a duty to exercise reasonable care. The relevant common law duty is "always the same: to conform to the legal standard of reasonable conduct in the light of apparent risk." *Berdyck v. Shinde*, 613 N.E.2d 1014, 1020 (Ohio 1993). Whether this duty was breached is generally a question of fact that should be decided by a jury. *Pacher v. Invisible Fence of Dayton*, 2003-Ohio-5333 ¶ 41 (2d Dist.) The Complaint contains detailed factual allegations supporting the inference that Defendant failed to implement reasonable security measures. Compl. ¶¶ 31, 43-44, 50, 52, 64-85, 169-77. These allegations allow the Court to draw the reasonable inference that Defendant's security practices fell below the standard of reasonable care. *Id.* ¶¶ 43, 50, 52, 112, 169-73. At this stage, the Court should find that it is more than plausible Defendant failed to exercise reasonable care when it voluntarily collected and stored

---

[9] Defendant states that "[p]hishing attacks are among 'the most common modes through which threat actors are able to breach systems.'" MTD at PageID 282-83 (citation omitted). If anything, this demonstrates that the Data Breach was foreseeable, and that Defendant breached a duty to Plaintiffs by failing to protect against the most common type of danger.

17

Plaintiffs' PI under conditions that made it vulnerable to foreseeable theft. *Cf. Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186-TBR, 2017 WL 5986972, at *3 (W.D. Ky. Dec. 1, 2017) (finding "scant" allegations plausibly established breach since they supported "the reasonable inference that, because Plaintiffs' information was released to unauthorized individuals, Defendants breached their duties to safeguard that information"); *Rodriguez*, 2023 WL 7198441, at *6 ("While perhaps a little thin, Plaintiffs' pleadings are sufficient to support a reasonable inference that Mena breached its duty.").

Defendant incorrectly argues that Plaintiffs' breach allegations are "conclusory." MTD at PageID 282-83. As stated above, that is not true. *See, e.g.*, Compl. ¶¶ 43-44, 64-85, 112, 169-77. However, it is important to keep in mind that "data breach cases present unique challenges for plaintiffs at the pleading stage. A plaintiff may know only what the company has disclosed in its notice of a data breach." *Ramirez*, 69 F.4th at 1220. Accordingly, courts "cannot expect a plaintiff … to plead with exacting detail every aspect of [a defendant's] security history and procedures …." *Id.*; *accord In re Eureka Casino Breach Litig.*, No. 2:23-CV-00276-CDS-BNW, 2024 WL 4253198, at *12 (D. Nev. Sept. 19, 2024) (citing *Ramirez* and concluding that, "with discovery incomplete, it would be unrealistic to expect a plaintiff to provide more detail about the defendant's former security systems."). At the pleading stage, some courts have even likened the context of a data breach to the doctrine of *res ipsa loquitor*. *See, e.g.*, *Flores-Mendez v. Zoosk, Inc.*, No. C 20-04929 WHA, 2021 WL 308543, at *4 (N.D. Cal. Jan. 30, 2021) ("There would be no way for users to know what security steps were actually in place. Therefore, when a breach occurs, *the thing speaks for itself.* The breach would not have occurred but for inadequate security measures, or so it can be reasonably inferred at the pleadings stage.") (emphasis in original). The same logic applies here.

To be sure, a minority of courts have required more at the pleading stage. *See, e.g.*, MTD at PageID 283 (citing *Hummel v. Teijin Auto. Techs., Inc.*, No. 23-cv-10341, 2023 WL 6149059 (E.D. Mich. Sep. 20, 2023)). However, Plaintiffs' allegations are specific enough to survive any interpretation of the *Iqbal*/*Twombly* pleading standard, especially in light of the clear allegations here that Defendant left the Private Information unencrypted. *Compare, e.g.,* Compl. ¶¶ 31, 43-44, 50, 60, 92, 112, 170, 179 (Defendant failed to use industry standard encryption) *with Hummel*, 2023 WL 6149059, at *7 ("Plaintiff's contention that Defendant did not encrypt Plaintiff's PII is a specific factual allegation, which if true, could constitute breach of duty by Defendant."); *see also Cahill*, 2024 WL 4311648, at *7 ("Plaintiffs' claim that data was unencrypted [is] sufficiently specific to survive a motion to dismiss").[10]

Defendant's emphasis on its post-breach remediation efforts, including resetting passwords and disabling the compromised account, does not defeat Plaintiffs' breach allegations. The relevant inquiry is whether Defendant maintained adequate safeguards before the attack, not whether it responded after the damage was done. The cat is already out of the bag. If anything, Defendant's post-breach efforts demonstrate that it exercised control over the environment that was compromised and could have prevented the Data Breach through the exercise of reasonable care. That Defendant was able to "secure" the account only after threat actors had already exfiltrated unencrypted sensitive data underscores the inadequacy of its pre-breach security measures. Plaintiffs' allegations are plausible, and must be accepted as true at this stage.

---

[10] Defendant states that "[p]hishing attacks are among 'the most common modes through which threat actors are able to breach systems.'" MTD at PageID 282-83 (citation omitted). If anything, this demonstrates that the Data Breach was foreseeable, and that Defendant breached a duty to Plaintiffs by failing to prevent the most common type of danger.

### 3. *Plaintiffs Adequately Allege Proximate Cause*

Plaintiffs have adequately alleged that Defendant's conduct was a proximate cause of the Data Breach, and that the Data Breach was the proximate cause of their injuries. *See* Compl. ¶¶ 61, 112, 180-83, 196, 201, 208, 217, 219. "A party's negligence is a proximate cause of an injury if the injury is a natural and foreseeable result of the party's act or failure to act." *Wheeler v. Estes Exp. Lines*, 53 F. Supp. 3d 1032, 1040 (N.D. Ohio 2014). "Proximate cause of an injury is typically also an issue for the jury to decide." *Pacher*, 2003-Ohio-5333, at ¶ 41; *see also Drayton v. Jiffee Chem. Corp.*, 591 F.2d 352, 360 (6th Cir. 1978). At the pleading stage, it is appropriate for the Court to find that Plaintiffs have adequately alleged proximate cause for the same reasons they have plausibly alleged traceability for purposes of the standing analysis. *Mercy Health*, 2025 WL 1827804, at *10 ("For the same reasons that Plaintiffs satisfied the traceability element for Article III standing, they likewise exceed the plausibility threshold for the causation element of their negligence claim.").

Defendant argues that there is no direct link between its conduct and Plaintiffs' injuries. However, where defendant's failure to implement adequate security measures foreseeably enabled the Data Breach, the intervening criminal act does not diminish causation. *See Ramirez*, 69 F.4th at 1219 ("[W]hile the intervening criminal act of a third person will often insulate a defendant from liability for an original act of negligence, that rule does not apply when the defendant had reason to anticipate the criminal act."); *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 405 (E.D. Va. 2020) ("an intervening cause is not a superseding cause if it was 'put into operation by the defendant's wrongful act or omission.'") (citation omitted); *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 910–11 (N.D. Cal. 2024) ("Defendants' argument that the third-party criminal superseded causation is unavailing."); *Beretta*, 2002-Ohio-2480, at ¶ 19 (defendants can

20

be held liable for increasing the risk of foreseeable harm caused by third parties). Plaintiffs have alleged a direct connection between Defendant's failures and their injuries. Compl. ¶¶ 180–83.

Defendant argues that the Data Breach did not expose certain data types—such as "phone numbers, email addresses, login credentials, passwords, driver's license numbers, or payment card or bank account data"—and therefore Plaintiffs cannot establish causation. MTD at PageID 284-86. This argument has nothing to do with Plaintiffs' privacy, risk, and bargain-based injuries, which are unrelated to the subsequent misuse of their Private Information after its theft and are instead traceable to the Data Breach as a matter of common sense. However, as explained in the standing section above, Plaintiffs have also plausibly alleged that the fraud and identity theft they suffered was caused by the Data Breach. *See Galaria*, 663 F. App'x at 388 ("Where a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in [the p]laintiffs' complaints."). Defendant's arguments to the contrary display a fundamental misunderstanding about how cybercriminals use the type of Private Information stolen in the Data Breach. *See* Compl. ¶¶ 4, 8, 44, 53, 58, 92-95, 104, 103-14. Social Security numbers and dates of birth are the foundational building blocks of identity theft. *See id.* ¶ 104. Armed with this information, criminals can open fraudulent bank accounts, apply for credit, file false tax returns, and gain access to existing accounts through social engineering or security question circumvention. *See id.* ¶¶ 113, 115.

Defendant argues that Plaintiffs' injuries could have resulted from other data breaches or nefarious sources, claiming there is no way to trace the misuse to this Data Breach specifically. MTD at PageID 265-66. However, "Plaintiffs need not explicitly state that other breaches did *not* cause these alleged injuries, since their allegations that this Data Breach *did* cause their injuries implies such an allegation." *In re Equifax*, 362 F. Supp. 3d at 1318 (emphasis in original).

21

Furthermore, allowing the Defendants "to rely on other data breaches to defeat a causal connection would 'create a perverse incentive for companies: so long as enough data breaches take place, individual companies will never be found liable.'" *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *19 (N.D. Cal. Aug. 30, 2017) (quoting *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 988 (N.D. Cal. 2016)); *accord In re Equifax*, 362 F. Supp. 3d at 1318 (citing *Yahoo* and *Anthem*).

The Sixth Circuit has made clear that allegations of lax security resulting in unauthorized parties stealing data are sufficient to allege that injuries are fairly traceable to a defendant's conduct. *Galaria*, 663 F. App'x at 390. Here, in addition to their numerous other injuries, Plaintiffs allege they experienced misuse of their personal information and fraudulent activity shortly after the breach that could be achieved using the data elements exposed in the Data Breach, at least in combination with other publicly available information. Accepting Plaintiffs' allegations as true, the Complaint plausibly alleges that Defendant was a proximate cause of all injuries.

### 4. *Plaintiffs Adequately Allege Cognizable Harm*

Plaintiffs have suffered a cognizable injury for purposes of their injury claim under Ohio law for the same reasons that they have suffered concrete Article III injuries. "[I]f a plaintiff meets Article III's injury-in-fact requirement, that plaintiff has almost certainly sustained cognizable damages." *Allen*, 696 F. Supp. 3d at 437 (citing *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018)); *accord Bohnak*, 79 F.4th at 290 (quoting *Dieffenbach* and holding that the plaintiff adequately alleged an injury under New York law because "[t]o say that the plaintiffs have standing is to say that they have alleged injury in fact, and if they have suffered an injury then damages are available."). As discussed above, Plaintiffs have alleged concrete injuries related to fraud and identity theft, the risk of harm, and loss of privacy. Indeed, it is "common sense" that

"an injury exists where, at the very least, criminals have hacked into a data system and exfiltrated personally identifiable information and protected health information." *Tracy v. Elekta, Inc.*, 667 F. Supp. 3d 1276, 1283 (N.D. Ga. 2023) (declining to dismiss a negligence claim).

Both past and future damages are recoverable under Ohio law. Ohio Revised Code § 2323.56 defines "future damages" as "any damages that result from an injury to person that is a subject of a tort action and that will accrue after the verdict or determination of liability by the trier of fact is rendered in that tort action." "[A] plaintiff may obtain future damages when the damages are 'limited to losses that the plaintiff is reasonably certain to incur from the injuries.'" *Jessica v. Ohio Dep't of Job & Fam. Servs.*, 2025-Ohio-2604, ¶ 57 (10th Dist.) (quoting *Bender v. Durrani*, 2024-Ohio-1258, ¶ 136 (1st Dist.)); *see also In re CBIZ*, 2025 WL 1557033, at *3 ("The case law establishes the standard by which 'future damages' must be established. The plaintiff must prove that they are 'certainly impending' in order to recover."). In other words, the ability to recover future damages is governed by a test that is substantially similar to the Article III standing analysis. *See Susan B. Anthony List*, 573 U.S. at 158 (using the phrases "substantial risk of harm" and "certainly impending harm" synonymously). There is little doubt that the victims of a targeted cyberattack face a substantial risk of harm. *Galaria*, 663 F. App'x at 388. Therefore, Plaintiffs can recover future damages stemming from the Data Breach as well.

Courts in Ohio and elsewhere have repeatedly held that the past and future injuries flowing from a data breach – including intangible privacy injuries, the expense of time or money to mitigate a risk of harm, and emotional distress – are cognizable injuries that support a claim for negligence. *See, e.g.*, *Mulkey*, 2021 WL 5804575, at *4 (holding that emotional distress and the time spent monitoring financial accounts after a data breach are cognizable injuries under Ohio law); *Allen*, 696 F. Supp. 3d at 437 (privacy injury from a data breach cognizable for purposes of a negligence

23

claim under Ohio law); *Mason v. Wright Bros. Constr. Co., Inc.*, 2025 WL 939709, at *7 (E.D. Tenn. Mar. 27, 2025) (citing *Allen* and holding that an alleged privacy injury and the future cost of credit monitoring after a data breach are cognizable under Tennessee law); *Cahill*, 2024 WL 4311648, at *8 ("Privacy harm is a cognizable injury, as is an increased risk of identity theft."); *see also Jessica*, 2025-Ohio-2604, ¶ 57 ("Ms. Short had standing to pursue her claims against ODJFS based on her increased risk of identity theft or fraud and her lost time, mitigation costs, and emotional injury.").

In *Jessica*, the plaintiff alleged that she would incur future costs and expenses to monitor her credit. *Id.* ¶ 53. The Ohio Tenth District Court of Appeals held that "[t]o the extent [the plaintiff] actually incurred out of pocket expenses to mitigate the risk of identity theft or fraud, such costs constitute a concrete injury." *Id.* It then went further and explained that because the plaintiff faced a substantial risk of harm for years to come, she had adequately "demonstrate[d] she will incur credit monitoring expenses in the future as a result of the data breach" in a manner that is cognizable under Ohio law. *Id.* ¶¶ 53-54 (citing *Mason*, 2025 WL 939709, at *7). The court further explained that the plaintiff suffered cognizable injuries under Ohio law based on the loss of time spent mitigating the risk of harm, as well as the emotional distress that the risk of harm caused. *See Jessica*, 2025-Ohio-2604, ¶¶ 51-52, 55-57. Plaintiffs have adequately alleged the same cognizable privacy and risk-based injuries in this case as well.

### 5. *The Economic Loss Rule Does Not Apply to Plaintiffs' Claims*

The economic loss rule does not apply to Plaintiffs' negligence claim because Plaintiffs have alleged both economic and non-economic injuries. Still, even if they did not, their negligence claim is not premised entirely upon the terms of a contract.

Under Ohio law, "[t]he economic-loss rule generally prevents recovery in tort of damages for purely economic loss." *Corporex Dev. & Constr. Mgt. v. Shook, Inc.*, 2005-Ohio-5409, ¶ 6. Plaintiffs' alleged loss of time is a non-economic injury. *Mulkey*, 2021 WL 5804575, at *2-3. Plaintiffs' alleged privacy injuries are too. *See Allen*, 696 F. Supp. 3d at 439 ("Here, Allen alleges that he suffered a 'loss of his privacy' from the Wenco breach. Because such a loss is no doubt intangible—and thus noneconomic—the economic-loss rule doesn't apply."). The analysis in *Allen* is bolstered by the recent Ohio Court of Appeals opinion in *Jessica*, which cited *Allen* in recognition that data breach victims suffer an intangible privacy injury. *Jessica*, 2025-Ohio-2604, ¶ 31-32. Under the same logic, Plaintiffs do not seek to recover for "*purely* economic loss." *See Corporex*, 2005-Ohio-5409, ¶ 6 (emphasis added). Therefore, the economic loss rule does not apply. But that is not the only reason why.

The economic loss rule also does not apply for the independent reason that it "serves to bar only those negligence claims 'premised entirely upon the terms of a contract.'" *Allen*, 696 F. Supp. 3d at 439 (quoting *Corporex* 2005-Ohio-5409, at ¶ 10); *see also Morris v. Gedraitis*, 2023-Ohio-2317, ¶¶ 69-71 (5th Dist.) (declining to apply the economic loss rule after discussing leading authority on the issue because, based on the facts of the case, a common law duty "would exist even if no contract existed"). That exception to the economic loss rule applies to this case under either New York or Ohio law because Plaintiffs have plausibly alleged the existence of a common law duty to exercise reasonable care. *See Mercy Health*, 2025 WL 1827804, at *10 ("The Court already determined that Plaintiffs plausibly alleged a common-law duty of reasonable care to protect their PII from misuse. In other words, because Plaintiffs rely at least in part on a duty that arises under common law (as opposed to a contract), the economic loss rule does not bar Plaintiffs' negligence claim.") (citing *Allen*, 696 F. Supp. 3d at 439); *Sackin v. TransPerfect Glob., Inc.*, 278

25

F. Supp. 3d 739, 749–50 (S.D.N.Y. 2017) (declining to dismiss negligence claim under the economic loss rule because "the Complaint alleges breach of common law and statutory duties distinct from Defendant's contractual duties").

In *Foster*, the Court dismissed the negligence claim under the economic loss rule because the plaintiff simultaneously pursued the same damages under a breach of contract theory. *See Foster*, 493 F. Supp. 3d at 639 ("Plaintiff's tort and breach of contract claims are premised on the same allegations of wrongdoing and are based on the same claims for damages. Accordingly, Plaintiff's negligence claim is barred by the economic loss doctrine."). However, Plaintiffs do not allege they are in contractual privity with Defendant (and to the extent relevant, consent to the dismissal of their third-party beneficiary claim), making this case more analogous to *Allen* than *Foster*. *See Allen*, 696 F. Supp. 3d at 439 (finding that "even if Allen had alleged purely economic loss, the rule wouldn't apply to Allen's claims" because "Allen alleges no contractual duty on Wenco's part to regulate data security," so "if Wenco had *any* duty to protect Allen's PII, it must have been 'a discrete, preexisting duty in tort.'") (emphasis in original) (quoting *Corporex*, 2005-Ohio-5409, ¶ 9).[11]

While some courts have reached a different conclusion on the application of the independent duty exception to the economic loss rule, *see, e.g.*, *Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-cv-184, 2023 WL 423504, *3-4 (S.D. Ohio Jan. 26, 2023), that is not in line with Ohio precedent. *See Allen*, 696 F. Supp. 3d at 439 n.3 ("But *Tucker*'s assertion that the

---

[11] Although the lack of a contractual claim already places this case outside the scope of *Foster's* holding, it should be noted that the plaintiff in *Foster* did "not explain" why an exception "would apply . . . where [the plaintiff] has simultaneously alleged a breach of contract and breach of implied contract claim based on the same set of facts." *Foster*, 493 F. Supp. 3d at 639. It is unclear why the plaintiff did not point to Civil Rule 8(d), which permits alternative pleading. *See also Navistar, Inc. v. Dutchmaid Logistics, Inc.*, 2021-Ohio-1425, ¶¶ 28-31 (5th Dist.) (litigants can seek the same damages at trial for the same facts giving rise to alleged tort and contract claims so long as they only recover the same damages once).

'economic loss doctrine does not hinge on how the defendant's duty arose' directly contravenes the Supreme Court of Ohio's leading economic-loss-rule precedent."); *see also Morris*, 2023-Ohio-2317, ¶¶ 69-71 (discussing Ohio's leading precedent). This Court should correctly apply the leading precedent and decline to dismiss Plaintiffs' negligence claim.

### C. Plaintiffs Adequately State a Claim for Unjust Enrichment

Plaintiffs have adequately stated their claims for unjust enrichment based on the inequitable retention of the value and benefits provided by Defendant's possession of their Private Information. "Unjust enrichment occurs when 'when a party retains money or benefits which in justice and equity belong to another.'" *Foster*, 493 F. Supp. 3d at 641 (quoting *Dailey v. Craigmyle & Son Farms, L.L.C.*, 894 N.E.2d 1301, 1309 (Ohio Ct. App. 4th Dist. 2008)). "To state a claim for unjust enrichment, a plaintiff must allege: '(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.'" *Id.*; *see also Koeller v. Numrich Gun Parts Corp.*, 675 F. Supp. 3d 260, 271 (N.D.N.Y. 2023) (similar).

Plaintiffs conferred a benefit on Defendant by providing their Defendant with their PI at Defendant's demand. Compl. ¶¶ 30, 211. Defendant knew that Plaintiffs conferred a benefit on it and profited from Plaintiffs' retained data and used Plaintiffs' PI for its own business purposes. *Id.* ¶ 212. In exchange, Defendant should have provided adequate security for Plaintiffs' PI. *Id.* ¶ 211. By failing to secure Plaintiffs' PI, Defendant did not fully compensate Plaintiffs for the value that their PI provided. *Id.* ¶ 213. In addition, Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' PI. *Id.* ¶ 217. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profit at the expense of Plaintiffs and Class members by

27

utilizing cheaper, ineffective security measures and diverting those funds to its own profit. *Id.*

In *Foster*, the Court determined that the plaintiff adequately alleged unjust enrichment in a data breach case because the plaintiff conferred a benefit on the defendant by paying "for health care services pursuant to an implied contract which required Defendant to safeguard Plaintiff's sensitive medical information," yet defendant failed to safeguard the information. 493 F. Supp. 3d at 641. Similar allegations were found to be sufficient to support an unjust enrichment claim in *Tucker*, 2023 WL 423504, at *7.

Defendant argues Plaintiffs' unjust enrichment claim cannot succeed because Plaintiffs had no "direct transactional relationship" with Defendant. MTD at PageID 296. However, Plaintiffs reasonably understood that entities possessing their Private Information for the purpose of facilitating their healthcare would take basic precautions to protect it from foreseeable threats. *See* Compl.. ¶ 33. These are facts which must be accepted as true at the current stage. *Mitchell v. BMI Fed. Credit Union*, 374 F. Supp. 3d 664, 667 (S.D. Ohio 2019). Numerous courts have concluded that unjust enrichment claims are plausible under the same circumstances as this case. *See, e.g.*, *In re Change Healthcare, Inc. Customer Data Sec. Breach Litig.*, No. MDL 24-3108 (DWF/DJF), 2025 WL 3693201, at *16 (D. Minn. Dec. 19, 2025) ("[T]he defendant must have benefited, but the benefit need not be conferred upon them directly by the plaintiff."); *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, 748 F. Supp. 3d 262, 278 (E.D. Pa. 2024) (finding that unjust enrichment exists when a business "commoditizes" PI or otherwise "receives an independent pecuniary benefit from holding" PI despite not implementing reasonable security) (collecting cases).

Defendant's second argument—that Defendant did not understand Plaintiffs were providing their PI in exchange in part for its security—contradicts the factual allegations made in Plaintiffs' Complaint and is therefore improper. Plaintiffs have alleged that Defendant understood

28

it was receiving a benefit from Plaintiffs' PI and that Plaintiffs expected security in return. Compl. ¶¶ 211-13. Further, Defendant fostered that understanding through its own representations and privacy policies. *Id.* ¶¶ 32, 205. With this in mind, "it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to protect the information sufficiently." *Savidge*, 2017 WL 5986972, at *9 (quoting *Castillo v. Seagate Tech., LLC*, No. 16-CV-01958-RS, 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016)).

Defendant's argument that it was not unjustly enriched because a third-party cybercriminal organization stole Plaintiffs' PI fails for similar reasons. The crux of Plaintiffs' Complaint is that Defendant's failure to provide adequate security as promised directly resulted in cybercriminals being able to access the PI held in Defendant's inadequately protected system. Defendant accepted the benefit of Plaintiffs' PI without providing for the promised security. Compl. ¶¶ 211-13. This is sufficient to support Plaintiffs' unjust enrichment claim. *See In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d at 412 ("[F]ailure to secure a party's data can give rise to an unjust enrichment claim where a Defendant accepts the benefits accompanying plaintiff's data and does so at the plaintiff's expense by not implementing adequate safeguards."); *see also In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 384–85 (S.D.N.Y. 2024); *Smith v. Am. Pain & Wellness, PLLC*, 747 F. Supp. 3d 989, 1003 (E.D. Tex. 2024); *Gordon*, 2025 WL 936415, at *16; *Capiau*, 2024 WL 3747191, at *12.

Defendant's argument that the unjust enrichment claim is duplicative of Plaintiffs' tort and contract claims should be rejected because Plaintiffs have consented to the dismissal of their contractual claims, and unjust enrichment can proceed in the alternative at this stage. *See* Fed. R. Civ. P. 8(d)(2), (d)(3), (e); *Mike Albert, Ltd. v. 540 Auto Repair, Inc.*, No. 1:21-CV-286, 2022 WL

488969, at \*9 (S.D. Ohio Feb. 17, 2022); *Freedom Holding, Inc. v. Haart*, 172 N.Y.S.3d 873, 885 (N.Y. Sup. Ct. 2022). Accordingly, Plaintiffs should be permitted to proceed with their claim for unjust enrichment as well.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion to dismiss Plaintiffs' claims for negligence and unjust enrichment, and it should allow any other claims to be dismissed without prejudice. In the event the Court dismisses the Complaint in whole or in part, Plaintiffs respectfully request leave to amend. *See* Fed. R. Civ. P. 15(a)(2) (leave to amend shall be "freely" given); *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982) (holding that Rule 15(a) creates a liberal policy in favor of granting leave to amend and is meant to "reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings").

Respectfully submitted,

*/s/ W.B. Markovits*
W.B. Markovits (0018514)
Pierre H. Bergeron (0071402)
Terence R. Coates (0085579)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*bmarkovits@msdlegal.com*
*pbergeron@msdlegal.com*
*tcoates@msdlegal.com*

Jeff Ostrow (*pro hac vice*)
Steven Sukert (*pro hac vice*)
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 332-4200
*ostrow@kolawyers.com*
*sukert@kolawyers.com*

30

Leanna Loginov (*pro hac vice*)
**SHAMIS & GENTILE, P.A.**
14 NE First Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299
*lloginov@shamisgentile.com*

Josh Sanford
josh@sanfordlawfirm.com
**SANFORD LAW FIRM**
Kirkpatrick Plaza
10800 Financial Centre Pkwy,
Ste 510
Little Rock, AR 72211
Phone: (888) 350-3931
Fax: (888) 276-3455

Leigh Montgomery (*pro hac vice* forthcoming)
lmontgomery@eksm.com
service@eksm.com
**EKSM, LLP**
4200 Montrose Blvd., Suite 200
Houston, Texas 77006
Phone: (888) 350-3931

*Counsel for Plaintiffs and the Putative Class*

31

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2026, I served a copy of the foregoing upon all parties through their counsel of record by filing it electronically with the Court's CM/ECF system in accordance with Fed. R. Civ. P. 5(b)(2)(E).

/s/ W.B. Markovits
W.B. Markovits (0018514)