**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

RONDA WASHBURN, DANIELLE
WEBBER, and JODIE PIERCE, *on behalf of
themselves and all others similarly situated,*

      Plaintiffs,

v.

CPS Solutions, LLC,

      Defendant.

Case No.: 2:25-cv-00400-ALM-EPD

Judge Algenon L. Marbley

Magistrate Judge S. Courter Shimeall

**DEFENDANT CPS SOLUTIONS, LLC'S REPLY
IN FURTHER SUPPORT OF ITS MOTION TO STAY DISCOVERY**

Plaintiffs' Opposition to CPS's Motion to Stay only reinforces why a short discovery stay is necessary here. As CPS explained in its motion, each of the four factors courts apply—procedural posture, prejudice to Plaintiffs, simplification of the issues, and burden on the parties and the Court—supports a brief stay. Rather than engage with this governing framework, Plaintiffs ignore three of the four factors entirely and rely instead on a cursory, unsubstantiated claim that any delay is inherently prejudicial and on the assertion that CPS has not shown that the case "patently lacks merit." That framing sidesteps the substance of CPS's Motion to Dismiss, which raises threshold Article III standing and Rule 12(b)(6) defects that are likely to dispose of the case or, at minimum, sharply narrow the theories at issue.[1]

Consistent with that reality, Plaintiffs themselves acknowledge that resolution of the Motion to Dismiss will shape the scope of the case and concede that discovery in this nationwide

---

[1] Indeed, after CPS moved to dismiss, Plaintiffs voluntarily dismissed three of their five claims originally pled (negligence per se, breach of fiduciary duty, and breach of third-party beneficiary contract). Pls.' Opp'n Mot. Dismiss, Dkt. No. 40 at n.2. The Motion to Dismiss is likely to result in dismissal of Plaintiffs' remaining two claims.

data-breach action will be "complex[]." Pls.' Opp'n to Stay, Dkt. No. 39 ("Opp'n") at 9. Yet they nevertheless insist on proceeding immediately with broad merits discovery, and remain silent as to CPS's proposed alternative of targeted, non-custodial discovery in the interim. Taken together, Plaintiffs' positions underscore precisely why a short stay is warranted: to allow the Court to resolve a likely successful dispositive motion before imposing sweeping and potentially unnecessary discovery burdens on the parties and the Court. CPS respectfully requests that the Court exercise its discretion to temporarily stay discovery pending a decision on CPS's Motion to Dismiss.

## ARGUMENT

While filing a motion to dismiss does not automatically warrant a discovery stay, courts in this District evaluate discovery stay motions by considering: (1) the stage of litigation; (2) whether the stay will unduly prejudice the non-moving party; (3) whether the stay will simplify the issues and narrow discovery; and (4) whether the stay will reduce the burden on the parties and the Court. *See Turner v. Monarch Inv. & Mgmt. Grp.,* LLC., No. 2:20-cv-3997, 2021 WL 534623, at *2 (S.D. Ohio Feb. 12, 2021). Plaintiffs do not meaningfully engage with that framework, instead ignoring three of the four factors altogether to focus narrowly on their unsubstantiated claim that a stay would prejudice them and their argument that CPS has not shown that the case "patently lacks merit." Opp'n at 5. This silence is telling and underscores that Plaintiffs have no viable response. "A party waives opposition to an argument by failing to address it in [their] responsive brief," *Ciena Healthcare Mgmt., Inc. v. Hartford Fire Ins. Co.*, 686 F. Supp. 3d 625, 635–36 (N.D. Ohio 2023), and Plaintiffs' wholesale omissions confirm that they cannot meaningfully dispute that these factors decisively favor a stay.

### A. All Four Factors Weigh Strongly in Favor of a Discovery Stay

Properly considered, each factor favors a stay here.

2

*First*, the preliminary stage of litigation here strongly supports a stay, and Plaintiffs' failure to address this factor at all confirms the point.  This case remains in its infancy: no scheduling order has issued, discovery has not begun, and a brief stay would not disrupt any proceedings.  The Motion to Dismiss will be fully briefed within the week, meaning any stay would be brief and targeted.  Courts in this District routinely grant stays under these circumstances to preserve party and judicial resources, particularly where threshold issues are pending.  *See* Def.'s Mot. Stay, Dkt. No. 29 ("Mot.") at 5.  Plaintiffs offer no response to this well-established principle, effectively conceding that the early stage of litigation weighs decisively in favor of a stay.

*Second*, Plaintiffs identify no concrete prejudice that would result from a stay, arguing only that any delay is inherently prejudicial because a "plaintiff has an interest in the speedy resolution of its case." Opp'n at 8.  But Plaintiffs point to no specific hardship they would suffer from a brief pause in discovery, do not contend in their Opposition to this Motion that discovery is needed to respond to the Motion to Dismiss (indeed, they have already responded), and do not suggest that evidence is at risk of loss or that they will suffer any tactical disadvantage as a result of a short stay.  Courts consistently reject such abstract invocations of delay as insufficient to establish undue prejudice.  *See, e.g., Turner*, 2021 WL 534623, at *3 ("The Court also is not moved by Plaintiff's purely speculative suggestion that the 'passage of time' would prejudice him"); *Kirkbride v. Kroger Co.*, No. 2:21-cv-22, 2021 WL 2650043, at *4 (S.D. Ohio June 28, 2021) (granting stay where "Plaintiff has not pointed to any hardship she will suffer as a result of a short stay of discovery.").

The posture of this case further confirms that no cognizable prejudice will accrue to Plaintiffs from a brief stay.  Plaintiffs have already fully briefed their opposition to the Motion to Dismiss, and no scheduling order or discovery deadlines are yet in place.  Under these

circumstances, courts routinely conclude that a short discovery pause would not result in prejudice and instead promotes efficient case management. *See* Mot. 6–7; *Wasserman v. Weir*, No. 2:24-cv-3935, 2025 WL 227157, at *4 (S.D. Ohio Jan. 17, 2025) (explaining that court "cannot conceive how Plaintiff will be unduly prejudiced or tactically disadvantaged by a short stay designed to simplify the discovery process."). This case therefore bears no resemblance to *Hi-Vac Corp. v. Coley*, where the court denied a stay because the defendant "ha[d] done nothing to demonstrate that a stay of discovery will be of no consequence to Plaintiffs." No. 2:23-cv-4184, 2025 WL 1936660, at *4 (S.D. Ohio July 15, 2025). Here, by contrast, CPS has made precisely that showing: discovery has not begun, Plaintiffs identify no concrete harm (such as statute of limitation concerns, witness unavailability, or document spoilation risk) from a brief pause, and a stay would merely defer—rather than disrupt—proceedings while threshold issues are resolved. Indeed, CPS has agreed to negotiate an ESI Protocol to ensure that discovery can promptly commence if needed following resolution of the Motion to Dismiss. These undisputed circumstances confirm that this factor weighs in favor of a stay.

*Third*, and most critically, Plaintiffs do not engage at all with how resolution of the Motion to Dismiss will certainly simplify—if not eliminate altogether—the issues and required discovery in this case. This omission is telling. CPS's pending Motion to Dismiss raises a threshold Article III standing challenge that calls into question whether the Court has subject-matter jurisdiction at all. Courts are especially hesitant to permit discovery where it is possible the Court lacks authority to adjudicate the case in the first instance. Mot. 8–9; *Victoria's Secret Stores Brand Mgmt., Inc. v. Bob's Stores LLC*, No. 2:13-cv-1261, 2014 WL 1045994, at *2 (S.D. Ohio Mar. 17, 2014) ("It would make little sense for the Court to adjudicate discovery disputes without first deciding whether it has the power to bind Defendant.").

4

Moreover, since the Motion to Stay was filed, Plaintiffs have voluntarily dismissed three of their five claims—an implicit acknowledgement that those claims lacked merit. This underscores the realistic possibility that the remaining claims will also be dismissed, resulting in a complete termination of the action. Proceeding with discovery under these circumstances would risk imposing substantial and unnecessary burdens in a case that likely will not proceed past the pleading stage.

And even in the unlikely situation where the action is not dismissed outright, CPS identified multiple examples in its Motion of how the pending Motion to Dismiss will narrow discovery, thereby focusing discovery (if the case survives) on only the remaining claims.[2]  Mot. at 8. Plaintiffs do not respond to that analysis. Instead they attempt to re-litigate the merits of the Motion to Dismiss and assert that "at a minimum Plaintiffs' claim for negligence will likely survive," Opp'n at 7. But Plaintiffs have already dismissed three of their five claims, and the Motion to Dismiss demonstrates why the remaining two claims, including the negligence claim, are not well pled. Where, as here, a motion to dismiss will materially shape the contours of discovery, courts routinely stay discovery to avoid unnecessary costs and inefficiencies. *See* Mot. 8–9; *J & G Invs., LLC v. Fineline Properties, Inc.,* No. 5:06 CV 2461, 2007 WL 928642, at *5 (N.D. Ohio March 27, 2007) ("It makes sense to stay discovery in a class action pending resolution of motions to dismiss which might resolve the entire case."). Plaintiffs' complete failure to meaningfully address this factor strongly favors a stay.

---

[2] Resolution of the Motion to Dismiss will necessarily narrow discovery by eliminating standing theories that cannot define the class and by disposing of causes of action—such as negligence or unjust enrichment claims—that would otherwise require expansive discovery into damages, causation, and CPS's contracts with healthcare providers. Indeed, "[d]ismissal of any of Plaintiffs' claims would sharply reduce the volume, complexity, and cost of discovery." Mot. at 8.

*Fourth*, there is no question that a stay will conserve both judicial and party resources, and the final factor therefore also weighs in favor of a stay. Plaintiffs use their Opposition to defend the breadth of discovery they expect to pursue, arguing that "the scope of discovery necessary in this case arises out of the complexity of the issues, and Plaintiffs are permitted to seek discovery relevant to those issues." Opp'n at 9. But that acknowledgement confirms—rather than undermines—CPS's point. The more complex and far-reaching discovery will be, the greater the need to ensure that it is necessary before imposing it on the parties and the Court. The purpose of a discovery stay is not to deprive Plaintiffs of relevant discovery, but to avoid imposing sweeping discovery obligations before the Court determines which claims, theories, and parties (if any) remain in the case.

As Plaintiffs' admission makes clear, proceeding with full merits discovery now would impose substantial burdens not only on CPS and Plaintiffs, but on the Court itself. Broad early discovery in a nationwide data-breach class action predictably invites requests for judicial intervention over discovery disputes, requiring the Court to supervise discovery that may soon prove irrelevant or unnecessary if the Motion to Dismiss is granted in whole or in part. Mot. at 9. A brief stay avoids the Court expending its limited resources managing disputes tied to claims and theories that may not survive threshold review and is therefore an "eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *Harris v. Aramark Inc.,* No. 2:17-cv-872, 2020 WL 91834, at \*5 (S.D. Ohio Jan. 8, 2020). This is particularly true, where, as here, a brief stay would not hamper Plaintiffs' ability to conduct relevant discovery should the case ultimately proceed. *See* Mot. at 9.[3]

---

[3] Plaintiffs' insistence that CPS can later seek relief from specific discovery requests misses the point. Opp'n at 9. By the time disputes regarding the appropriate scope of discovery arise, the most significant costs—custodial collections, forensic review, privilege analysis, and motion

Plaintiffs' reliance on *Wendy's Netherlands B.V. v. Levy* does not alter this analysis. Plaintiffs cite this case in an attempt to argue that discovery burden is "insufficient to justify a stay." Opp'n at 9. But this case is wholly inapposite. There, the court rejected a stay request because the movant offered only a conclusory assertion that discovery would be "quite broad" and result in "a great number of responsive documents," without any meaningful elaboration. No. 2:24-cv-3077, 2026 WL 35205, at *3 (S.D. Ohio Jan. 6, 2026). But CPS does not rely on speculative characterizations of potential discovery; CPS submitted concrete exemplar requests propounded by the same Plaintiffs' counsel in a materially similar data-breach class action, demonstrating the wide-ranging scope, cost, and likely disruption that merits discovery here would entail. Mot. at 10 Ex. A. Notably, Plaintiffs do not suggest that they intend to meaningfully tailor their discovery requests in this case to address burden concerns.

Plaintiffs' opposition is further undermined by their failure to consider CPS's proposed compromise. CPS offered alternatively to proceed with limited, discrete, and non-burdensome discovery pending resolution of the Motion to Dismiss. Mot. at 11. Plaintiffs ignore that proposal entirely. This confirms that Plaintiffs' objection is not to the scope of a stay but to *any* limitation on immediate broad discovery.

Considered together, all four factors point in the same direction. This case is at its earliest stage; Plaintiffs face no cognizable prejudice from a brief stay; the Motion to Dismiss is likely to simplify the case and materially narrow discovery; and Plaintiffs themselves acknowledge that discovery will be burdensome to both CPS and the Court. Not only do all four factors favor a stay,

---

practice taking up the Court's docket—will already have been incurred, potentially for discovery rendered irrelevant by dismissal.

but CPS's Motion to Dismiss raises the kind of threshold, case-dispositive defects that independently warrant a discovery pause.

**B.      CPS's Motion to Stay is Not Premised on a "Garden-Variety" Motion to Dismiss**

Plaintiffs devote the majority of their opposition to arguing that "[m]erely moving to dismiss . . . is not enough to stay the case, when the arguments advanced in the motion to dismiss are not almost certain to succeed." Opp'n at 5.  This argument fails for at least two reasons.

*"First*, contrary to Plaintiff's characterization, the basis for [Defendant's] motion is not solely the pendency of potentially dispositive motions," but rather "the burden [CPS] will face if required to respond to Plaintiff's discovery requests and the lack of prejudice faced by Plaintiff if discovery is stayed." *Kirkbride*, 2021 WL 2650043, at *3.  (emphasis added). CPS has demonstrated that immediate discovery would impose substantial and potentially unnecessary burdens on the Court and the parties, while Plaintiffs have failed to identify any concrete prejudice from a brief pause. *Supra* Section A.

*Second*, Plaintiffs are wrong to suggest that CPS's Motion to Dismiss raises mere "garden variety" arguments.  Opp'n at 5.  CPS's Motion to Dismiss articulates threshold, case-dispositive legal defects that discovery cannot cure, including the failure to allege a concrete Article III injury traceable to CPS and to state any plausible claim for relief.  Mot. at 7.  CPS's Motion to Dismiss is therefore "almost certain to succeed."  Opp'n at 5.

Plaintiffs' arguments in support of Article III standing only underscore this point.  Plaintiffs rely almost exclusively on the Sixth Circuit's *Galaria* decision, Opp'n at 6, but ignore that the Supreme Court's more recent *TransUnion* decision forecloses Plaintiffs' theories of speculative future harm and mitigation costs as conferring standing.  Def.'s Mot. Dismiss, Dkt. No. 30 at 10–13 ("Mot. Dismiss)."  More fundamentally, Plaintiffs fail to address the core traceability defect

that infects their allegations.  *Id.* at 4–7.  As the Motion to Dismiss explains, any alleged misuse of Plaintiffs' data is not fairly traceable to the CPS Phishing Incident because the data exposed in that incident could not have enabled the alleged misuse.  *Id.*

*Bon Secours* does not alter this conclusion.  Opp'n at 6.  There*,* the court held that plaintiffs had established standing where they alleged misuse traceable to the data breach "in light of Plaintiffs' allegation[s] that bad actors can utilize Fullz packages . . . to link individuals' compromised PII with publicly available information and effectuate [fraud]."  *In re Bon Secours Mercy Health Data Breach Litig.*, No. 1:24-cv-594, 2025 WL 1827804, at *5–6 (S.D. Ohio July 2, 2025).  Here, by contrast, the data allegedly accessed could not have enabled the misuse Plaintiffs claim, nor do they allege anything comparable to the Fullz-package theory discussed in *Bon Secours.*  In short, Plaintiffs standing defects are fatal, discovery cannot fix them, and the entire case should be dismissed.

Plaintiffs' assertion that their negligence claim will "at a minimum" survive is likewise unsupported. Opp'n at 7.  As set forth in CPS's Motion to Dismiss, Plaintiffs fail to plausibly allege any duty requiring a third-party vendor like CPS to protect their information.  Mot. Dismiss at 18–21.  Unlike *Bon Secours*, where an employer-employee relationship supplied such a duty, 2025 WL 1827804, at *9, Plaintiffs here are not CPS's customers or employees, had no direct dealings with CPS, and allege only routine data sharing with their healthcare providers. Mot. Dismiss at 20.  Plaintiffs also fail to plead any non-conclusory facts showing breach, cannot plausibly allege proximate cause for the same reasons these claims fail on traceability, and identify no cognizable damages.  *Id.* at 22–31.  In addition, the negligence claim is independently barred by Ohio's economic-loss rule.  *In re Bon Secours*, 2025 WL 1827804, at *9.

9

Finally, Plaintiffs' efforts to label CPS's Motion to Dismiss as "garden variety" because it does not invoke abstention, immunity, or service defects misconstrues the stay inquiry.  Opp'n at 7.  The relevant question is whether the motion raises threshold defects whose resolution will shape—or eliminate—the case.  *See Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund,* 349 F.3d 300, 304 (6th Cir. 2003) (Discovery limitations are particularly appropriate "where claims may be dismissed 'based on legal determinations that could not have been altered by any further discovery.'").  CPS's Motion does exactly that: it demonstrates that Plaintiffs lack Article III standing and that each cause of action fails as a matter of law.  Because the Motion to Dismiss raises substantial, case-dispositive legal defects, it provides an independent basis for staying discovery.

## CONCLUSION

For the foregoing reasons, CPS respectfully requests that the Court enter an order staying discovery pending resolution of CPS's Motion to Dismiss, or, in the alternative, limit discovery to discrete categories of non-custodial and non-burdensome documents during this period.

10

Respectfully submitted,

/s/ Joel E. Sechler
Joel E. Sechler (0076320)
Carpenter Lipps LLP
280 North High Street, Suite 1300
Columbus, OH 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
sechler@carpenterlipps.com

*Trial Attorney for Defendant*
*CPS Solutions, LLC*

Of Counsel

Katheryn M. Lloyd (0075610)
Amber L. Merl (0080655)
Carpenter Lipps LLP
280 North High Street, Suite 1300
Columbus, OH 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
lloyd@carpenterlips.com
merl@carpenterlipps.com

Jennifer S. Windom
(*admitted pro hac vice*)
Allison Holt Ryan
(*admitted pro hac vice*)
Hogan Lovells US LLP
555 13th Street NW
Washington, D.C. 20004
Telephone: (202) 637-6437
Facsimile: (202) 637-5910
jennifer.windom@hoganlovells.com
allison.holt-ryan@hoganlovells.com

*Attorneys for*
*Defendant CPS Solutions, LLC*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Ohio using the CM/ECF system.  All participants in the case who are registered CM/EC users will be served by the CM/ECF system.

/s/ Joel E. Sechler
Joel E. Sechler (0076320)