**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

RONDA WASHBURN, DANIELLE
WEBBER, and JODIE PIERCE, *on behalf of
themselves and all others similarly situated,*

      Plaintiffs,

v.

CPS Solutions, LLC,

      Defendant.

Case No.: 2:25-cv-00400-ALM-EPD

Judge Algenon L. Marbley

Magistrate Judge S. Courter Shimeall

**DEFENDANT CPS SOLUTIONS, LLC'S
REPLY BRIEF IN SUPPORT OF ITS MOTION TO
<u>DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT</u>**

**CARPENTER LIPPS LLP**

Joel E. Sechler (0076320)
Katheryn M. Lloyd (0075610)
Amber L. Merl (0080655)
280 North High Street, Suite 1300
Columbus, Ohio 43215
Tel: (614) 365-4100
Fax: (2614) 365-9145
sechler@carpenterlipps.com

**HOGAN LOVELLS US LLP**

Allison M. Ryan (admitted *pro hac vice*)
Jennifer Windom (admitted *pro hac vice*)
555 Thirteenth Street, NW
Washington, D.C. 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
allison.holt-ryan@hoganlovells.com
jennifer.windom@hoganlovells.com

*Counsel for Defendant CPS Solutions, LLC*

**TABLE OF CONTENTS**

Page

I.  PLAINTIFFS LACK ARTICLE III STANDING UNDER RULE 12(b)(1)......................2

   A.  Plaintiffs' Alleged Harms Are Not Fairly Traceable to CPS..................................2

Plaintiffs' theory of traceability fails because the harms they allege are not fairly traceable to the data allegedly accessed in the Phishing Incident.  To establish traceability, Plaintiffs must show that their harms are "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation modified).  Courts routinely dismiss data breach cases where, as here, plaintiffs do not allege that the data necessary to cause the alleged harms—such as email addresses, phone numbers, or bank and account login credentials—were accessed in the security incident.  *See* CPS's Mot. to Dismiss (ECF No. 30, "Mot.") at PageID 265-66.  Plaintiffs' reliance on Social Security numbers does not save their claims because they do not plausibly allege that their own Social Security numbers were accessed, while the notice letters confirm that "for the majority of potentially affected individuals, Social Security numbers were not impacted." Finally, Plaintiffs' request to defer the traceability inquiry ignores that Article III standing is a threshold requirement that cannot be postponed.  *See Daubenmire v. City of Columbus*, No. 2:04-CV-1105, 2008 WL 4758677, at *9 (S.D. Ohio Oct. 24, 2008).

   B.  Plaintiffs Have Not Alleged a Constitutionally Sufficient Injury............................4

Contrary to Plaintiffs' assertion that finding standing as to at least one plaintiff concludes the standing inquiry, Opposition to CPS's Motion to Dismiss (ECF No. 40, "Opp.") at PageID 358, each Plaintiff must establish "standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)).  Thus, even if one Plaintiff could establish Article III standing (which none can), each Plaintiff may proceed only if she has suffered a redressable injury-in-fact that is traceable to CPS.  *Ivanoff v. Walmart Inc.*, No. 1:20-cv-00896, 2025 WL 2207924, at *11 (S.D. Ohio Aug. 4, 2025).  All named Plaintiffs fail to meet that burden under every standing theory they put forward.

       1.  Plaintiffs' Allegations of Actual Misuse Do Not Establish Concrete
           Injury .................................................................................................................4

Plaintiffs' allegations of purported fraud or identity theft fail to confer standing, because Plaintiffs do not allege any resulting economic loss.  Amended Complaint (ECF No. 18, "Am. Compl.") ¶¶ 132, 141.  Although Plaintiffs contend they can bypass this requirement, Opp. at PageID 355, the only case within this circuit that Plaintiffs cite does not present, analyze, or support this proposition. *See In re Bon Secours Mercy Health Data Breach Litig.*, No. 1:24-cv-594, 2025 WL 1827804, at *5 (S.D. Ohio July 2, 2025).  Plaintiffs also cite no authority holding that a credit account inquiry alone or the appearance of information on the dark web alone constitutes a concrete injury sufficient for Article III standing. *See* Opp. at PageID 354-58.  And no Sixth Circuit authority has held that temporary inconvenience, absent unreimbursed loss, constitutes a concrete injury.  To the contrary, several courts have held that a temporary loss of access to money without

any unreimbursed loss is a voluntary mitigation cost insufficient to confer standing.  *See, e.g., Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1344 (11th Cir. 2021); *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1283 (M.D. Fla. 2016).

2. Risk of Future Identity Theft or Other Misuse Cannot Confer Standing. ....................................................................................................6

Plaintiffs also lack standing because any alleged risk of future identity theft or other misuse is speculative and not imminent.  Plaintiffs' citations to *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158 (2014), and *Galaria v. Nationwide Mutual Insurance Company*, 663 F. App'x 384, 388 (6th Cir. 2016) both pre-date the U.S. Supreme Court's seminal ruling in *TransUnion* that a "mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." 594 U.S. at 436.  Here, Plaintiffs have not plausibly alleged any actual misuse of their data, Mot. at PageID 268-70, and so the risk of harm to Plaintiffs simply has not "materialized." *TransUnion,* 594 U.S. at 437. Moreover, Plaintiffs do not plausibly allege that the speculative risk of future harm is *itself* an independent, concrete injury.  *See* Mot. at PageID 268-70.  Plaintiffs' standing theory therefore rests on just the sort of unmaterialized, speculative future risk that *TransUnion* forecloses.  Plaintiffs also do not address that *Galaria* is an unpublished decision and thus not controlling authority that can supersede the Supreme Court's subsequent ruling in *TransUnion*.  Mot. at PageID 270-72.

3. Plaintiffs Cannot Manufacture Article III Standing with Mitigation Steps. ....................................................................................................7

Without actual misuse or an imminent threat of future injury, Plaintiffs' voluntary mitigation efforts cannot create an injury in fact.  Mot. at PageID 272-73; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398,  402 (2013) (plaintiffs "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending").  Plaintiffs' out-of-circuit cases are distinguishable, because the risk of fraud in those cases had already materialized, rendering mitigation costs neither hypothetical nor voluntary.  *See, e.g., Webb v. Injured Workers Pharm., LLC*, 72 F.4th 365, 377 (1st Cir. 2023).

4. Plaintiffs' Other Theories of Harm Fail. .........................................................7

Plaintiffs' allegations of injury fail under their remaining theories to establish Article III standing.  Plaintiffs cite no authority and offer no argument to refute CPS's position, so their diminution-of-value theory is forfeited.  *See Corso v. Hamilton Cnty., Ohio*, No. 1:18-cv-00692, 2021 WL 2829170, at *6 (S.D. Ohio July 7, 2021).  Plaintiffs cannot cure the fundamental pleading deficiency underlying their benefit-of-the-bargain theory—namely, that there was no bargain with CPS—and with no interaction with CPS, let alone a "bargain" for data security, Plaintiffs' benefit-of-the-bargain theory cannot confer standing.  *See* Mot. at PageID 274-75.  Plaintiffs' emotional-distress allegations likewise fail, because a "bare allegation of anxiety is not a cognizable, concrete injury." *Garland v. Orlans, PC*, 999 F.3d 432, 439–40 (6th Cir. 2021); *see also* Mot. at PageID 275 (collecting cases).  Plaintiffs' cases confirm that Article III standing turns on whether any purported emotional distress is coupled with substantial, materialized risk of future harm, which is not alleged here. *See, e.g., In re Mednax Services, Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1203 (S.D. Fla. 2022).  Plaintiffs also fail to plead facts sufficient to support loss of privacy

as a concrete injury, given the lack of allegations of widespread disclosure or actual misuse.  Mot. at PageID 276.  *See, e.g., Marlin v. Associated Materials, LLC,* No. 5:23-CV-1621, 2024 WL 2319115, at *3 (N.D. Ohio May 22, 2024); *Taylor v. UKG, Inc*., 693 F. Supp. 3d 87, 100–01 (D. Mass. 2023); *C.C. v. Med-Data Inc*., No. 21-2301, 2022 WL 970862, at *10 (D. Kan. Mar. 31, 2022); *In re Practicefirst Data Breach Litig*., No. 1:21-CV-00790, 2022 WL 354544, at *8 (W.D.N.Y. Feb. 2, 2022); *Patterson v. Associated Wholesale Grocers, Inc*., No. 25-CV-02221, 2026 WL 395115, at *8 (D. Kan. Feb. 12, 2026).  Nor can Plaintiffs rely on intrusion upon seclusion, given their failure to plead any intent by CPS to intrude on Plaintiffs' private affairs where the Phishing Incident was carried out by a third party.  *See, e.g., Jenkins v. Associated Wholesale Grocers, Inc.*, No. 24-4039, 2025 WL 708574, at *13 (D. Kan. Mar. 5, 2025); *Patterson*, 2026 WL 395115, at *9; *Morrow v. W. Tex. Gas, Inc.*, No. MO:23-CV-00174, 2025 WL 2816760, at *8 (W.D. Tex. Jan. 9, 2025).

II.      PLAINTIFFS FAIL TO STATE A CLAIM UNDER RULE 12(b)(6). ...........................11

      A.      Choice of Law...................................................................................................11

Plaintiffs agree that no conflict of law exists and that Ohio law governs this case.  Even if the Court were to disagree, there is no basis to delay resolution of CPS's motion to dismiss.  Courts in this Circuit routinely decide choice-of-law issues at the motion-to-dismiss stage where, as here, the material facts are undisputed.  *See Sadiqyar v. Mission Essential, LLC*, No. 2:19-cv-04292, 2020 WL 5210850, at *4 (S.D. Ohio Sept. 1, 2020).

      B.      Plaintiffs Fail to State a Claim for Negligence (Count I). .....................................11

            1.      No Duty...................................................................................................11

Plaintiffs' opposition confirms that their negligence claim fails for lack of any cognizable duty under Ohio law.  *First,* Plaintiffs do not contend that they had any special relationship with CPS and cite no Ohio authority recognizing a general common-law duty arising from routine data storage. Instead they ask this Court—sitting in diversity—to create a novel common law duty based solely on foreseeability.  This request is improper: "[t]his court is bound to apply state law as it currently exists, and the adoption of innovative theories of recovery is inappropriate in the exercise of diversity jurisdiction." *Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd*., 625 F. Supp. 2d 508, 516 (E.D. Mich. 2008).  Moreover, Ohio courts have repeatedly held that foreseeability alone does not establish a duty, particularly where the alleged harm results from third-party criminal conduct.  *See Masterson v. Brody*, 2022-Ohio-3428, 196 N.E.3d 927, ¶¶ 17–18; *Ests. of Morgan v. Fairfield Fam. Counseling Ctr*., 673 N.E.2d 1311, 1319 (Ohio 1997); *Jackson v. Forest City Enters., Inc*., 675 N.E.2d 1356, 1358 (Ohio Ct. App. 1996). *Second,* Plaintiffs' attempt to reframe third-party cybercrime as CPS's own misconduct fares no better.  The cases Plaintiffs cite involve affirmative, illegal conduct by the defendants themselves, not an alleged failure to prevent the independent criminal acts of third parties.  *See, e.g., Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, at ¶¶ 1, 22; *In re Nat'l Prescription Opiate Litig*., No. 1:17-md-2804, 2018 WL 6628898, at *19 (N.D. Ohio Dec. 19, 2018).  *Third*, Plaintiffs' voluntary-undertaking theory also fails because Ohio law requires physical injury and affirmative assumption of a specific obligation, reasonable reliance, or an increased risk of harm—none of which is alleged here.  *See Iron Workers Loc. Union No. 17 Ins. Fund v. Philip Morris Inc*., 23 F.

Supp. 2d 771, 794 (N.D. Ohio 1998); *Connell v. Goodyear Tire & Rubber Co.*, 2010-Ohio-4344. *Finally*, Ohio's Data Protection Act does not create a common law duty of care, particularly since it expressly limits liability rather than expanding it. *See* Ohio Rev. Code § 1354.04; *Waseleski v. City of Brooklyn*, No. 1:23-cv-00548, 2025 WL 896097, at *9 (N.D. Ohio Mar. 24, 2025).

2.    No Breach. ...................................................................................................14

Even if Plaintiffs could establish the existence of a duty, their negligence claim independently fails because they do not plausibly allege a breach of any duty of care. Plaintiffs rely almost entirely on the conclusory assertion that CPS stored "unencrypted" data, but unencrypted data is not *per se* unreasonable, and Plaintiffs do not allege that encryption was required, applicable, or causally relevant to the Phishing Incident. Critically, they do not plausibly allege that encryption would have prevented access where a third party allegedly used valid email credentials. Nor are Plaintiffs entitled to relaxed pleading standards in data breach cases; even in the face of informational asymmetry, Rule 8 requires non-conclusory allegations plausibly suggesting unreasonable security practices, which Plaintiffs fail to provide. *See Hummel v. Teijin Auto. Techs., Inc.*, No. 23-cv-10341, 2023 WL 6149059, at *7* (E.D. Mich. Sept. 20, 2023).

3.    No Proximate Cause. ...................................................................................14

Plaintiffs also fail to plausibly plead proximate causation, an independent and fatal defect in their negligence claim. Plaintiffs incorrectly conflate Article III traceability with proximate cause, but Ohio law requires a direct, continuous causal link between the defendant's conduct and the alleged injury, and allegations sufficient for standing do not establish tort causation. *See Buchholz v. Tanick*, 946 F.3d 855, 866 (6th Cir. 2020); *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 715 (6th Cir. 2015). Plaintiffs do not plausibly connect the Phishing Incident to their alleged fraud losses: the data allegedly involved could not have enabled the alleged misuse claimed, and Plaintiffs do not allege that their Social Security numbers were compromised. Nor may Plaintiffs cure these deficiencies through briefing, as they seek to do here. *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426 (6th Cir. 2020). In addition, Plaintiffs' own complaint pleads obvious alternative causes—including unrelated breaches and independent account hacks—that further undermine causation, and Plaintiffs' own authorities make clear that temporal proximity alone is insufficient as a matter of law. *See Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 909 (N.D. Cal. 2024); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 987 (N.D. Cal. 2016).

4.    No Cognizable Damages..............................................................................16

Plaintiffs' negligence claim is independently barred by Ohio's Economic Loss Rule because they allege only economic losses and identify no independent tort duty. Ohio courts consistently hold that purely economic losses, unaccompanied by personal injury or property damage, are not recoverable in negligence. *See Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-cv-184, 2023 WL 423504, at *4 (S.D. Ohio Jan. 26, 2023); *Windsor Med. Ctr., Inc. v. Time Warner Cable*, Inc., 2021-Ohio-158, 167 N.E.3d 23, 29 ¶¶ 25–28. Plaintiffs' efforts to evade the rule by relabeling economic injuries—such as lost time and loss of privacy—as non-economic fail as a matter of law. Ohio courts treat lost time and voluntary remediation costs as indirect economic losses, *MyVitaNet.com v. Kowalski*, No. 2:08-cv-48, 2008 WL 2977889, at *9 (S.D. Ohio July 29, 2008), and privacy harms likewise fall within the Economic Loss Rule, *Tucker*, 2023 WL 423504,

at *4. Plaintiffs' recent abandonment of their contract claims cannot avoid application of the rule: the Economic Loss Rule applies where negligence claims seek recovery for conduct covered by a valid contract. *See Ineos USA LLC v. Furmanite Am., Inc.*, 2014-Ohio-4996 ¶ 19. Plaintiffs' own complaint confirms such contractual duties exist here, Am. Compl. ¶ 6, and their failure to identify any distinct, non-economic damages confirms dismissal is required, *see Newman v. Total Quality Logistics*, LLC, No. 1:20cv173, 2021 WL 1192669, at *7 (S.D. Ohio Mar. 20, 2021). Finally, Plaintiffs cannot rely on the independent common-law duty exception, given that no such common law duty exists.

Even apart from the Economic Loss Rule, Plaintiffs fail to plead legally cognizable damages. They again conflate Article III standing with the substantive elements of negligence, but a concrete injury sufficient for standing does not establish compensable damages. *See Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010). Plaintiffs do not meaningfully rebut CPS's arguments that unreimbursed losses, spam, mitigation costs, diminution in data value, or loss of the benefit of the bargain are unrecoverable in negligence under Ohio law, thereby waiving those theories. *See Corso*, 2021 WL 2829170, at *6. Their remaining theories fare no better: speculative risk of future identity theft and speculative mitigation costs are not cognizable damages, and future harms must be reasonably certain—not hypothetical. *See Kahle v. Litton Loan Servicing, LP*, 486 F. Supp. 2d 705 (S.D. Ohio 2007). Plaintiffs also fail to state a claim for emotional distress, which under Ohio law requires an allegation of quantifiable physical harm—an issue they do not address. *See Foster v. Health Recovery Servs., Inc.*, 493 F. Supp. 3d 622, 638 (S.D. Ohio 2020). Finally, alleged loss of privacy untethered to actual misuse remains speculative and non-cognizable, particularly given Ohio's recognition of limited, specific privacy torts rather than a generalized negligence remedy. *See Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051, ¶¶ 26–36. For all of these reasons, Plaintiffs have not pleaded recoverable damages, and their negligence claim fails as a matter of law.

C.      Plaintiffs' Unjust Enrichment Claim (Count V) Should Be Dismissed.................20

Plaintiffs' unjust enrichment claim fails as a matter of law, because there was no direct transactional relationship between any of the Plaintiffs and CPS. *See, e.g., Foster,* 493 F. Supp. 3d at 641; *Tucker,* 2023 WL 423504, at *7. Plaintiffs also fail to allege any unjust retention or overpayment, as they do not plausibly plead that CPS received or retained anything beyond the bargained-for value of its services, and the cases they cite are factually inapposite and largely resulted in dismissal. *See, e.g., In re Change Healthcare, Inc. Customer Data Sec. Breach Litig.,* No. MDL 24-3108, 2025 WL 3693201, at *16 (D. Minn. Dec. 19, 2025); *In re NCB Mgmt. Servs., Inc. Data Breach Litig.,* 748 F. Supp. 3d 262, 278 (E.D. Pa. 2024). Finally, the claim is impermissibly duplicative of Plaintiffs' other claims and cannot be salvaged by alternative pleading under Rule 8(d), warranting dismissal. *See Smith v. Adidas Am., Inc.,* 691 F. Supp. 3d 564, 585 (N.D.N.Y. 2023).

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Excursions LLC v. Yellen*,
66 F.4th 272 (D.C. Cir. 2023).................................................................................4

*Allen v. Wenco Mgmt., LLC*,
696 F. Supp. 3d 432 (N.D. Ohio 2023).................................................................6

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016)..................................................................16

*Attias v. Carefirst, Inc.*,
865 F.3d 620 (D.C. Cir. 2017).............................................................................3

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024)..................................................................16

*In re Bon Secours Mercy Health Data Breach Litig.*,
No. 1:24-cv-594, 2025 WL 1827804 (S.D. Ohio July 2, 2025) ...............................3, 5, 12, 18

*Bowen v. Paxton Media Grp., LLC*,
No. 5:21-CV-00143, 2022 WL 4110319 (W.D. Ky. Sept. 8, 2022).........................9

*Brickman v. Maximus, Inc.*,
No. 2:21-cv-3822, 2023 WL 2563661 (S.D. Ohio Mar. 17, 2023) .........................18

*Buchholz v. Tanick*,
946 F.3d 855 (6th Cir. 2020) ...............................................................................15

*Bugg v. Am. Std., Inc.*,
2005-Ohio-2613 ...................................................................................................13, 14

*C.C. v. Med-Data Inc.*,
No. 21-2301, 2022 WL 970862 (D. Kan. Mar. 31, 2022) .......................................10

*Cahill v. Mem'l Heart Inst., LLC*,
No. 1:23-cv-168, 2024 WL 4311648 (E.D. Tenn. Sept. 26, 2024)..........................9, 10

*Capiau v. Ascendum Mach., Inc.*,
No. 3:24-cv-00142, 2024 WL 3747191 (W.D.N.C. Aug. 9, 2024) ..........................6, 21

*In re Cap. One Consumer Data Sec. Breach Litig.*,
488 F. Supp. 3d 374 (E.D. Va. 2020) ..................................................................21

*In re CBIZ*,
No. 1:24 CV 1722, 2025 WL 1557033 (N.D. Ohio June 2, 2025)...................................8, 9, 19

*In re Change Healthcare*,
No. MDL 24-3108, 2025 WL 3693201, at \*16 (D. Minn. Dec. 19, 2025).......................20, 21

*Cincinnati v. Beretta U.S.A. Corp.*,
95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136 ...........................................................13

*Connell v. Goodyear Tire & Rubber Co.*,
2010-Ohio-4344........................................................................................................................13

*Corso v. Hamilton Cnty., Ohio*,
No. 1:18-cv-00692, 2021 WL 2829170 (S.D. Ohio July 7, 2021) ......................................8, 19

*Coubaly v. Cargill Inc.*,
144 F.4th 343 (D.C. Cir. 2025)...................................................................................................4

*Daubenmire v. City of Columbus*,
No. 2:04-CV-01105, 2008 WL 4758677 (S.D. Ohio Oct. 24, 2008) ..........................................3

*Davis v. FEC*,
554 U.S. 724 (2008)....................................................................................................................4

*Doe v. Chao*,
540 U.S. 614 (2004)..................................................................................................................19

*Ests. of Morgan v. Fairfield Fam. Counseling Ctr.*,
673 N.E.2d 1311 (Ohio 1997)...................................................................................................12

*Fernandez v. Leidos, Inc.*,
127 F. Supp. 3d 1078 (E.D. Cal. 2015)........................................................................................2

*Finesse Express, LLC v. Total Quality Logistics, LLC*,
No. 1:20cv235, 2021 WL 1192521 (S.D. Ohio Mar. 30, 2021) ...............................................18

*Foster v. Health Recovery Servs., Inc.*,
493 F. Supp. 3d 622 (S.D. Ohio 2020) .........................................................................9, 17, 20

*Freedom Holding, Inc. v. Haart*,
172 N.Y.S.3d 873 (N.Y. Sup. Ct. 2022) ...................................................................................22

*Galaria v. Nationwide Mut. Ins. Co.*,
663 F. App'x 384 (6th Cir. 2016) ......................................................................................4, 6, 7

*Garland v. Orlans, PC*,
999 F.3d 432 (6th Cir. 2021) ......................................................................................................9

*Gordon v. Zeroed-In Tech., LLC,*
   No. 23-3284, 2025 WL 936415 (D. Md. Mar. 26, 2025) ........................................................21

*Greenstein v. Noblr Reciprocal Exch.,*
   No. 22-17023, 2024 WL 3886977 (9th Cir. Aug. 21, 2024) ......................................................3

*Grifo & Co., PLLC v. Cloud X Partners Holdings, LLC,*
   485 F. Supp. 3d 885 (E.D. Mich. 2020)...........................................................................11, 12

*Hummel v. Teijin Auto. Techs., Inc.,*
   No. 23-cv-10341, 2023 WL 6149059 (E.D. Mich. Sept. 20, 2023) ........................................14

*Ineos USA LLC v. Furmanite Am., Inc.,*
   2014-Ohio-4996 .............................................................................................................17, 18

*Iron Workers Loc. Union No. 17 Ins. Fund v. Philip Morris Inc.,*
   23 F. Supp. 2d 771 (N.D. Ohio 1998)......................................................................................13

*Ivanoff v. Walmart Inc.,*
   No. 1:20-cv-00896, 2025 WL 2207924 (S.D. Ohio Aug. 4, 2025) ............................................4

*Jackson v. Forest City Enters., Inc.,*
   675 N.E.2d 1356 (Ohio Ct. App. 1996)...................................................................................12

*Jenkins v. Associated Wholesale Grocers, Inc.,*
   No. 24-4039, 2025 WL 708574 (D. Kan. Mar. 5, 2025) .......................................................2, 10

*Jessica v. Ohio Dep't of Job & Fam. Servs.,*
   2025-Ohio-2604, 271 N.E.3d 351............................................................................................19

*Kahle v. Litton Loan Servicing, LP,*
   486 F. Supp. 2d 705 (S.D. Ohio 2007) ....................................................................................19

*Krottner v. Starbucks Corp.,*
   406 F. App'x 129 (9th Cir. 2010) .......................................................................................18, 19

*Lewert v. P.F. Chang's China Bistro, Inc.*
   819 F.3d 963 (7th Cir. 2016) ....................................................................................................7

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992).................................................................................................................2

*Marlin v. Associated Materials, LLC,*
   No. 5:23CV1621, 2024 WL 2319115 (N.D. Ohio May 22, 2024)....................................10, 18

*Masterson v. Brody,*
   2022-Ohio-3428, 196 N.E.3d 927............................................................................................12

*In re Mednax Services, Inc., Customer Data Sec. Breach Litig.,*
603 F. Supp. 3d 1183 (S.D. Fla. 2022). ............................................................9

*Mike Albert, Ltd. v. 540 Auto Repair, Inc.*,
No. 1:21-cv-286, 2022 WL 488969 (S.D. Ohio Feb. 17, 2022) ............................22

*Mohsen v. Veridian Credit Union*,
733 F. Supp. 3d 754 (N.D. Iowa 2024).............................................................17

*Morrow v. W. Tex. Gas, Inc.*,
No. MO:23-CV-00174, 2025 WL 2816760 (W.D. Tex. Jan. 9, 2025)..............10, 11

*MyVitaNet.com v. Kowalski*,
No. 2:08-cv-48, 2008 WL 2977889 (S.D. Ohio July 29, 2008) ............................17

*In re Nat'l Prescription Opiate Litig.*,
No. 1:17-md-2804, 2018 WL 6628898 (N.D. Ohio Dec. 19, 2018)........................13

*In re NCB Mgmt. Servs., Inc. Data Breach Litig.*,
748 F. Supp. 3d 262 (E.D. Pa. 2024) ...............................................................20

*Newman v. Total Quality Logistics, LLC*,
No. 1:20cv173, 2021 WL 1192669 (S.D. Ohio Mar. 20, 2021) ............................18

*Parsons v. United States Dep't of Justice*,
801 F.3d 701 (6th Cir. 2015) ..........................................................................15

*Patterson v. Associated Wholesale Grocers, Inc.*,
No. 25-CV-02221, 2026 WL 395115 (D. Kan. Feb. 12, 2026) ............................10

*Pavlovich v. Nat'l City Bank*,
435 F.3d 560 (6th Cir. 2006) ..........................................................................17

*In re Practicefirst Data Breach Litig.*,
No. 1:21-CV-00790, 2022 WL 354544 (W.D.N.Y. Feb. 2, 2022)........................10

*Prestby v. A&A Servs., LLC*,
No. 8:24-CV-204, 2026 WL 26128 (D. Neb. Jan. 5, 2026).................................3

*Sadiqyar v. Mission Essential, LLC*,
No. 2:19-cv-04292, 2020 WL 5210850 (S.D. Ohio Sept. 1, 2020) ........................11

*Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.*,
625 F. Supp. 2d 508 (E.D. Mich. 2008)..............................................................11

*Salier v. Walmart, Inc.*,
76 F.4th 796 (8th Cir. 2023) ...........................................................................11

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
   45 F. Supp. 3d 14 (D.D.C. 2014) ........................................................................2

*Smallman v. MGM Resorts Int'l*,
   638 F. Supp. 3d 1175 (D. Nev. 2022) ...............................................................8

*Smith v. Adidas Am., Inc.*,
   691 F. Supp. 3d 564 (N.D.N.Y. 2023) .............................................................21

*Smith v. Am. Pain & Wellness, PLLC*,
   747 F. Supp. 3d 989 (E.D. Tex. 2024) .............................................................21

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ...........................................................................................4

*In re SuperValu, Inc., Customer Data Sec. Breach Litig.*,
   No. 14-MD-2586, 2018 WL 1189327 (D. Minn. Mar. 7, 2018) .......................5

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ...........................................................................................6

*Tate v. EyeMed Vision Care, LLC*,
   No. 1:21-cv-36, 2023 WL 6383467 (S.D. Ohio Sept. 29, 2023) ...........3, 8, 9, 21

*Taylor v. UKG, Inc.*,
   693 F. Supp. 3d 87 (D. Mass. 2023) ...............................................................10

*Toretto v. Donnelley Fin. Sols., Inc.*,
   583 F. Supp. 3d 570 (S.D.N.Y. 2022) .............................................................12

*Torres v. Wendy's Co.*,
   195 F. Supp. 3d 1278 (M.D. Fla. 2016) ............................................................5

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ................................................................................ *passim*

*Tsao v. Captiva MVP Rest. Partners, LLC*,
   986 F.3d 1332 (11th Cir. 2021) .........................................................................5

*Tucker v. Marietta Area Health Care, Inc.*,
   No. 2:22-cv-184, 2023 WL 423504 (S.D. Ohio Jan. 26, 2023) ..............16, 17, 20

*In re Unite Here Data Sec. Incident Litig.*,
   740 F. Supp. 3d 364 (S.D.N.Y. 2024) .............................................................21

*Waseleski v. City of Brooklyn*,
   No. 1:23-cv-00548, 2025 WL 896097 (N.D. Ohio Mar. 24, 2025) .................14

x

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*,
   979 F.3d 426 (6th Cir. 2020) ........................................................................15, 16

*Welling v. Weinfeld*,
   113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051 .......................................19

*Windsor Med. Ctr., Inc. v. Time Warner Cable, Inc.*,
   2021-Ohio-158, 167 N.E.3d 23.............................................................................17

**Statutes**

Ohio Rev. Code § 1354.04..................................................................................14

**Other Authorities**

Fed. R. Civ. P. 8....................................................................................14, 21

Fed. R. Civ. P. 12(b)(1).......................................................................2, 22

Fed. R. Civ. P. 12(b)(6).................................................................1, 11, 22

xi

Fundamental defects in Plaintiffs' First Amended Complaint (ECF No. 18, "Am. Compl.") necessitate dismissal of this action.  Plaintiffs' Opposition to CPS's Motion to Dismiss (ECF No. 40, "Opp.") confirms that Plaintiffs lack Article III standing.  Plaintiffs do not plausibly allege that any claimed injury is fairly traceable to CPS, as they fail to connect any alleged fraud or misuse to the narrow data supposedly impacted in the Phishing Incident.  Nor do Plaintiffs allege any concrete, non-speculative injuries.  Their case is predicated on hypothetical, unrealized injuries unrelated to the Phishing Incident: alleged fraud that did not result in financial loss, speculative risk of future misuse, voluntary mitigation efforts to address that speculative risk, an unquantified "loss of value" of their personal information, the alleged loss of a (nonexistent) "benefit of the bargain" with CPS, and amorphous claims of emotional distress and loss of privacy.  Plaintiffs therefore lack standing to pursue their claims.

But even if Plaintiffs could clear this constitutional hurdle—which they cannot—their remaining claims would fail under Rule 12(b)(6).[1]  Plaintiffs identify no recognized legal duty owed to them by CPS to support a negligence claim, and instead urge this Court to create a sweeping new common-law obligation for unrelated parties to protect against third-party criminal conduct. Their negligence claim also fails due to conclusory allegations of breach, the absence of proximate cause, and the failure to plead cognizable damages.  It is also barred by the economic loss rule.  Plaintiffs' unjust enrichment claim fares no better, as Plaintiffs admittedly had no relationship or interaction with CPS, allege no unjust benefit conferred or retained, and improperly advance a theory duplicative of their other claims.  For these and the other reasons explained below and in CPS's Motion to Dismiss, Plaintiffs' Complaint should be dismissed in its entirety.

---

[1] In their Opposition, Plaintiffs "request that their claims for Negligence Per Se (Count II), Breach of Fiduciary Duty (Count III), and Breach of Third-Party Beneficiary Contract (Count IV) be dismissed."  Opp. at PageID 352 n.2.

I.      **PLAINTIFFS LACK ARTICLE III STANDING UNDER RULE 12(b)(1).**

A.      **Plaintiffs' Alleged Harms Are Not Fairly Traceable to CPS.**

Plaintiffs' theory of traceability fails for a simple reason: the harms they allege could not result from release of the data allegedly accessed in the Phishing Incident.  To establish traceability, Plaintiffs must show that their harms are "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation modified).  Opp. at PageID 356.  Courts routinely dismiss data breach cases where the data necessary to cause the alleged harms—here, email addresses, phone numbers, or bank and account login credentials—were not accessed in the security incident.  *See* CPS's Mot. to Dismiss (ECF No. 30, "Mot.") at PageID 265-66.

Plaintiffs do not meaningfully dispute this point, arguing that Social Security numbers can facilitate misuse.  Opp. at PageID 356.  But Social Security numbers alone do not provide access to phone numbers, email, or financial accounts.  *See Jenkins v. Associated Wholesale Grocers, Inc.*, No. 24-4039, 2025 WL 708574, at *7–8 (D. Kan. Mar. 5, 2025) (dismissing claims of fraudulent purchases for failure to allege how "unauthorized actors could use the disclosed PII (his name, Social Security number, and date of birth) to make . . . purchases or steal [plaintiff's] money").[2]

Even if Social Security numbers could cause the alleged misuse, this theory does not salvage standing because Plaintiffs do not allege their Social Security numbers were accessed.  Instead, Plaintiffs carefully plead that the "Private Information" of CPS's clients' patients—a group that

---

[2] *See, e.g.*, *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 31 (D.D.C. 2014) (dismissing claims based on risk of harm because plaintiffs did not allege the chain of events necessary for criminals to misuse a particular plaintiff's Social Security number); *Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078, 1086 (E.D. Cal. 2015) (even where Social Security numbers were impacted, plaintiff's allegations of fraud based on an attempt to open a bank account and log into email accounts were dismissed on traceability, because plaintiff did not allege that bank account information or email addresses were stolen in the data breach).

2

includes Plaintiffs and putative class members—was taken. Am. Compl. ¶ 4. Private Information is alleged to "comprise[] some *combination* of [their] full name, date of birth, address, health insurance information (such as member/group ID number or Medicaid/Medicare number), medical information . . . and Social Security number." *Id.* ¶¶ 121, 130, 140 (emphasis added). But no Plaintiff alleges that her own Social Security number was accessed. To the contrary, the notice letters state that "[f]or the majority of potentially affected individuals, Social Security numbers were *not* impacted." *Id.* ¶ 39 (emphasis added). Courts routinely find that general information in notice letters cannot substitute for specific allegations "that Plaintiffs' [data] w[as] stolen." *Greenstein v. Noblr Reciprocal Exch.*, 2024 WL 3886977, at *1-2 (9th Cir. Aug. 21, 2024). *See also Prestby v. A&A Servs., LLC*, No. 8:24-CV-204, 2026 WL 26128, at *14 (D. Neb. Jan. 5, 2026) (no standing where plaintiffs relied on a notice letter stating that data, including social security numbers, "may have been accessed").[3]

Rather than confront their pleadings, Plaintiffs request to "defer the entire traceability analysis until a later stage." Opp. at PageID 358. But Article III standing is a constitutional requirement, not a pleading technicality to postpone. *See Daubenmire v. City of Columbus*, No. 2:04-CV-01105, 2008 WL 4758677, at *9 (S.D. Ohio Oct. 24, 2008) (Article III elements are "not mere pleading requirements but rather an indispensable part of the plaintiff's case") (J. Marbley). Federal courts may adjudicate only "a real controversy with real impact on real persons." *TransUnion,* 594 U.S. at 424. Plaintiffs' reliance on *Attias v. Carefirst, Inc.*—an out-of-circuit outlier that "assum[ed]" success on the merits—does not alter the analysis. 865 F.3d 620, 629 (D.C. Cir. 2017).[4]

---

[3] The Court should reject Plaintiffs' efforts to distinguish this case from *Tate v. EyeMed Vision Care, LLC*, No. 1:21-cv-36, 2023 WL 6383467 (S.D. Ohio Sept. 29, 2023), which did not involve alleged Social Security number exposure, and to rely on *In re Bon Secours Mercy Health Data Breach Litig.*, No. 1:24-cv-594, 2025 WL 1827804, at *5 (S.D. Ohio July 2, 2025), which expressly alleged compromised Social Security numbers.

[4] Subsequent D.C. Circuit authority makes clear that Plaintiffs must plausibly "allege facts

Plaintiffs' reliance on *Galaria* is also misplaced. Opp. at PageID 356. Plaintiffs' pleading here points to obvious alternative causes of their alleged injuries, including other breaches and account compromises, Mot. at PageID 267, which were not alleged in *Galaria*.[5]

Plaintiffs have failed to plausibly tie any allegation of injury to CPS.

**B.      Plaintiffs Have Not Alleged a Constitutionally Sufficient Injury.**

Even apart from their traceability failures, Plaintiffs have not alleged an injury sufficient to confer Article III standing. To start, Plaintiffs overstate the significance of whether any plaintiff plausibly alleged an injury. Opp. at PageID 358. While *In re CBIZ Data Breach Litigation* recognized that standing as to one plaintiff will prevent the case from being dismissed, standing is not "dispensed in gross." *TransUnion,* 594 U.S. at 431 (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)). Each Plaintiff must establish standing for each claim they "press and for each form of relief that they seek." *Id*. Each Plaintiff may proceed only if she has suffered a redressable injury-in-fact that is traceable to CPS. *Ivanoff v. Walmart Inc*., No. 1:20-cv-00896, 2025 WL 2207924, at *11 (S.D. Ohio Aug. 4, 2025). All three named Plaintiffs fail to meet that burden.

1.      <u>Plaintiffs' Allegations of Actual Misuse Do Not Establish Concrete Injury</u>.

Even if Plaintiffs could establish traceability—which they cannot—none of Plaintiffs' allegations of purported "actual misuse" involve economic loss, because Plaintiffs do not allege that any funds were withdrawn, unreimbursed, or lost. Am. Compl. ¶¶ 132, 141. While Plaintiffs contend they can bypass this requirement, Opp. at PageID 355, their only in-circuit authority does

---

demonstrating" that their alleged injuries are fairly traceable to CPS. *See, e.g.*, *Coubaly v. Cargill Inc.,* 144 F.4th 343, 348 (D.C. Cir. 2025) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)); *Air Excursions LLC v. Yellen*, 66 F.4th 272, 278 (D.C. Cir. 2023) (refusing to assume truth of conclusory allegations "in evaluating whether the complaint satisfies the traceability element").

[5] Plaintiffs suggest that they can foreclose any argument that their injuries are too indirect to trace to CPS by pointing to allegations that they are careful about protecting their data. Opp. at PageID 357. This is a non-sequitur. It is also undermined by their own allegations indicating they have been subject to other data breaches. Am. Compl. ¶ 141.

4

not support that claim. In *In re Bon Secours Mercy Health,* 2025 WL 1827804, at *5, the question of economic loss was never presented nor analyzed.

Plaintiffs' out-of-circuit authorities are similarly inapposite. *Attias* addressed risk of future injury, not actual misuse. 865 F.3d at 627. Meanwhile, *Webb v. Injured Workers Pharm., LLC*, involved a fraudulently filed tax return, which is absent here. 72 F.4th 365, 374 (1st Cir. 2023). Plaintiffs also cite no authority holding that a credit account inquiry or the appearance of information on the dark web alone constitutes a concrete injury. *See* Opp. at PageID 354-58. Although Plaintiffs allege "[u]pon information and belief" that their data is available on the dark web, Am. Compl. ¶ 7, they allege no facts to plausibly support this claim. Plaintiff Webber alleges receiving alerts that her email addresses and related passwords were found on the dark web, *id.* ¶ 132, but that data was not impacted in the Phishing Incident. Likewise, Plaintiff Pierce alleges receiving alerts that her "Private Information" was found on the dark web, *id.* at ¶ 141, but again, Plaintiffs define "Private Information" to encompass data not at issue here.

To the extent Plaintiffs attempt to rely on temporarily lost access to money or credit to establish injury, this theory fares no better. *Id.* at PageID 355-56. No Sixth Circuit authority holds that temporary inconvenience constitutes a concrete injury. To the contrary, several courts have concluded it does not. *In re SuperValu, Inc., Customer Data Sec. Breach Litig.,* No. 14-MD-2586, 2018 WL 1189327, at *13 (D. Minn. Mar. 7, 2018) ("[T]ime spent disputing an unauthorized charge and having a new card issued does not constitute actual injury or monetary loss."); *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1344 (11th Cir. 2021) (temporary loss of access to money without any unreimbursed loss is voluntary mitigation insufficient to confer standing); *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1283 (M.D. Fla. 2016) (temporary "loss of use of and access to [plaintiff's] account funds" did not confer standing because they were self-inflicted).

5

2.      Risk of Future Identity Theft or Other Misuse Cannot Confer Standing.

Plaintiffs also lack standing because any alleged risk of future identity theft is speculative and not imminent.  Plaintiffs' citations to *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158 (2014), and *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) both pre-date the U.S. Supreme Court's seminal ruling in *TransUnion* that a "mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm."  594 U.S.  at 436.

Here, Plaintiffs have not plausibly alleged any actual misuse. *Supra*; Mot. at PageID 268-70.  Absent such allegations, the risk of harm to Plaintiffs simply has not "materialized." *TransUnion,* 594 U.S. at 437.  Plaintiffs likewise fail to plausibly allege that the speculative risk of future harm is *itself* an independent, concrete injury.  *See also* Mot. at PageID 270-72.  Their theory thus rests on exactly the unmaterialized, speculative future risk that *TransUnion* forecloses.

Plaintiffs also do not address that *Galaria* pre-dates *TransUnion* and is unpublished. *Compare* Opp. at PageID 359-60 *with* Mot. at PageID 270-72. Indeed, the court in *Marlin v. Associated Materials, LLC* recently declined to follow *Galaria*, and demonstrates that *Galaria* is far from settled precedent.  Plaintiffs' reliance on *Allen v. Wenco Mgmt., LLC* is misplaced because that case involved the compromise of "substantial amounts" of data, including Social Security numbers.  696 F. Supp. 3d 432, 434, 437–38 (N.D. Ohio 2023).  Here, Plaintiffs acknowledge that Social Security numbers were not impacted for most individuals and do not allege their own were impacted.  Am. Compl. ¶ 39.  Any asserted risk of future harm is therefore far more attenuated.[6]

---

[6] Plaintiffs also fail to adequately allege that even "some portion of the compromised dataset has already been misused, . . . or the data exposed is sensitive such that it presents a heightened risk of identity theft or fraud." *Capiau v. Ascendum Mach., Inc.*, No. 3:24-cv-00142, 2024 WL 3747191, at *8 (W.D.N.C. Aug. 9, 2024).

Plaintiffs also overread *Savidge v. Pharm-Save, Inc.*, asserting that whether a breach was intentional is the "most important" indicator of a substantial risk of harm. 727 F. Supp. 3d 661, 684 (W.D. Ky. 2024). But as *Savidge* itself makes clear, this is true only for "some courts," and Article III's "imminence requirement demands a fact-specific inquiry." *Id.* On the facts alleged here, Plaintiffs have not alleged a substantial risk of future harm that is imminent to support standing.

        3.        <u>Plaintiffs Cannot Manufacture Article III Standing with Mitigation Steps</u>.

Without actual misuse or imminent future injury, Plaintiffs' voluntary efforts cannot create standing. Mot. at PageID 272-73. Plaintiffs assert that, under *Galaria*, "it would be "unreasonable to expect Plaintiffs to wait" for actual misuse before taking such measures. Opp. at PageID 362. But *Galaria* rested on a pre-*TransUnion* view that an unmaterialized risk of harm could itself establish Article III injury. *See* Mot. at PageID 170-72. Plaintiffs do not respond to this point.

Plaintiffs' out-of-circuit cases are distinguishable because the risk of fraud in those cases had already materialized, rendering mitigation costs neither hypothetical nor voluntary. For example, *Webb* involved actual misuse of PII, such that mitigation activities were "a response to a substantial and imminent risk of harm"—circumstances not present here. 72 F.4th at 377. And *Lewert v. P.F. Chang's China Bistro, Inc.* predated *TransUnion*. 819 F.3d 963, 967 (7th Cir. 2016). Moreover, *TransUnion* did not undermine the Supreme Court's *Clapper* decision, which held that plaintiffs "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." 568 U.S. at 402; *see id.* at 414 n.5 (mitigation activities constitute injury-in-fact only when there is a "'substantial risk' that the harm will occur"). Plaintiffs' prophylactic measures here cannot sustain their claims.

        4.        <u>Plaintiffs' Other Theories of Harm Fail</u>.

***Diminution of Value***. As CPS explained in its opening brief, Plaintiffs' bare assertion that the value of their PII has somehow diminished does not establish a concrete injury. Mot. at PageID

273-74.  Plaintiffs do not allege that they ever attempted or intended to monetize their PII, nor do they plead facts explaining how the purported value of their data diminished.  Courts routinely reject this theory on exactly these grounds.  Mot. at PageID 273-74.  Plaintiffs' Opposition does not engage with this caselaw at all.  Instead, Plaintiffs collapse their diminution-of-value theory into their equally deficient benefit-of-the-bargain theory, without addressing the requirement to plead facts showing that the data was intended for monetization.  Opp. at PageID 362-63.  Because Plaintiffs offer no argument to refute CPS's position, this theory is forfeited.  *See Corso v. Hamilton Cnty., Ohio*, No. 1:18-cv-00692, 2021 WL 2829170, at *6 (S.D. Ohio July 7, 2021).

***Benefit of the Bargain.***  Plaintiffs cannot cure the pleading deficiency underlying their benefit-of-the-bargain theory: namely, their failure to allege any bargain with CPS at all.  Mot. at PageID 274-75.  Plaintiffs attempt to sidestep this defect by asserting that they "would not have entrusted their PI to Defendant absent a promise to safeguard that information."  Opp. at PageID at 362.  But Plaintiffs do not allege that they "entrusted" their information to CPS, let alone as part of any "bargain."  *See, e.g.*, Am. Compl. ¶ 117.  The only alleged CPS agreements were those with healthcare provider clients, not Plaintiffs.  *Id*. ¶ 203.  Plaintiffs had no interaction with CPS at all.

Neither of Plaintiffs' cited cases address this issue.  *In re CBIZ* addressed how "loss of benefit of the bargain" may arise under a theory of unjust enrichment, but not under circumstances applicable here.  No. 1:24 CV 1722, 2025 WL 1557033, at *5, *6 n.4 (N.D. Ohio June 2, 2025).  *Smallman v. MGM Resorts Int'l* is likewise inapposite, as it involved plaintiffs who alleged a direct bargain with the defendant.  638 F. Supp. 3d 1175, 1190 (D. Nev. 2022).  Even under that out-of-district authority, Plaintiffs fall short: they do not allege any bargain between themselves and CPS.  In any event, courts in this district require more than the conclusory assertions offered here.  *See Tate,* 2023 WL 6383467, at *5 (rejecting benefit of the bargain theory as "a stretch" and

8

"unavailing" where plaintiffs failed "to allege facts showing that data security was a condition of any bargain made").  With no interaction, let alone a "bargain" for data security, this theory fails.

***Emotional Distress***.  Plaintiffs' emotional-distress allegations likewise fail. The Sixth Circuit has squarely held that a "bare allegation of anxiety is not a cognizable, concrete injury" because it reflects only a fear of speculative future harm.  *Garland v. Orlans, PC*, 999 F.3d 432, 439–40 (6th Cir. 2021); *see also* Mot. at PageID 275 (collecting cases).  *TransUnion* reinforces this principle by requiring that alleged harms—emotional or otherwise—be tied to actual injury or a certain impending, non-speculative risk.  594 U.S. 413, 437 (2021).

Plaintiffs' cases confirm this rule.  As *In re: Mednax Services, Inc., Customer Data Sec. Breach Litig.* explains, emotional distress allegations alone are insufficient; Article III standing turns on whether such distress is coupled with substantial, materialized risk of future harm.  603 F. Supp. 3d 1183, 1203 (S.D. Fla. 2022).  Courts permit emotional distress to confer standing only where it stems from a sufficiently imminent or realized harm, like actual misuse.  *See e.g., Bowen v. Paxton Media Grp., LLC*, No. 5:21-CV-00143, 2022 WL 4110319, at *5 (W.D. Ky. Sept. 8, 2022) (emotional distress constituted a real injury where "Plaintiffs have pointed to several instances of the stolen data leading to actual misuse").  Here, Plaintiffs' allegations of "anxiety," "stress," and "fear[] . . . over what medical information was revealed," Am. Compl. ¶¶ 123, 134, 143, cannot satisfy that standard, because Plaintiffs fail to plausibly allege actual misuse tied to this incident. To the extent this Court held otherwise in *Foster v. Health Recovery Servs., Inc.*, that case predated *TransUnion's* authority.  Unlike in *Foster* and *In re CBIZ* where plaintiffs alleged severe emotional distress from risk of future harm, Plaintiffs' allegations here are too conclusory and speculative. 493 F. Supp. 3d 622, 632 (S.D. Ohio 2020); 2025 WL 1557033, at *5.  And Plaintiffs' final cited case, *Cahill v. Mem'l Heart Inst., LLC*, does not address alleged emotional distress in the context

9

of standing at all.  No. 1:23-cv-168, 2024 WL 4311648, at *3 (E.D. Tenn. Sept. 26, 2024).

*Loss of Privacy*.  Plaintiffs also fail to plead loss of privacy as a concrete injury.  Although *TransUnion* recognized that certain intangible privacy harms might support standing, 594 U.S. at 425, plaintiffs must still allege that their claimed injuries fit within those common law privacy injury theories.  Plaintiffs cannot do so here.

Numerous courts have rejected privacy standing in data breach cases absent allegations of widespread disclosure or actual misuse.  Mot. at PageID 276.  Specifically, courts have held that the theory of public disclosure of private facts cannot support Article III standing, absent evidence of widespread disclosure, *see, e.g., Marlin,* 2024 WL 2319115, at *3 (no widespread disclosure to the "public as large"); *see also Taylor v. UKG, Inc.*, 693 F. Supp. 3d 87, 100–01 (D. Mass. 2023) (same), or an independent concrete harm from the disclosure, *see C.C. v. Med-Data Inc.*, No. 21-2301, 2022 WL 970862, at *10 (D. Kan. Mar. 31, 2022) ("loss of privacy, in and of itself, is not a concrete harm that can provide the basis for Article III standing"); *In re Practicefirst Data Breach Litig.*, No. 1:21-CV-00790, 2022 WL 354544, at *8 (W.D.N.Y. Feb. 2, 2022) (same); *Patterson v. Associated Wholesale Grocers, Inc.*, No. 25-CV-02221, 2026 WL 395115, at *8 (D. Kan. Feb. 12, 2026) (same).[7]

Nor can Plaintiffs rely on intrusion upon seclusion, given that such a theory requires evidence of intent by the defendant to intrude on plaintiffs' private affairs.  This is absent where, like here, third-party criminal activity is alleged.  *See, e.g., Jenkins,* 2025 WL 708574, at *13 (no standing based on intrusion upon seclusion where plaintiff did not allege that "defendant *intentionally* permitted a third party to intrude his seclusion"); *Patterson*, 2026 WL 395115, at *9 (same); *Morrow v. W. Tex.*

---

[7] *Savidge* is further distinguishable because the court allowed the public disclosure of private facts theory to proceed in light of the "undisputed evidence" that the plaintiffs' Social Security numbers were disclosed to an unauthorized third-party.  727 F. Supp. 3d at 691–92.  Here, Plaintiffs have not alleged that their Social Security numbers were taken by the threat actor during the Phishing Incident, let alone that they were broadly exposed.

10

*Gas, Inc.*, No. MO:23-CV-00174, 2025 WL 2816760, at *8 (W.D. Tex. Jan. 9, 2025) (same).

## II. PLAINTIFFS FAIL TO STATE A CLAIM UNDER RULE 12(b)(6).

### A. Choice of Law.

Plaintiffs state that no conflict of law exists such that Ohio law governs the claims at issue. Opp. at PageID 363.[8]  Even if the Court was to disagree, there is no need to defer resolution of CPS's motion to dismiss until after discovery.  *Id*.  Courts in the Sixth Circuit routinely conduct choice-of-law analyses at the motion-to-dismiss stage.  *See, e.g., Sadiqyar v. Mission Essential, LLC*, No. 2:19-cv-04292, 2020 WL 5210850, at *4 (S.D. Ohio Sept. 1, 2020).

### B. Plaintiffs Fail to State a Claim for Negligence (Count I).

Plaintiffs fail to address the pleading deficiencies that CPS identified in its opening brief, and their negligence claim should be dismissed.

#### 1. No Duty.

Plaintiffs' opposition is notable for what it omits.  Plaintiffs do not argue that they had a special relationship with CPS nor do they identify any general common-law duty arising from the mere storage of personal data.  Instead, Plaintiffs ask this Court to create a novel new negligence duty under Ohio law.  This Court should decline the invitation.

"This court is bound to apply state law as it currently exists, and the adoption of innovative theories of recovery is inappropriate in the exercise of diversity jurisdiction."  *Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd*., 625 F. Supp. 2d 508, 516 (E.D. Mich. 2008); *Salier v. Walmart, Inc.,* 76 F.4th 796, 802 (8th Cir. 2023) ("It is not the role of a federal court to expand state law in ways not foreshadowed by state precedent."); *Grifo & Co., PLLC v. Cloud X Partners Holdings,*

---

[8] CPS reserves the right to challenge the applicable choice of law at a later stage of these proceedings if the Court concludes that a conflict of law exists or that further analysis is warranted.

*LLC*, 485 F. Supp. 3d 885, 898 (E.D. Mich. 2020) (recognizing that "establishment of a new duty is a public policy determination" requiring policy judgments about social costs and benefits).

Restraint is particularly warranted here, given that Plaintiffs' theory would erase Ohio's (and New York's) longstanding rule that there is no general duty to protect others from third-party criminal conduct.  Mot. at PageID 279.  Plaintiffs nonetheless argue that the Court should impose a common-law duty here based on the foreseeability of the harm.  Opp. at PageID 364-65.  But "[i]mportantly, foreseeability alone does not create a duty." *Masterson v. Brody*, 2022-Ohio-3428, 196 N.E.3d 927, ¶¶ 17–18; *see also Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 593 (S.D.N.Y. 2022) (While foreseeability is part of the duty analysis, "[f]oreseeability, alone, does not define duty—it merely determines the scope of the duty once it is determined to exist.").  Ohio courts have repeatedly held that there is "no duty to act affirmatively for the protection of others" even where "harm to another is foreseeable." *Jackson v. Forest City Enters., Inc.*, 675 N.E.2d 1356, 1358 (Ohio Ct. App. 1996); *see also In re Bon Secours Mercy Health,* 2025 WL 1827804, at *9 (no affirmative duty absent "certain special relationships").

Plaintiffs' reliance on *Wallace* does not salvage their claim. That decision does not hold that foreseeability alone creates a duty under Ohio common law, Opp. at PageID 364, but rather reaffirms that duty is a legal, relationship-based and policy-driven determination for the court, and that foreseeability is only one factor in the analysis.  Indeed, the Ohio Supreme Court has squarely held that "foreseeability alone *is not always sufficient to establish the existence of a duty*.  This court has followed the common-law rule . . . that there is no duty to act affirmatively for another's aid or protection absent some 'special relation.'" *Ests. of Morgan v. Fairfield Fam. Counseling Ctr.*, 673 N.E.2d 1311, 1319 (Ohio 1997).  No such special relationship exists here—a point Plaintiffs do not dispute in their Opposition.  Mot. at PageID 279-80.

12

Unable to identify a recognized duty, Plaintiffs attempt to recast third-party criminal conduct as CPS misconduct, asserting that CPS "create[ed] a foreseeable risk" by storing data in "dangerous conditions." Opp. at PageID 365. But the failure to prevent crime is not itself affirmative tortious conduct. Plaintiffs' own authorities illustrate why that is so. In *Beretta*, the defendants affirmatively "manufactured, marketed, and distributed their firearms in ways that ensure[d] the widespread accessibility of the firearms to prohibited users, including children and criminals," creating an illegal firearms market. *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶¶ 1, 22. Similarly, in *In re Nat'l Prescription Opiate Litig.*, defendants "affirmatively created an illegal, secondary opioid market," while violating statutory distribution requirements. No. 1:17-md-2804, 2018 WL 6628898, at *19 (N.D. Ohio Dec. 19, 2018). These cases involved purposeful criminal conduct—a far cry from an inadvertent failure to prevent third-party cybercrime. Treating routine data storage as creating the conditions for crime would effectively convert every business into an insurer against criminal hacking.

Finally, Plaintiffs' attempt to invoke the voluntary undertaking doctrine fails. Opp. at PageID 365-66. "Under Ohio law, a claim for breach of a voluntarily undertaken duty must allege physical injury." *Iron Workers Loc. Union No. 17 Ins. Fund v. Philip Morris Inc.*, 23 F. Supp. 2d 771, 794 (N.D. Ohio 1998). Plaintiffs do not allege physical harm. Nor do they allege facts showing that CPS affirmatively assumed a specific obligation toward Plaintiffs, induced reasonable reliance, or increased the risk of harm—all required elements for a voluntary undertaking. *See Connell v. Goodyear Tire & Rubber Co.*, 2010-Ohio-4344, ¶ 44. Nor could they do so: Ohio law "does not recognize a claim for negligent undertaking based on the increased risk

13

of harm theory when the underlying conduct is a failure to act." *Bugg v. Am. Std., Inc.*, 2005-Ohio-2613, ¶ 15. CPS's routine commercial data storage did not create a duty owed to Plaintiffs.[9]

### 2. No Breach.

Even if Plaintiffs could establish a duty owed to them by CPS, their negligence claim would still fail because Plaintiffs do not allege non-conclusory facts plausibly showing that CPS acted unreasonably in connection with the Phishing Incident. Mot. at PageID 282-83. Plaintiffs rest their claims of breach almost entirely on their allegation that CPS stored "unencrypted" data. Opp. at PageID 369; Am. Compl. ¶¶ 31, 44. But unencrypted data is not *per se* problematic, and more importantly, Plaintiffs do not plausibly allege that encryption would have prevented the Phishing Incident here given that the third party allegedly accessed an authorized email account using valid credentials, rendering encryption irrelevant. These allegations thus fail as a matter of law.

Plaintiffs urge the Court to relax Rule 8 pleading standards due to the supposedly "unique challenges" of bringing data-breach cases. Opp. PageID 368-69. But even where informational asymmetry exists, plaintiffs must still allege facts that plausibly suggest that CPS failed to implement reasonable data security standards. *See Hummel v. Teijin Auto. Techs., Inc.*, No. 23-cv-10341, 2023 WL 6149059, at *7 (E.D. Mich. Sept. 20, 2023) (*Iqbal* does not indicate pleading standards should be relaxed in data breach cases). Plaintiffs fail to do so.

### 3. No Proximate Cause.

---

[9] Plaintiffs argue that Ohio's safe harbor statute providing a defense against legal liability for data breaches where a party can show that it implemented industry standard data protections *creates* a legal duty to enact such protection. Opp. at PageID 366. But a legislative decision to provide a conditional defense does not create a new common law duty, particularly where the legislature expressly declined to impose one and affirmatively signaled its intent to reduce, not expand, liability. *See* Ohio Rev. Code § 1354.04 (the Ohio Data Protection Act "shall not be construed to provide a private right of action, including a class action, with respect to any act or practice regulated under those sections"); *Waseleski v. City of Brooklyn*, No. 1:23-cv-00548, 2025 WL 896097, at *9 n.7 (N.D. Ohio Mar. 24, 2025) ("the [Ohio Data Protection Act] does not create a private right of action.").

Plaintiffs likewise fail to plausibly allege that CPS caused their claimed injuries.  Plaintiffs conflate proximate cause with Article III traceability, arguing that their standing allegations suffice.  Opp. at PageID 370.  That is incorrect on the merits and as a matter of law.  Ohio law requires a "direct, continuous link between the challenged conduct and the alleged injury"; and traceability does not necessarily establish proximate cause.  Mot. at PageID 284; *see Buchholz v. Tanick*, 946 F.3d 855, 866 (6th Cir. 2020) ("The standard for establishing traceability for standing purposes is *less demanding* than the standard for proving tort causation."); *Parsons v. United States Dep't of Justice*, 801 F.3d 701, 715 (6th Cir. 2015) (traceability "is not synonymous with causation sufficient to support a claim.").

Plaintiffs mischaracterize CPS's proximate cause argument in any event.  Opp. at PageID 370.  CPS does not rely on the fact of intervening criminal conduct to challenge causation.  Rather, Plaintiffs have not plausibly connected the Phishing Incident to their alleged injuries because the data allegedly exposed in the Phishing Incident could not have enabled the fraud claimed, and Plaintiffs' own pleadings point to obvious alternative causes.  Mot. at PageID 284.  Plaintiffs respond by asserting that because "Social Security numbers and dates of birth are the foundational building blocks of identity theft," these pieces of data alone could enable fraud.  Opp. at PageID 371.  But as explained, *supra* Section I.A., Plaintiffs have not alleged that their Social Security numbers were impacted.  Nor does the Amended Complaint contain allegations that Social Security numbers and dates of birth alone can enable the kind of fraud alleged, and numerous courts have concluded the opposite.  *See* Mot. at PageID 284.  Proximate cause must be pled, not supplied through briefing.  *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426

15

(6th Cir. 2020) (Plaintiffs "cannot 'amend their complaint in an opposition brief'"). Plaintiffs fail to plead facts plausibly establishing a causal link between their alleged injuries and CPS's conduct.

Plaintiffs also ignore the obvious alternative causes addressed in their own complaint. They argue that allowing defendants to point to other data breaches to challenge causality "would create a perverse inventive for companies." Opp. at PageID 372. But the cases Plaintiffs cite rejected general assertions of recent data breaches, which often pointed to facts outside of the complaint. *Id.* Here, CPS relies on Plaintiffs' own allegations of a widespread "surge" in recent data breaches and allegations of what appear to be unrelated compromises of Plaintiffs' own data, such as the hack of Pierce's Facebook account. Mot. at PageID 286. This reinforces that these alternative causes may be the proximate cause of Plaintiffs' purported injuries of fraud.

At bottom, Plaintiffs' allegations in support of causation rest solely on the fact that their alleged injuries supposedly occurred after the Phishing Incident. But even Plaintiffs' authorities recognize that temporal proximity is not causation, particularly where, as here, there is no direct, continuous link between the challenged conduct and the alleged injury. Mot. at PageID 284. *See, e.g., Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 909 (N.D. Cal. 2024) ("a purely temporal connection will not suffice" to establish proximate causation); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 987 (N.D. Cal. 2016) (requiring "allegations of a nexus between the two instances beyond allegations of time and sequence").

### 4. No Cognizable Damages.

Plaintiffs' negligence claim independently fails because it is barred by Ohio's Economic Loss Rule and because Plaintiffs have not pled legally cognizable damages.

***The Economic Loss Rule.*** Because Plaintiffs allege only economic loss and cannot identify any independent tort duty, their negligence claim is barred. Ohio courts consistently hold that the economic-loss rule applies in a tort action where, as here, "economic loss is

16

unaccompanied by personal injury or property damage." *Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-cv-184, 2023 WL 423504, at *4 (S.D. Ohio Jan. 26, 2023); *see also Windsor Med. Ctr., Inc. v. Time Warner Cable*, *Inc.,* 2021-Ohio-158, 167 N.E.3d 23 ¶¶ 25–28 ("[A] plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.").

Plaintiffs do not allege personal injury or property damage. But they attempt to avoid application of the rule by characterizing their alleged "loss of time" and "loss of [] privacy" as non-economic harms. Opp. PageID 375. Ohio law forecloses both arguments. Privacy injuries fall squarely within the Economic Loss Rule. *See Tucker*, 2023 WL 423504, at 4. Purported privacy harms are simply repackaged financial losses, and allowing Plaintiffs to plead around the rule would "swallow" the doctrine. *Cf Mohsen v. Veridian Credit Union*, 733 F. Supp. 3d 754, 766 (N.D. Iowa 2024) (collecting cases). Plaintiffs' reliance on *Allen* is unavailing; that reasoning relies on out-of-state authorities and improperly treats intangible harms as categorically non-economic. And Plaintiffs' voluntary remediation-related expenditures of lost time are an "indirect economic loss"—one that is objectively quantifiable through opportunity costs or hourly valuation. *MyVitaNet.com v. Kowalski*, No. 2:08-cv-48, 2008 WL 2977889, at *9 (S.D. Ohio July 29, 2008); *see Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569 (6th Cir. 2006) (economic loss includes "objectively verifiable monetary losses").

Plaintiffs next argue that the Economic Loss Rule applies only to negligence claims "premised entirely upon the terms of a contract," and suggest that by abandoning their contract claims they can escape application of the rule. Opp. at PageID 375-76. Not so. The Economic Loss Rule "typically applies to bar recovery where a contract exists between two parties and a third party, not in privity, alleges that the negligence of one of the parties in its performance of the

17

contract caused the third party damage." *Ineos USA LLC v. Furmanite Am., Inc.*, 2014-Ohio-4996, ¶ 19 (collecting cases).[10] Plaintiffs' own Complaint makes clear that such a contract exists here. *See* Am. Compl. ¶ 6 ("[CPS's] failure to safeguard" PII "violates . . . [*CPS's*] *contracts with its clients*") (emphasis added). Where negligence and contract claims rest on the same alleged misconduct—as here—the Economic Loss Rule bars the claim. *Foster*, 493 F. Supp. 3d at 639.

This conclusion is reinforced by Plaintiffs' failure to identify any alleged damages caused by negligence that are distinct from their claimed economic losses. *Newman v. Total Quality Logistics, LLC*, No. 1:20cv173, 2021 WL 1192669, at *7 (S.D. Ohio Mar. 20, 2021); *Finesse Express, LLC v. Total Quality Logistics, LLC*, No. 1:20cv235, 2021 WL 1192521, at *7 (S.D. Ohio Mar. 30, 2021). And Plaintiffs' fallback assertion that their claim rests on an "independent common-law duty" fails for reasons already explained: no such duty exists here. Plaintiffs' reliance on *In re Bon Secours Mercy Health* is misplaced, as that case turned on a special employer-employee relationship that Plaintiffs do not argue is present. 2025 WL 1827804, at *10.

***No Cognizable Damages.*** Even apart from the Economic Loss Rule, Plaintiffs fail to allege cognizable damages. Plaintiffs again conflate the elements for Article III standing with a negligence claim, arguing that because they allege an injury for standing, they have pleaded compensable damages. Opp. at PageID 372-73. That is incorrect. Negligence requires legally cognizable damages—not merely an injury sufficient to confer standing. *Krottner v. Starbucks*

---

[10] For this reason, courts routinely apply the rule even where contract claims were dismissed or never asserted. *See Brickman v. Maximus, Inc.*, No. 2:21-cv-3822, 2023 WL 2563661, at *3 (S.D. Ohio Mar. 17, 2023) (dismissing negligence claim as premised on the terms of a contract even though the contract claim was dismissed, because "absent the contract between Defendant and the State of Ohio, Defendant would have no obligation to store or safeguard Plaintiff's data"); *Newman*, 2021 WL 1192669, at *6–7; *Marlin,* 2024 WL 2319115, at *4.

*Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010); *Doe v. Chao*, 540 U.S. 614, 624–25 (2004).

Plaintiffs' Opposition underscores this failure. Plaintiffs assert that "[b]oth past and future damages are recoverable under Ohio law," Opp. at PageID 373, but fail to explain how their alleged harms satisfy this standard. Their reliance on *Jessica v. Ohio Dep't of Job & Fam. Servs.*, is similarly misplaced, as that decision addressed standing, not negligence damages. 2025-Ohio-2604, 271 N.E.3d 351, ¶ 10. Plaintiffs do not rebut CPS's arguments that unreimbursed loss, spam, mitigation, diminution in data value, and lost benefit of the bargain are not recoverable in negligence, and have therefore waived these points. *Corso*, 2021 WL 2829170, at \*6.

Nor do Plaintiffs' remaining theories withstand scrutiny. Speculative risk of future identity theft is not cognizable harm under Ohio negligence law, and speculative mitigation costs are likewise unrecoverable. *Kahle v. Litton Loan Servicing, LP*, 486 F. Supp. 2d 705 (S.D. Ohio 2007). Even Plaintiffs' own cases require future damages to be "reasonably certain" or "certainly impending." *In re CBIZ*, 2025 WL 1557033, at \*3; *Jessica*, 2025-Ohio-2604, 271 N.E.3d 351, ¶ 53. Plaintiffs make no such showing.

Plaintiffs also fail to state a claim for emotional distress. Plaintiffs have no response to this Court's conclusion that, under Ohio law, claims for emotional distress cannot "proceed absent an allegation that Plaintiff 'feared or saw some quantifiable physical loss.'" Mot. at PageID 289. This silence is dispositive, and not addressed by Plaintiffs' Opposition. Opp. at PageID 373.

Finally, alleged loss of privacy—untethered to actual misuse—does not constitute cognizable damages. Plaintiffs' alleged privacy injury is inherently speculative. In addition, Ohio recognizes specific, limited privacy torts, underscoring that general negligence is not a catch-all vehicle for privacy claims. *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d

19

1051, ¶¶ 26–36. To the extent Plaintiffs rely on *Allen*, that decision expressly acknowledged the absence of Ohio authority and relied on out-of-state standing principles.

For all of these reasons, Plaintiffs' negligence claim fails as a matter of law.

**C.      Plaintiffs' Unjust Enrichment Claim (Count V) Should Be Dismissed.**

Plaintiffs' unjust enrichment claim suffers from a litany of fatal flaws, each of which independently warrants dismissal. *First*, Plaintiffs fail to rebut CPS's argument that there can be no unjust enrichment under either Ohio or New York law, where, like here, no direct transactional relationship existed between the parties. Mot. at PageID 296-97. Plaintiffs' Ohio authorities confirm this rule. In both *Foster,* 493 F. Supp. 3d at 641, and *Tucker*, 2023 WL 423504, at *7, plaintiffs alleged direct dealings with defendants and that defendants failed to uphold promises made directly to plaintiffs in exchange for payment. None of these elements exist here.

Plaintiffs' assertion that "[n]umerous courts have concluded that unjust enrichment claims are plausible under the same circumstances as this case" is unsupported. Opp. at PageID 378. The two cases Plaintiffs cite are factually dissimilar and, critically, both resulted in *dismissal* of the unjust enrichment claims. The court in *In re Change Healthcare, Inc. Customer Data Sec. Breach Litig.* found that plaintiffs had plausibly alleged a benefit because defendants allegedly used plaintiffs' data for analytics and corporate acquisition purposes—allegations not present here. No. MDL 24-3108, 2025 WL 3693201, at *16 (D. Minn. Dec. 19, 2025). Even then, the court dismissed the unjust enrichment claim, because, like here, plaintiffs did not allege unjust retention. *Id.* Similarly, the court in *In re NCB Mgmt. Servs., Inc. Data Breach Litig.* dismissed the unjust enrichment claim because plaintiffs failed to plead that the defendant profited from retention of third-party PII, holding that "vague allegations that [the defendant] collected information for 'commercial gain' are not sufficient to state a claim for unjust enrichment." 748 F. Supp. 3d 262, 278 (E.D. Pa. 2024) (internal citations omitted). Plaintiffs' allegations suffer from the same defect.

*Second*, Plaintiffs fail to plead any unjust retention or overpayment.  Even assuming arguendo that CPS received *some* benefit—and ignoring that any benefit would be conferred by CPS's customers, not Plaintiffs themselves—Plaintiffs *still* allege no facts demonstrating that CPS accepted more than what was due for the pharmacy technology services it provided to its customers.  Mot. at PageID 298.  Accordingly, any enrichment was bargained for, and not unjust. *See Tate,* 2023 WL 638347, at *8 ("Plaintiffs got what they paid for—vision benefits.").

None of Plaintiffs' remaining cases supports a contrary result.  *In re Cap. One Consumer Data Sec. Breach Litig*., and the cases it cites, rely on a "but-for" theory that plaintiffs would not have used defendants' services had they known of defendants' alleged security deficiencies.  488 F. Supp. 3d 374, 412 (E.D. Va. 2020).  This theory is not pleaded here, and it would be implausible given that plaintiffs do not choose their healthcare providers' third-party data processors.  *See In re Change Healthcare*, 2025 WL 3693201, at *16.  Plaintiffs' remaining authorities are inapposite because they involved defendants with direct relationships with, and payment from, the plaintiffs themselves.  *See Gordon v. Zeroed-In Tech., LLC*, No. 23-3284, 2025 WL 936415, at *16 (D. Md. Mar. 26, 2025); *Capiau*, 2024 WL 3747191, at *12; *Smith v. Am. Pain & Wellness, PLLC*, 747 F. Supp. 3d 989, 1003 (E.D. Tex. 2024).  *In re Unite Here Data Sec. Incident Litig.*, is likewise misplaced: there, the defendant explicitly promised that dues would go to data security—an allegation central to the unjust retention analysis.  740 F. Supp. 3d 364, 384–85 (S.D.N.Y. 2024).

*Finally*, Plaintiffs cannot rely on Rule 8(d)'s alternative pleading to save a claim that is wholly duplicative of their tort and contract claims.  Courts are clear that "even when 'pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action.'"  *Smith v. Adidas Am., Inc.,* 691 F. Supp. 3d 564, 585 (N.D.N.Y. 2023).  Plaintiffs make

21

no such showing, nor do their cited cases undermine this rule. *Mike Albert, Ltd. v. 540 Auto Repair, Inc.*, involved claims "of fraud, bad faith, or illegality," No. 1:21-cv-286, 2022 WL 488969, at *9 (S.D. Ohio Feb. 17, 2022), and *Freedom Holding, Inc. v. Haart* involved different parties asserting different claims, not the same plaintiffs seeking the same recovery under duplicative theories, 172 N.Y.S.3d 873, 885 (N.Y. Sup. Ct. 2022).

Because Plaintiffs have failed to plead the elements of their unjust enrichment claim and have brought an impermissibly duplicative claim, this claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint under Rules 12(b)(1) and 12(b)(6).

22

Date: April 13, 2026

Respectfully submitted,

*/s/ Joel E. Sechler*_____
Joel E. Sechler (0076320)
Carpenter Lipps LLP
280 North High Street, Suite 1300
Columbus, OH 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
sechler@carpenterlipps.com

*Trial Attorney for Defendant*
*CPS Solutions, LLC*

Of Counsel

Katheryn M. Lloyd (0075610)
Amber L. Merl (0080655)
Carpenter Lipps LLP
280 North High Street, Suite 1300
Columbus, OH 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
lloyd@carpenterlips.com
merl@carpenterlipps.com

Jennifer S. Windom
(*admitted pro hac vice*)
Allison Holt Ryan
(*admitted pro hac vice*)
Hogan Lovells US LLP
555 13th Street NW
Washington, D.C. 20004
Telephone: (202) 637-6437
Facsimile: (202) 637-5910
jennifer.windom@hoganlovells.com
allison.holt-ryan@hoganlovells.com

*Attorneys for*
*Defendant CPS Solutions, LLC*

23

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Ohio using the CM/ECF system.  All participants in the case who are registered CM/EC users will be served by the CM/ECF system.

.

/s/ Joel E. Sechler
Joel E. Sechler (007620)

24